## UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
## CIVIL APPEAL PRE-ARGUMENT STATEMENT (FORM C)

**1. SEE NOTICE ON REVERSE**        **2. PLEASE TYPE OR PRINT**        **3. STAPLE ALL ADDITIONAL PAGES**

| | |
|---|---|
| Case Caption:<br><br>Town of Hempstead<br>v.<br>United States of America, et al. | **District Court or Agency:**<br>Eastern District of N.Y. **Judge:** Eric N. Vitaliano |
| | **Date the Order or Judgment Appealed from was Entered on the Docket:** 2/26/2025 / **District Court Docket No.:** 2:16-cv-03652 |
| | **Date the Notice of Appeal was Filed:** 4/21/2025 / **Is this a Cross Appeal?** ☐ Yes ☑ No |

**Attorney(s) for Appellant(s):**
☑ Plaintiff
☐ Defendant

Counsel's Name:     Address:     Telephone No.:     Fax No.:     E-mail:

Scott B. Fisher
Jaspan Schlesinger Narendren LLP
300 Garden City Plaza, Garden City, New York 11530
Phone - (516) 746-8000 Fax - (516) 393-8282
Sfisher@jaspanllp.com

**Attorney(s) for Appellee(s):**
☐ Plaintiff
☑ Defendant

Counsel's Name:     Address:     Telephone No.:     Fax No.:     E-mail:

See Attachment

| Has Transcript Been Prepared?<br>No | Approx. Number of Transcript Pages:<br>N/A | Number of Exhibits Appended to Transcript:<br>N/A | Has this matter been before this Circuit previously? ☐ Yes ☑ No<br><br>If Yes, provide the following:<br><br>Case Name:<br><br>2d Cir. Docket No.:          Reporter Citation: (i.e., F.3d or Fed. App.) |

*ADDENDUM "A"*: COUNSEL MUST ATTACH TO THIS FORM: (1) A BRIEF, BUT NOT PERFUNCTORY, DESCRIPTION OF THE NATURE OF THE ACTION; (2) THE RESULT BELOW; (3) A COPY OF THE NOTICE OF APPEAL AND A CURRENT COPY OF THE LOWER COURT DOCKET SHEET; AND (4) A COPY OF ALL RELEVANT OPINIONS/ORDERS FORMING THE BASIS FOR THIS APPEAL, INCLUDING TRANSCRIPTS OF ORDERS ISSUED FROM THE BENCH OR IN CHAMBERS.

*ADDENDUM "B"*: COUNSEL MUST ATTACH TO THIS FORM A LIST OF THE ISSUES PROPOSED TO BE RAISED ON APPEAL, AS WELL AS THE APPLICABLE APPELLATE STANDARD OF REVIEW FOR EACH PROPOSED ISSUE.

**PART A: JURISDICTION**

| 1. Federal Jurisdiction | 2. Appellate Jurisdiction |
|---|---|
| ☑ U.S. a party     ☐ Diversity | ☑ Final Decision     ☐ Order Certified by District Judge (i.e., Fed. R. Civ. P. 54(b)) |
| ☐ Federal question (U.S. not a party)     ☐ Other (specify): _____ | ☐ Interlocutory Decision Appealable As of Right     ☐ Other (specify): _____ |

### IMPORTANT. COMPLETE AND SIGN REVERSE SIDE OF THIS FORM.

**FORM C** (Rev. October 2016)

## PART B: DISTRICT COURT DISPOSITION   (Check as many as apply)

**1. Stage of Proceedings**

- [✓] Pre-trial
- [ ] During trial
- [ ] After trial

**2. Type of Judgment/Order Appealed**

- [ ] Default judgment
- [ ] Dismissal/FRCP 12(b)(1) lack of subject matter juris.
- [ ] Dismissal/FRCP 12(b)(6) failure to state a claim
- [ ] Dismissal/28 U.S.C. § 1915(e)(2) frivolous complaint
- [ ] Dismissal/28 U.S.C. § 1915(e)(2) other dismissal

- [ ] Dismissal/other jurisdiction
- [ ] Dismissal/merit
- [✓] Judgment / Decision of the Court
- [✓] Summary judgment
- [ ] Declaratory judgment
- [ ] Jury verdict
- [ ] Judgment NOV
- [ ] Directed verdict
- [ ] Other (specify):

**3. Relief**

- [✓] Damages:
  - [ ] Sought: $ _____
  - [ ] Granted: $ _____
  - [ ] Denied: $ _____

- [ ] Injunctions:
  - [ ] Preliminary
  - [ ] Permanent
  - [ ] Denied

## PART C: NATURE OF SUIT   (Check as many as apply)

**1. Federal Statutes**

- [ ] Antitrust
- [ ] Bankruptcy
- [ ] Banks/Banking
- [ ] Civil Rights
- [ ] Commerce
- [ ] Energy
- [ ] Commodities
- [ ] Other (specify): _____
- [ ] Communications
- [ ] Consumer Protection
- [ ] Copyright □ Patent
- [ ] Trademark
- [ ] Election
- [ ] Soc. Security
- [✓] Environmental
- [ ] Freedom of Information Act
- [ ] Immigration
- [ ] Labor
- [ ] OSHA
- [ ] Securities
- [ ] Tax

**2. Torts**

- [ ] Admiralty/ Maritime
- [ ] Assault / Defamation
- [ ] FELA
- [ ] Products Liability
- [✓] Other (Specify):
  Nuisance/Trespass/Negligence

**3. Contracts**

- [ ] Admiralty/ Maritime
- [ ] Arbitration
- [ ] Commercial
- [ ] Employment
- [ ] Insurance
- [ ] Negotiable Instruments
- [ ] Other Specify

**4. Prisoner Petitions**

- [ ] Civil Rights
- [ ] Habeas Corpus
- [ ] Mandamus
- [ ] Parole
- [ ] Vacate Sentence
- [ ] Other

**5. Other**

- [ ] Hague Int'l Child Custody Conv.
- [ ] Forfeiture/Penalty
- [ ] Real Property
- [ ] Treaty (specify): _____
- [ ] Other (specify): _____

**6. General**

- [ ] Arbitration
- [ ] Attorney Disqualification
- [ ] Class Action
- [ ] Counsel Fees
- [ ] Shareholder Derivative
- [ ] Transfer

**7. Will appeal raise constitutional issue(s)?**

- [ ] Yes   [✓] No

Will appeal raise a matter of first impression?

- [✓] Yes   [ ] No

---

1. Is any matter relative to this appeal still pending below? [ ] Yes, specify: _____   [✓] No

2. To your knowledge, is there any case presently pending or about to be brought before this Court or another court or administrative agency which:

   (A)   Arises from substantially the same case or controversy as this appeal?   [ ] Yes   [✓] No

   (B)   Involves an issue that is substantially similar or related to an issue in this appeal?   [ ] Yes   [✓] No

If yes, state whether □ "A," or □ "B," or □ both are applicable, and provide in the spaces below the following information on the *other* action(s):

| Case Name: | Docket No. | Citation: | Court or Agency: |
|---|---|---|---|
| | | | |

Name of Appellant:

| Date:   May 2, 2025 | Signature of Counsel of Record: /s/ Scott B. Fisher |
|---|---|

## NOTICE TO COUNSEL

**Once you have filed your Notice of Appeal with the District Court or the Tax Court, you have only 14 days in which to complete the following important steps:**

1. Complete this Civil Appeal Pre-Argument Statement (Form C); serve it upon all parties, and file it with the Clerk of the Second Circuit in accordance with LR 25.1.
2. File the Court of Appeals Transcript Information/Civil Appeal Form (Form D) with the Clerk of the Second Circuit in accordance with LR 25.1.
3. Pay the $505 docketing fee to the United States District Court or the $500 docketing fee to the United States Tax Court unless you are authorized to prosecute the appeal without payment.

**PLEASE NOTE: IF YOU DO NOT COMPLY WITH THESE REQUIREMENTS WITHIN 14 DAYS, YOUR APPEAL WILL BE DISMISSED.** *SEE* LOCAL RULE 12.1.

**FORM C** (Rev. December 2016)

**ATTACHMENT TO FORM C**

| Attorneys for the Appellees:<br><br>☐ Plaintiff<br>☑ Defendants | Counsel's Name: | Address: | Telephone No.: | Fax No.: | Email: |
|---|---|---|---|---|---|
| United States of America | Varuni Nelson, Asst. U.S. Attorney, U.S. Attorney's Office for the Eastern District of N.Y.<br><br>Robert W. Schumacher, Asst. U.S. Attorney, U.S. Attorney's Office for the Eastern District of N.Y. | 271 Cadman Plaza East, Brooklyn, NY 11201<br><br>610 Federal Plaza, Central Islip, NY 11722 | (718) 254-6015<br><br>(631) 715-7871 | (718) 254-6081<br><br>(631) 715-7920 | varuni.nelson@usdoj.gov<br><br>robert.schumacher@usdoj.gov |
| Department of the Navy | Varuni Nelson, Asst. U.S. Attorney, U.S. Attorney's Office for the Eastern District of N.Y.<br><br>Robert W. Schumacher, Asst. U.S. Attorney, U.S. Attorney's Office for the Eastern District of N.Y. | 271 Cadman Plaza East, Brooklyn, NY 11201<br><br>610 Federal Plaza, Central Islip, NY 11722 | (718) 254-6015<br><br>(631) 715-7871 | (718) 254-6081<br><br>(631) 715-7920 | varuni.nelson@usdoj.gov<br><br>robert.schumacher@usdoj.gov |

## ATTACHMENT TO FORM C

| Northrop Grumman Corporation | Mark A. Miller, Esq. Hollingsworth LLP | 1350 I Street, NW, Washington D.C. 20005 | (202) 898-5861 | (202) 682-1639 | mmiller@hollingsworthllp.com |
|---|---|---|---|---|---|
| | Elizabeth Read Knauer, Esq. Sive, Paget, and Riesel P.C. | 560 Lexington Ave, 15th Floor, New York, New York 10022 | (646) 378-7272 | (212) 421-1891 | eknauer@sprlaw.com |
| Northrop Grumman Systems Corporation | Mark A. Miller, Esq. Hollingsworth LLP | 1350 I Street, NW, Washington D.C. 20005 | (202) 898-5861 | (202) 682-1639 | mmiller@hollingsworthllp.com |
| | Elizabeth Read Knauer, Esq. Sive, Paget, and Riesel P.C. | 560 Lexington Ave, 15th Floor, New York, New York 10022 | (646) 378-7272 | (212) 421-1891 | eknauer@sprlaw.com |
| Covestro LLC | Timothy I. Duffy, Esq. Schenck, Price, Smith and King LLP | 220 Park Avenue, Florham Park, New Jersey 07932 | (973) 798-4946 | (973) 540-7300 | tid@spsk.com |

2

## ATTACHMENT TO FORM C

| | | | | | |
|---|---|---|---|---|---|
| Bayer Corporation | Timothy I. Duffy, Esq. Schenck, Price, Smith and King LLP | 220 Park Avenue, Florham Park, New Jersey 07932 | (973) 798-4946 | (973) 540-7300 | tid@spsk.com |
| Occidental Chemical Corporation | Christopher M. McDonald, Esq. Whiteman, Osterman and Hanna LLP | One Commerce Plaza, Suite 1900, Albany, New York 12260 | (518) 487-7662 | | cmmcdonald@woh.com |

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT
## CIVIL APPEAL PRE-ARGUMENT STATEMENT
## (FORM C)

### ADDENDUM "A"

**1.       Description of the Nature of the Action**

In this action, plaintiff-appellant, the Town of Hempstead ("Town"), pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601 *et seq*. ("CERCLA"), seeks to recover (i) response costs and (ii) declaratory relief for response costs incurred and to be incurred to remove hazardous substances from three of its public water supply wells used to provide drinking water to its residents in the Levittown Water District, known as wells 7A, 8A, and 13 (the "LWD Wells"). The downgradient LWD Wells are alleged to be impacted from the commingled plume of groundwater contamination emanating from the property owned and/or operated by defendants-appellees, United States of America and the Department of the Navy (together, the "Federal Defendants"), known as the Naval Weapons Industrial Reserve Plant (the "NWIRP Site") and related property owned and operated by defendants-appellees, Northrop Grumman Corporation ("NG") and Northrop Grumman Systems Corporation (with NG, the "NG Defendants") (the "NG Site"), in Bethpage, New York, and the adjoining property, known as the Hooker/Ruco Site, owned and/or operated by defendants-appellees, Covestro LLC ("Covestro"), Bayer Corporation ("Bayer"), and Occidental Chemical Corporation ("Occidental") (the Federal Defendants, NG Defendants, Covestro, Bayer, and Occidental are collectively referred to as "Defendants"). The Town also asserted New York common law claims against the Defendants sounding in nuisance, trespass, and negligence.

**2.       The District Court's Decision/The Result Below**

In December 2021, after the close of Phase I discovery which was limited to the Town's CERCLA claims, each of the Defendants separately moved, pursuant to Fed. R. Civ. P. 56(a), for summary judgment dismissing the CERCLA claims, essentially contending that the hazardous substances released from the NWIRP Site, NG Site, and Hooker/Ruco Site did not cause the Town to incur response costs, and that the Town's response costs were neither necessary nor consistent with the National Contingency Plan under CERCLA. Phase II discovery related to the state-law claims was stayed at Defendants' request pending the Phase I motions for summary judgment.

In February 2025, the District Court issued its <u>Memorandum & Order</u>, granting all Defendants' respective motions for summary judgment in their entirety. In addition, the District Court also chose *sua sponte* to grant summary judgment dismissing the Town's New York common law claims.

With respect to the Town's CERCLA claims, the District Court, noting that this Court "has not embraced a singular approach in such [two-site] cases as binding precedent," adopted a causation standard finding that the Town was required to establish a nexus between the hazardous substances released on Defendants' sites and the Town's response costs incurred in removing those

hazardous substances from the Town's downgradient public water supply wells. The District Court then held that the Town failed to make a showing of causality that releases of hazardous substances from the NWIRP Site, NG Site, and Hooker/Ruco Site caused the Town to incur response costs and that the evidence presented by the Town did not create genuine issues of material fact to warrant denial of Defendants' summary judgment motions.

In addition, the District Court held that, aside from the causation element, the Town's response costs were neither necessary nor consistent with the National Contingency Plan under CERCLA.

Despite the fact that Phase II discovery relating to the Town's New York common law claims was stayed pending Defendants' motions for summary judgment, the District Court, nonetheless, decided the state claims and dismissed those claims as well, holding that the purported failures of the CERCLA claims also foreclosed the New York common law claims.

The Clerk's Judgment dismissing all of the Town's claims was entered on February 26, 2025.

### 3.     Notice of Appeal and District Court Docket Sheet

The Town attaches the Notice of Appeal, entered on April 21, 2025, as Exhibit A.

The Town attaches a current copy of the District Court Docket Sheet, as Exhibit B.

### 4.     The Order and Judgment

The Town attaches the Memorandum & Order, dated February 16, 2025 and entered February 25, 2025, of the United States District Court for the Eastern District of New York (Vitaliano, J.), together with the Clerk's Judgment, entered February 26, 2025, as Exhibit C.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT
# CIVIL APPEAL PRE-ARGUMENT STATEMENT
# (FORM C)

## ADDENDUM "B"

## LIST OF PROPOSED ISSUES ON APPEAL AND
## APPLICABLE STANDARDS OF REVIEW

1.     Whether the District Court erred in applying a causation standard under Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA"), which required the Town to establish a nexus between the release of hazardous substances on Defendants' primary sites and the Town's response costs incurred in removing those hazardous substances from the Town's downgradient public water supply wells?

The issue of interpretation of CERCLA is a question of law that is to be reviewed *de novo*. *See New York v. Next Millenium Realty, LLC*, 732 F.3d, 117, 126 (2d Cir. 2013). To the extent the legal question turns on factual issues, the District Court's grant of summary judgment is reviewed *de novo*. *Id.*

2.     Whether the District Court erred: (a) in determining that the Town failed to show that Defendants' release of hazardous substances caused the Town to incur response costs essential to meet the burden of proof under CERCLA Section 107; and (b) in determining that the evidence presented by the Town did not create genuine issues of material fact to warrant denial of Defendants' summary judgment motions?

The District Court's decision to grant summary judgment is reviewed *de novo*, reviewing the evidence in the light most favorable to the non-moving party and drawing all inferences and resolving all ambiguities in its favor. *Price Trucking Corp. v. Norampac Indus.*, 748 F.3d 75, 79 (2d Cir. 2014). In reviewing the District Court's grant of summary judgment, this Court "must determine whether a genuine issue of material fact exists and whether the district court correctly applied the law." *Keywell Corp. v. Weinstein*, 33 F.3d 159, 163 (2d Cir. 1994).

3.     Whether the District Court erred in determining that the Town's response costs were neither necessary nor consistent with the National Contingency Plan under CERCLA?

The standard of review is *de novo*. *See Next Millenium Realty, LLC*, 732 F.3d at 126; *Price Trucking Corp.*, 748 F.3d at 79; *Keywell Corp.*, 33 F.3d at 163.

4.     Whether the District Court erred in exercising supplemental jurisdiction and dismissing, without notice, the Town's New York common law claims for nuisance, trespass, and negligence?

The District Court's decision to exercise supplemental jurisdiction and dismiss the Town's state-law claims is reviewed for abuse of discretion. *See Kolari v. New York Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006).

# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
TOWN OF HEMPSTEAD,

                                    Plaintiff,


                - against -                              **NOTICE OF APPEAL**

                                                        Civil Action No.: 16-CV-3652
                                                        (ENV)(ST)


UNITED STATES OF AMERICA,
DEPARTMENT OF NAVY,
NORTHRUP GRUMMAN CORPORATION,
NORTHUP GRUMMAN SYSTEMS CORPORATION,
COVESTRO LLC, BAYER CORPORATION, AND
OCCIDENTAL CHEMICAL CORPORATION,

                                    Defendants.
--------------------------------------------------------------------X


        PLEASE TAKE NOTICE that the plaintiff, Town of Hempstead, in the above referenced

matter hereby appeals to the United States Court of Appeals for the Second Circuit the

Memorandum & Order, dated February 16, 2025, and entered February 25, 2025, granting

defendants' respective motions for summary judgment dismissing the Complaint in its entirety

(ECF No. 203), and the Judgment dated and entered February 26, 2025 (ECF No. 204), in their

entirety, copies of which are annexed to.

Dated: April 21, 2025
        Garden City, New York

                                        Respectfully submitted,

                                        s/Scott B/Fisher
                                        Scott B. Fisher
                                        JASPAN SCHLESINGER NARENDRAN LLP
                                        300 Garden City Plaza, 5th Floor
                                        Garden City, New York 11530
                                        (516) 746-8000
                                        Sfisher@jaspanllp.com
                                        *Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

TOWN OF HEMPSTEAD,

                                Plaintiff,

                  -against-

UNITED STATES OF AMERICA, et al.,

                             Defendants.

------------------------------------------------------------- x

**MEMORANDUM & ORDER**

2:16-CV-3652 (ENV) (ST)

VITALIANO, D.J.

      Plaintiff Town of Hempstead ("Hempstead" or "the Town") brings this lawsuit against defendants the United States of America and the Department of Navy (together, the "federal defendants"), Northrup Grumman Corporation ("Northrop"), the Occidental Chemical Company ("Occidental"), and Covestro LLC and the Bayer Corporation (together, the "Covestro defendants") making claims arising under the Comprehensive Environmental Response Compensation and Liability Act ("CERLCA"), 42 U.S.C. § 9601 *et seq.*, and asserting New York common law actions sounding in nuisance, trespass, and negligence. The Town alleges that its Levittown Water District ("LWD") Wells 7A, 8A, and 13 were contaminated by groundwater emanating from the former Naval Weapons Industrial Reserve Plant; the former Northup Grumman Facility; and/or the former Hooker Chemical/Ruco Polymer Property, and seeks costs that it expended in responding to the contamination of its wells.

      Presently before the Court are summary judgment motions separately filed by the federal defendants (Dkt. No. 163), Northrup (Dkt. No. 162), Occidental (Dkt. No. 180), and the Covestro defendants (Dkt No. 198). For the reasons that follow, these motions are granted in their entirety.

1

## Background[1]

From the early 1940's to 1996, the federal defendants owned, and co-defendant Northrop and its predecessors operated, a Naval Weapons Industrial Reserve Plant located on over 100 acres of property in Bethpage, New York (the "NWIRP Site"). Fed. Defs.' Rule 56.1 Stmt., Dkt. No. 164, ¶ 1. The Site is contiguous to approximately 500 acres of property owned and operated by Northrop (the "Northrop Site"). *Id.* ¶ 2. To say that the public controversy and litigation slate underlying these sites was well-chalked by the time this lawsuit commenced would be an understatement.

During the manufacturing process at the NWIRP Site, Northrop used solvents containing volatile organic compounds ("VOCs"). Northrup Rule 56.1 Stmt., Dkt. No. 170, ¶ 4. Beginning in 1983, when the New York State Department of Environmental Conservation ("DEC") listed the NWIRP Site in the Registry of Inactive Hazardous Waste Disposal Sites, DEC has supervised investigation and remediation of the site, including off-site contamination. *Id.* ¶ 6. In 1997, Northrop installed an on-Site containment system ("ONCT") to treat and remove VOC contaminants from the groundwater. *Id.* ¶ 9. DEC subsequently issued a Record of Decision for the Operable Unit 2 groundwater plume associated with the NWIRP Site (the "OU2 ROD"), selecting the ONCT as part of its chosen remedy. *Id.* ¶¶ 9–10. The OU2 ROD assessed that the "[a]ctual or threatened release of hazardous waste constituents from this·site, if not addressed by implementing the response action selected in this ROD, presents a current or potential significant

---

[1] The facts are drawn from the affidavits, exhibits, Rule 56.1 statements, and counterstatements of fact submitted by the parties. Factual disputes are noted. Where facts are disputed, "the sources for the claims made in dueling Rule 56.1 Statements" are considered directly. *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 138 F. Supp. 3d 352, 396 (S.D.N.Y. 2015). Citations to pages of the parties' briefing refer to the Electronic Case Filing System ("ECF") pagination, except that citations to a deposition reference the internal document's pagination.

Case: 25-1000, 05/02/2025, DktEntry: 16.1, Page 13 of 104

Case 2:16-cv-03652-ENV-ST    Document 205    Filed 04/21/25    Page 4 of 29 PageID #:
20649
Case 2:16-cv-03652-ENV-ST    Document 203    Filed 02/16/25    Page 3 of 27 PageID #:
20620

threat to public health and the environment." Miller Decl., Ex. 2 (OU2 ROD), Dkt. No. 179-2, at 3.

The OU2 ROD also mandated the implementation of a Public Water Supply Contingency Program ("PWSCP") to address hazardous substances in the OU2 plume that might impact public water supplies. Northrop Rule 56.1 Stmt. ¶ 11. The PWSCP, which Northrop, the Navy, and the Town are parties to, provides for (1) groundwater modeling, which estimates the future migration of the OU2 Plume thirty years into the future; (2) outpost monitoring wells, which monitor the groundwater plume anticipated to impact public water supply wells; (3) establishment of trigger values for certain hazardous substances, which, if reached at an outpost well, would require the relevant water district to be notified; and (4) a process whereby potentially impacted water suppliers, like the Town, can negotiate with the Navy and Northrop for the design and construction of appropriate wellhead treatment or comparable alternative measures if trigger values are reached. *Id.* ¶ 16.

Hempstead operates 15 public supply wells in the Levittown Water District to the southwest of the NWIRP Site that provides potable water to customers in residential areas. *Id.* ¶ 25. It alleges that three of its wells—LWD Wells 7A, 8A, and 13 (the "LWD Wells")—were impacted by the chemical Freon-113 originating from commingled groundwater from the NWIRP and Northrup Sites, forcing the Town to incur millions of dollars in response costs. *Id.* ¶ 27; Compl., Dkt. No. 1, ¶ 26. LWD Wells 7A and 8A are situated in the same well field about 100 feet apart, and LWD Well 13 is located approximately one-half mile away from LWD Wells 7A and 8A. Pl. Rule 56.1 Stmt., Dkt. No. 169, ¶¶ 6, 9. Hempstead first became aware of the potential impact to the LWD Wells in July 2012, when Northrop's environmental consultant, consistent with the PWSCP, informed the Town that samples collected from outpost monitoring wells for

3

LWD Well 13 showed Freon-113 meeting the trigger value of 1.5 μg/l.[2]  Northrup Rule 56.1 Stmt. ¶¶ 30–32.

Shortly thereafter, in April 2013, the Town retained engineering consultants Dviroka & Bartilucci Engineers & Architects, P.C. ("D&B") to determine the necessary treatment for removal of Freon-113 from the LWD Wells.  *Id.* ¶¶ 33–34; Pl. Rule 56.1 Stmt. Response, Dkt. No. 168, at 7.  D&B completed design reports for its chosen wellhead remedy, Packed Tower Aeration Systems ("PTAS"), in August 2014.[3]  Northrup Rule 56.1 Stmt. ¶ 37.  Although the PWSCP set forth a process for Hempstead to follow if it intended to seek reimbursement from the federal defendants and Northrup for its treatment of impacted wells, including negotiating the design and payment of such treatment *ex ante*, the Town unilaterally began construction of its PTAS treatment without consulting the parties and without a financial agreement in place.  *Id.* ¶¶ 36–42.

Taking the next step, on April 24, 2015, a consultant for D&B sent the Navy a letter by Hempstead's fiat (the "April 2015 Letter") attaching the already Town-approved design reports for the treatment systems and stating: that construction on the Well 13 system had already commenced; that construction on the Well 7A/8A system would commence soon; and requesting payment of the Town's costs "in accordance with the PWSCSP."  *Id.* ¶¶ 38, 41–42.  With respect to LWD Wells 7A and 8A, the April 2015 Letter stated that the wells had not been "specifically identified in the PWSCP," but "given their proximity to the westerly boundary of the plume, it appears they have been impacted."  *Id.* ¶ 43

The Navy responded to the Town's letter on June 18, 2015, requesting additional information and data supporting the letter's claim that the Freon-113 in the LWD Wells originated

---

[2] The Freon-113 detections were 1.5, 2.1, and 1.9 μg/l.  Northrop Rule 56.1 Stmt. ¶ 30.

[3] A packed tower aeration system is a commonly used treatment system that reduces the presence of contaminants in water.  Northrup Rule 56.1 Stmt. ¶ 98.

Case: 25-1000, 05/02/2025, DktEntry: 16.1, Page 15 of 104

Case 2:16-cv-03652-ENV-ST    Document 205    Filed 04/21/25    Page 6 of 29 PageID #:
20651
Case 2:16-cv-03652-ENV-ST    Document 203    Filed 02/16/25    Page 5 of 27 PageID #:
20622

from the NWIRP Site and that the Freon-113 concentration necessitated wellhead treatment. Northrop Rule 56.1 Stmt. ¶¶ 46–48. In lieu of responding to the Navy's letter, the Town filed this lawsuit on June 30, 2016, also naming as defendants Occidental and the Covestro defendants, prior owners and operators of the Hooker-Ruco Site, a 14-acre, triangular-shaped parcel of land located approximately three miles north, northeast of the LWD Wells. *Id.* ¶¶ 50, 53; Occidental Rule 56.1 Stmt., Dkt. No. 180-24, ¶ 24; Occidental Mot., Dkt. No. 180-23, at 9. Hempstead alleges that the "disposal and release of hazardous substances" from the Hooker-Ruco Site "caused ground water contamination which has commingled with the downgradient groundwater contamination emanating from the NWIRP/Northrup Grumman Site." Compl. ¶ 3. According to the Town's Water Commissioner, Occidental and the Covestro defendants were included in the lawsuit because they were identified by the Town as registered hazardous waste site owners and/or generators of hazardous wastes. Covestro Rule 56.1 Stmt., Dkt. No. 198-15, ¶ 17.

The Hooker-Ruco Site had not flown under the radar while the NWIRP Site was the subject of environmental enforcement scrutiny. The United States Environmental Protection Agency ("EPA") placed it on the National Priorities List under CERCLA in or about 1986 and has since overseen a remedial plan for the off-site groundwater impacts from its groundwater plume (the "Hooker-Ruco Site Sub-Plume"). Occidental Rule 56.1 Stmt. ¶¶ 2–3. In coordination with EPA and DEC, Occidental studied and selected a treatment that increased the concentration of oxygen in the Hooker-Ruco Site Sub-Plume to degrade the concentrations of volatile compounds, and later that year EPA issued a ROD approving the selected remedy (the "OU3 ROD"). *Id.* ¶¶ 8–10. Under the OU3 ROD, residual levels of any volatile organic compound associated with the Hooker-Ruco Site Sub-Plume that have not naturally degraded from the oxygen treatment are captured and treated by a remedial system operated by Northrup under DEC oversight. *Id.* ¶ 11. In 2016 and

5

Case 2:16-cv-03652-ENV-ST    Document 205    Filed 04/21/25    Page 7 of 29 PageID #:
20652
Case 2:16-cv-03652-ENV-ST    Document 203    Filed 02/16/25    Page 6 of 27 PageID #:
20623

again in 2021, EPA concluded that the approved oxygen treatment effectively treats groundwater
contamination at the Hooker-Ruco Site and that no modification to treatment is required. *Id.* ¶¶
17, 20.

Reasserting its aggressive litigation posture, Hempstead did not notify Occidental or the
Covestro defendants prior to designing and constructing the PTAS for Wells 7A/8A and 13, nor
did the Town request that EPA modify the remedy for the Hooker-Ruco Site Sub-Plume to include
any treatment facilities at the LWD Wells. *Id.* ¶¶ 32–33. In any event, Hempstead brought claims
against Occidental and the Covestro defendants, alleging that "contaminated groundwater
emanating from the Hooker/Ruco site . . . is commingled with the groundwater plume emanating
from the NWIRP/Northrup Grumman Site which," the Town claims, was impacting its wells.
Compl. ¶ 51.

A little more than five months after Hempstead brought suit, on December 2, 2016, the
defendants separately moved to dismiss the complaint. *See* Dkt. Nos. 51, 54, 55, 59. On
September 18, 2017, the Honorable Joseph F. Bianco, then a judge of this court and now a judge
of the United States Court of Appeals for the Second Circuit, denied the motions in their entirety,
except the court dismissed the Town's private nuisance claim against the Covestro defendants and
the federal defendants. *See* Dkt. No. 77. The Court also divided the case into two phases. *See*
Dkt. No. 92. Phase I addresses the Town's CERCLA claims, and Phase II addresses the Town's
common law claims. Discovery on the Phase II claims was stayed pending briefing on the motions
for summary judgment. *See* Dkt. No. 113. On December 6, 2021, all defendants moved for
summary judgment, seeking dismissal of the Town's Phase I CERCLA claims. *See* Dkt. Nos. 162,
163, 180, 198. Although no defendants sought dismissal directly on the Phase II common law
claims, Northrup and Occidental argued that dismissal of the CERCLA claims would compel

dismissal of the common law claims as well, thus bringing the case to judgment and closure of the docket.

### Legal Standards

A.   Summary Judgment

Summary judgment shall be granted in the absence of a genuine dispute as to any material fact and upon a showing that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). "[A] fact is material if it 'might affect the outcome of the suit under the governing law.'" *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene of N.Y.*, 746 F.3d 538, 544 (2d Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986)). A dispute over material facts is "genuine" where "a reasonable jury could return a verdict for the nonmoving party" based on the evidence cited. *Anderson*, 477 U.S. at 248. In determining whether genuine issues of fact exist, "'the district court may not properly consider the record in piecemeal fashion, trusting innocent explanations for individual strands of evidence.'" *Moll v. Telesector Res. Grp., Inc.*, 94 F.4th 218, 227 (2d Cir. 2024) (quoting *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 45 (2d Cir. 2019)).

Assertions of fact made in connection with a motion for summary judgment must be supported by citations "to particular parts of materials in the record" that could be presented as admissible in evidence, which may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A), (c)(2); *Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 57 (2d Cir. 2012). "Before summary judgment may be entered, the district court must ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden

7

Case 2:16-cv-03652-ENV-ST    Document 205    Filed 04/21/25    Page 9 of 29 PageID #:
20654
Case 2:16-cv-03652-ENV-ST    Document 203    Filed 02/16/25    Page 8 of 27 PageID #:
20625

of production even if the statement is unopposed." *Jackson v. Fed. Express*, 766 F.3d 189, 194

(2d Cir. 2014). With that standard in mind, the Court's job at this stage is not to try the facts but

instead to merely "determine whether there are issues of fact to be tried." *Sutera v. Schering Corp.*,

73 F.3d 13, 16 (2d Cir. 1995) (citing *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 244 (2d

Cir. 1984)).

The movant carries the burden of demonstrating that there is no genuine dispute as to any

material fact, *see Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005), and the Court

will resolve all ambiguities and draw all permissible factual inferences in the light most favorable

to the party opposing the motion. *See Reese v. Triborough Bridge & Tunnel Auth.*, 91 F.4th 582,

589 (2d Cir. 2024). Where the nonmoving party "will bear the burden of proof at trial," it bears

the initial procedural burden at summary judgment of demonstrating that undisputed facts

"establish the existence of [each] element essential to that party's case[.]" *Celotex Corp.*, 477 U.S.

at 322–23. "If, as to the issue on which summary judgment is sought, there is any evidence in the

record from which a reasonable inference could be drawn in favor of the opposing party, summary

judgment is improper." *Hetchkop v. Woodlawn at Grassmere, Inc.*, 116 F.3d 28, 33 (2d Cir. 1997).

Since the controlling rule of civil procedure is the same, the standard for granting summary

judgment in CERCLA cases is not different from other cases. *B.F. Goodrich Co. v. Betkoski*, 99

F.3d 505, 521 (2d Cir. 1996), *reh'g. denied*, 112 F.3d 88 (1997). At the same time, given the types

of facts and issues presented in such cases, the Second Circuit has recognized that, in CERCLA

cases, summary judgment "is a 'powerful legal tool' that 'can avoid lengthy and perhaps needless

litigation.'" *B.F. Goodrich Co.*, 99 F.3d at 514 (quoting *U.S. v. Alcan Aluminum Corp.*, 990 F.2d

711, 720 (2d Cir. 1993)).

### B.   CERCLA Statutory Scheme

CERCLA was designed to "'assur[e] that those responsible for any damage, environmental harm, or injury from chemical poisons bear the costs of their actions.'" *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 120 (2d Cir. 2010) (quoting S. Rep. No. 96–848, at 13 (1980)). "Because it is a remedial statute, CERCLA must be construed liberally to effectuate its two primary goals:  (1) enabling [] EPA to respond efficiently and expeditiously to toxic spills, and (2) holding those parties responsible for the releases liable for the costs of the cleanup." *B.F. Goodrich Co. v. Murtha*, 958 F.2d 1192, 1198 (2d Cir. 1992).

Under CERCLA, "property owners are strictly liable for the hazardous materials on their property, regardless of whether or not they deposited them there." *Niagara Mohawk*, 596 F.3d at 120.  But CERCLA leaves room for the chancellor's boot.  The statute allows property owners "to seek reimbursement of their cleanup costs . . . from certain polluters," also known as "potentially responsible parties ('PRPs')." *Id.* (quoting 42 U.S.C. § 9607(a)).  CERCLA Section 107 "authorizes the United States, a state, or 'any other person' to seek reimbursement for all removal or remedial costs associated with the hazardous materials on the property, provided that those actions are consistent with the National Contingency Plan—the federal government's roadmap for responding to the release of hazardous substances." *Id.* at 120–21 (citing 42 U.S.C. § 9607(a)(4)).

"A *prima facie* cause of action under CERCLA requires a plaintiff to establish:  (1) defendant fits one of the four classes of responsible parties outlined in § 9607(a); (2) the site is a facility; (3) there is a release or threatened release of hazardous substances at the facility; (4) the plaintiff incurred costs responding to the release or threatened release; and (5) the costs and response actions conform to the National Contingency Plan." *B.F. Goodrich*, 958 F.2d at 1198 (citing *State of New York v. Shore Realty Corp.*, 759 F.2d 1032, 1043 (2d Cir. 1985)).

9

<u>Discussion</u>

Putting the pre-lawsuit position-taking into a real-world context, Hempstead seeks to recover the approximately $8.4 million in response costs for its construction of the wellhead treatment system for the LWD Wells under CERCLA Section 107. Defendants seek summary judgment, arguing that dismissal is proper because Hempstead has failed to establish two elements of its *prima facie* case: *first*, defendants contend that releases from their respective sites—the NWIRP Site for the federal defendants and Northrup and the Hooker-Ruco Site for Occidental and the Covestro defendants—did not cause the Town to incur response costs; and *second*, even if the causation element were met, the Town's costs were neither necessary nor consistent with the National Contingency Plan. In a foundational retort, Hempstead contends that, material facts being in dispute, summary judgment on these claims is barred.

The general principles guiding CERCLA liability determinations are well-established. There is, of course, the critical requirement that a CERCLA plaintiff make a showing of casualty. Plaintiffs seeking to impose liability under CERCLA must demonstrate a causal connection between a release or threatened release and its incurrence of response costs. *See Freeman v. Glaxo Wellcome, Inc.*, 189 F.3d 160, 163 (2d Cir. 1999); *New York v. Next Millenium Realty, LLC*, 160 F. Supp. 3d 485, 504 (E.D.N.Y. 2016).[4] But, that does not mean that the applicable liability rules are one size fits all.

.

---

[4] The Town incorrectly contends that CERCLA § 107(a)'s causation requirement applies only to arranger liability. *See* Pl. Opp. to Fed. Defs. Mot. ("Pl. Fed. Opp."), Dkt. No. 167, at 18–19. In fact, the Second Circuit has not limited the causal requirement to arranger liability because that would be contrary to the statute. *See ABB Indus. Sys., Inc. v. Prime Tech., Inc.*, 120 F.3d 351, 356 (2d Cir. 1997) (requiring plaintiff to show that it "incurred costs *in response to* the release or threatened release); *see also Artesian Water Co. v. Gov't of New Castle Cty.*, 269 F. Supp. 1269, 1282 (D. Del. 1987), *aff'd* 851 F.2d 643 (3d Cir. 1988) ("CERCLA's strict liability scheme does not diminish the necessity of demonstrating a causal connection between a release or threatened release and the incurrence of costs by a section 107 plaintiff.") (citing *Shore Realty Corp.*, 759 F.2d at 1044 n. 17).

For example, CERCLA cases concerning two areas of potential contamination, a primary site and a secondary downgradient site, are referred to as "two-site" cases. *See New York v. Adamowicz*, 16 F. Supp. 3d 123, 140 (E.D.N.Y. 2014), *aff'd* 609 F. App'x 19 (2d Cir. 2015). While CERCLA is a strict liability statute—imposing liability on property owners for the hazardous materials on their property, regardless of whether they deposited them there—numerous circuit courts have determined that a different causation standard applies to plaintiffs seeking to recover in two-site cases; these plaintiffs must show a nexus between the release of contaminants on the primary site and the costs incurred on the downgradient site. *See, e.g., Kalamazoo River Study Group v. Rockwell Int'l Corp.*, 171 F.3d 1065, 1068 (6th Cir. 1999) (in order to make out a *prima facie* case in a "two-site" case, a plaintiff "must establish a causal connection between the defendant's release of hazardous substances and the plaintiff's response costs incurred in cleaning them up."); *White v. County of Newberry*, 985 F.2d 168, 174–75 (4th Cir. 1993) (requiring plaintiffs to prove "a release or threatened release of a hazardous substance from the County's maintenance facility that caused the [plaintiff] to incur response costs"); *Amoco Oil Co. v. Borden, Inc.*, 889 F.2d 664, 670 (5th Cir. 1989) ("the relevant factual inquiry should focus on whether the particular hazard justified any response actions.").[5]

Although it is clear from CERCLA litigation nationally that two-site cases present the need for a different approach to causality, the Second Circuit has not embraced a singular approach in such cases as binding precedent. But multiple district courts in this circuit have, however, required

---

[5] Plaintiff is mistaken to the extent it interprets CERCLA's strict liability statutory scheme as removing a causation requirement in two-site cases. *See* Pl. Fed. Opp. at 18. Projecting strict liability onto two-site cases would open the floodgates of liability by allowing any party who discovers groundwater contamination on its land to successfully sue every party who ever released the contaminant of concern on separate land. CERCLA is meant to be construed liberally, but it cannot countenance such an absurd result. Indeed, "finding that § 9607(a) imposes strict liability does not rebut [defendants'] causation argument," as "[t]raditional tort law has often imposed strict liability while recognizing a causation defense." *Shore Realty Corp.*, 759 F.2d at 1044 n. 17.

the showing of a nexus between the contamination at the downgradient site and a release at the primary site. *See, e.g., Adamowicz*, 16 F. Supp. 3d at 141 (citing *Artesian Water Co.*, 659 F. Supp. at 1283) (a plaintiff must "show that the release at the Site was a substantial factor in incurring downgradient response actions."); *DVL, Inc. v. General Elec. Co.*, 811 F. Supp. 2d 579, 597 (N.D.N.Y. 2010) (a plaintiff must "provide [] evidence of a nexus between [] defendant's waste and the contamination at the [site]"); *Innis Arden Golf Club v. Pitney Bowes, Inc.*, 629 F. Supp. 2d 176, 185–187 (D. Conn. 2009) (finding "[s]upport" in "the text of § 107" for the principle that "plaintiff must establish a causal connection"). Given the persuasiveness of the argument for this approach, buttressed by the favor it has found among other district courts in this Circuit, the Court elects to follow these cases and recognize that plaintiffs in two-site cases must provide evidence that their cleanup costs were caused by the release of contaminants at the primary site.[6]

Notwithstanding the causation standard used to assess them, defendants' summary judgment motions require the parties to make a showing of facts relating to the hydrology of the affected land, the creation of contaminants, actual contamination, a need to respond, and the nature of any required remedial response. The record evinces the intent of the parties to make such showings. With respect to Hempstead's chief complaint that Freon-113 contaminated its wells, the federal defendants and Northrup point out that Freon-113 is a common groundwater contaminant, and evidence indicates there are sources of Freon-113 upgradient of the LWD Wells

---

[6] With *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112 (2d Cir. 2010) as its buckler, Hempstead presses its argument against this causation standard, contending that, in *Niagara Mohawk*, the Second Circuit "applied the same standard to a two-site case as it did to one-site cases." Pl. Fed. Opp. at 22–23. But *Niagara Mohawk* is not to the contrary. While the Second Circuit in *Niagara Mohawk* stated that the plaintiff need not "prove with certainty that a [] defendant discharged the hazardous material" in order to recover, 596 F.3d at 132, the defendant was only found liable "because there [was] evidence in the record that [defendant] may have deposited hazardous materials that settled" at plaintiff's site. 596 F.3d at 135. Specifically, defendant's expert testified that hazardous materials left behind on plaintiff's property "originated at [defendant's] Plant." *Id.* Thus, just like the two-site cases from other circuits, the Second Circuit only determined liability after looking favorably on direct evidence linking the release of hazardous materials from the primary site to the ultimate cleanup costs.

and west of the NWIRP Site that the Town's consultant did not consider in designing the treatment systems. *See* Northrup Rule 56.1 Stmt. ¶¶ 64, 87–89. In fact, the Town's water commissioner admitted at his deposition that, as of June 2015, the Town had no evidence that the alleged contamination in the LWD Wells emanated from the NWIRP Site, nor could the commissioner point to a specific report or document identifying the NWIRP Site as the source of contamination at the LWD Wells. *See* Schumacher Decl. Ex. H (Reinhardt Dep. Tr.), Dkt No. 166-8, at 76:7–13; 144:18–145:4. Indeed, the Town has not offered any such admissible report or document covering the period from 2015 to the submission of the summary judgment motions. More to the point, defendants highlight evidence from the Town's own expert that the NWIRP Site is not upgradient of the LWD Wells, as the current groundwater flows *southeast* and the LWD Wells are located *southwest* of the NWIRP Site. *See* Northrup Rule 56.1 Stmt. ¶ 73. Thus, defendants assert, "[i]t does not make hydrogeological sense that the LWD Wells would even be affected by the OU2 plume." Northrup Mot., Dkt. No. 162-1, at 27.

The marshalling of these facts by defendants requires a factual response in kind to establish the existence of a material fact dispute. Instead, the Town invites the Court to speculate. In essence, Hempstead asks the court to consider why an outpost monitoring well was placed by LWD Well 13, which suggests to Hempstead that the groundwater flows from the NWIRP Site to the LWD Wells in a southwesterly direction. Pl. Fed. Opp. at 30–31. But, as the federal defendants and Northrup make clear, the outpost monitoring well for LWD 13 was installed only as a "conservative measure," as modeling showed that LWD Well 13 would not be impacted by the OU2 plume within the 30-year evaluation period. *See* Northrup Rule 56.1 Stmt. ¶ 28. Moreover, the PWSCP itself, which the Town is a party to, states that the "regional groundwater flow direction" "is migrating generally to the south/southeast." Miller Decl. Ex. 6 (PWSCP), Dkt. No.

Case: 25-1000, 05/02/2025, DktEntry: 16.1, Page 24 of 104

Case 2:16-cv-03652-ENV-ST    Document 205    Filed 04/21/25    Page 15 of 29 PageID #:
20660
Case 2:16-cv-03652-ENV-ST    Document 203    Filed 02/16/25    Page 14 of 27 PageID #:
20631

179-7, at 8. The Town's expert further speculates that the groundwater flow direction *may* have been different "decades ago," but notably does not even suggest that groundwater previously flowed in a southwesterly direction. *See* Miller Decl. Ex. 27 (H2M Expert Report), Dkt. No. 179-28, at 4. Since the current southeasterly flow of the groundwater is unchallenged, and in fact accepted by all parties, the Court agrees with Northrup and the federal defendants that the NWIRP Site could not have been the source of the Freon-113 in the LWD Wells.

The federal defendants' and Northrup's assault on causation does not end there, as their submission of plausibly uncontroverted facts and argument continue to jackhammer away at causality. For example, their submissions zero in on the virtual absence of the compound TCE— the predominant substance associated with the NWIRP Site, *see* Fed. Defs. Rule 56.1 Stmt. ¶ 105—in the LWD Wells, reasoning that "[i]f the Freon-113 in the LWD Wells came from the TCE-characterized OU2 plume, then TCE should also be present." Northrup Mot. at 26. The Town's groundwater modeling expert attempts to provide the missing link by presenting evidence that Freon-113 travels faster in groundwater than TCE, *see* Northrup Rule 56.1 Smt. ¶ 92, but defendants point out certain flaws in the expert's analysis that fatally undermine its reliability. For example, the expert admits that his opinion only applies to "pure" (*i.e.*, undissolved) forms of TCE and Freon-113, which do not exist in the OU2 plume. *See id.* ¶ 93. Further, the expert admitted at deposition that the two substances would travel at roughly the same rate of speed at the concentrations detected in the plume. *Id.* ¶ 94.[7] Also missing in his analysis is an explanation for

---

[7] The Town supports its opposition to the motions for summary judgment by filing a new expert declaration, which includes the opinion that Freon-113 travels at a faster pace in groundwater than TCE. *See Hazlett* Decl., Dkt. No. 175 ¶¶ 20–22. While an expert affidavit providing evidentiary details for an opinion expressed in an expert report may be considered in opposition to summary judgment, this declaration must be disregarded under the "Sham Affidavit" rule because it contradicts prior sworn testimony previously offered on behalf of the same party that the two substances would travel at the same rate of speed at the concentrations detected in the plume. *See Mack v. United States*, 814 F.2d 120, 124 (2d Cir. 1987) ("It is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment); *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) ("factual allegations that might otherwise defeat a motion for summary

Case 2:16-cv-03652-ENV-ST    Document 205    Filed 04/21/25    Page 16 of 29 PageID #:
20661
Case 2:16-cv-03652-ENV-ST    Document 203    Filed 02/16/25    Page 15 of 27 PageID #:
20632

why LWD is the only water district allegedly affected by the OU2 plume that had only Freon-113 present in its wells. *Id.* ¶ 77. The Town therefore cannot explain how, if the NWIRP Site was indeed the source of the contamination, no TCE was found in the LWD Wells.

The Town's affirmative theories of causation, as supported by its various experts, also break down under further scrutiny. *First*, the Town's "source" expert opines that there may be a distinct Freon-113 plume at the western boundary of the OU2 plume due to "voids" in the ONCT at the Site, *id.* ¶ 74, which purportedly explains the standalone Freon-113 samples in the LWD Wells. Yet the opinion does not attempt to explain, much less factually demonstrate, what caused the contamination; instead, the opinion is only a theory about how the contamination "might" have occurred. Tellingly, the "void" theory was not accepted by DEC when presented to them. *Id.* In fact, DEC determined that the ONCT has been effective and has never concluded that the ONCT has voids that would allow contaminants to migrate from on-site to off-site. *Id.* ¶ 12. *Second*, the Town's expert on groundwater modeling performed a "capture zone" analysis, showing that the area from which the LWD Wells draw water overlaps with the OU2 plume. *Id.* ¶ 95. But the expert admitted that his "capture zone" analysis does not model contaminant fate and transport, *see id.* ¶ 96, meaning his analysis does not assist in answering the central inquiry of where the Freon-113 found in the LWD Wells originated. Nor does the "capture zone" analysis, according to the expert, rule out non-NWIRP Site sources of the Freon-113 in the LWD Wells. *Id.* ¶ 97

Given the discussed flaws in the "void" and "capture" theories of causation, Hempstead is left to rely on proximity alone: In the Town's telling, that the NWIRP Site is located near the LWD Wells and Freon-113 has been detected in both the LWD Wells and the OU2 plume is

---

judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts her own prior deposition testimony"). The same rule holds true when a party offers an expert declaration in opposition to a motion for summary judgment that contradicts the expert's original sworn opinion. *See Clark v. Quiros*, 693 F. Supp. 3d 254, 283 (D. Conn. 2023).

Case: 25-1000, 05/02/2025, DktEntry: 16.1, Page 26 of 104

Case 2:16-cv-03652-ENV-ST    Document 205    Filed 04/21/25    Page 17 of 29 PageID #:
20662
Case 2:16-cv-03652-ENV-ST    Document 203    Filed 02/16/25    Page 16 of 27 PageID #:
20633

enough to create an issue of fact regarding source. But the holding in *DVL, Inc. v. General Electric Company* instructs that summary judgment is proper where, as here, plaintiff's only explanation for causation is proximity. 811 F. Supp. 2d at 597. In *DVL*, the court found the plaintiff's evidence insufficient to establish a causal link where "DVL's CERCLA claim against GE appears to rest largely on the fact that GE owns the property adjacent to the DVL Site; the soil in that property is PCB-contaminated; . . . [and] the PCBs contaminating the subject property match those used at GE's Fort Edwards Site." *DVL*, 811 F. Supp. 2d at 597–98. The *DVL* court also noted that "DVL offers no evidence that the deposits on GE's land made their way down to the DVL Site," *id.* at 599, which is similar to the Town's inability to produce evidence that deposits from defendants' land made its way to the LWD Wells. Just like the plaintiff in *DVL*, the Town needs to present more than evidence of spatial proximity to show causation and survive the motions for summary judgment. Because plaintiff fails to do so, the federal defendants and Northrup's motions for summary judgment must be granted.

Hempstead's failure to make a showing of causality essential to carrying the proof burden CERCLA § 107 demands is, if anything, starker with respect to the claims it interposes against Occidental and the Covestro defendants. To begin with, Freon-113 was not identified as part of the manufacturing process at the Hooker-Ruco Site, was not identified as a contaminant of concern for the Hooker-Ruco Site, and was not detected in the groundwater underlying or emanating from the Hooker-Ruco Site. *See* Johnson Decl. Ex. C (Johnson Report), Dkt. No. 180-22, at 5, 15, 29–31. Moreover, the primary contaminant of concern defining the Hooker-Ruco Sub-Plume, VCM, was not found in the LWD Wells, *see id.* at 6, 29, and the Town does not explain how Freon-113 could have migrated to the LWD Wells in the absence of VCM. Finally, and most damaging to the Town's theory of causation, Occidental's expert report, to which no competent retort is offered,

Case: 25-1000, 05/02/2025, DktEntry: 16.1, Page 27 of 104

Case 2:16-cv-03652-ENV-ST    Document 205    Filed 04/21/25    Page 18 of 29 PageID #:
20663
Case 2:16-cv-03652-ENV-ST    Document 203    Filed 02/16/25    Page 17 of 27 PageID #:
20634

explains that the rate at which groundwater in the area generally moves is too slow for substances emanating at the Hooker-Ruco Site to have migrated the 15,000 feet to the LWD Wells in the relevant time period. *See id.* at 20, 30; *Kalamazoo River*, 171 F.3d at 1069–1073 (affirming grant of summary judgment to defendant who demonstrated lack of necessary causal link by submitting expert evidence that contaminants from the upgradient site did not reach the downgradient one).[8]

Teetering from the start, bumped by the admission by the Town's Water Commissioner that he was unaware of any factual basis which could support a finding that the Hooker-Ruco Site may have been the source of the Freon-113 found in the LWD Wells, *see* Covestro defendants Rule 56.1 Stmt. ¶¶ 15–16, Hempstead argues that Freon-113 was "used and likely discharged at the Hooker-Ruco Site and likely migrated off-site and commingled with the OU2 plume," and the commingled plume impacted its wells. *See* Pl. Opp. to Occidental Mot. ("Pl. Occ. Opp."), Dkt. No. 180-26, at 18, 22–28. Struggling to find something beyond sheer speculation to support its argument, the Town rests on three disparate and obscure references to Freon-113 dating back almost 50 years, but these references—which at most show that Freon-113 existed at the Hooker-Ruco Site—fail to create a dispute about any material fact, even when considered collectively with the Town's other evidence.

The first reference is hidden in a 1977 "Raw Materials Requirement" list, which included Freon-113 as one of the chemicals purchased for use at the Hooker-Ruco Site for the calendar year 1974. But Hempstead offers no proof as to what, if any, use Occidental or the Covestro defendants made of the substance at the Site, nor does it offer any evidence to distance itself from a document that answers the question: a 1979 Occidental interoffice memorandum showing that Freon-113

---

[8] Hempstead disputes the distance, as calculated by the defense expert, between the Hooker-Ruco Site and the Wells, *see* Pl. Rule 56.1 Response, Dkt. No. 180-28, ¶ 24, but the expert report, which, on this point, is not plausibly disputed, makes clear that the rate at which groundwater moves was too slow to even travel the lesser distance claimed by the Town. *See* Johnson Report at 20.

Case 2:16-cv-03652-ENV-ST    Document 205    Filed 04/21/25    Page 19 of 29 PageID #:
20664
Case 2:16-cv-03652-ENV-ST    Document 203    Filed 02/16/25    Page 18 of 27 PageID #:
20635

was neither used, manufactured, nor discharged at the Hooker-Ruco Site. *See* McDonald Decl.
Ex. A (1979 Memo), Dkt. No. 180-158 at 3. The Town next offers groundwater and soil sampling
from the Hooker-Ruco Site in 1989 and 1990 which purports to show the inclusion of Freon-113,
but the record reveals that these samples were rejected because the "blanks"—*i.e.*, separate
samples used as control groups—also revealed the presence of Freon-113, indicating test invalidity
and neutering its evidentiary relevance. *See* Johnson Decl., Ex. C at 16. In its final effort to
connect the Hooker-Ruco Site to its response costs, the Town points to an appendix to the 2005
Final Design Report that Occidental submitted to EPA for approval of its oxygen treatment system;
the appendix contains a list of chemical compounds previously detected in soils and groundwater
"at and in the vicinity of the Hooker-Ruco Site," including Freon-113. *See* Fisher Decl. Ex. 119
(Final Design Report), Dkt. No. 198-144, at 20. However, this reference does not help the Town
in the way it supposes, as "in the vicinity" suggests that not every compound identified in the
appendix was actually found on the Hooker-Ruco Site itself. Aside from evidence showing that
on one occasion Occidental ordered Freon-113 in connection with the Site and that Freon-113 was
found to exist somewhere on land in the vicinity of the Site, Hempstead's claim that Freon-113
was used at the Hooker-Ruco Site essentially rests on speculation contravened by compelling
evidence offered by Occidental that Freon-113 was never used in any of the processes conducted
at the Site.

Although the Court does not believe that the evidence proffered by the Town creates a
disputed fact on whether Freon-113 existed at the Hooker-Ruco Site, assuming for purposes of
argument that it does, it does not advance the Town's cause on Occidental's and the Covestro
defendants' motions for summary judgment. Indeed, any dispute on this point is immaterial. As
discussed above, even assuming the presence of Freon-113 contamination at the Hooker-Ruco

18

Case 2:16-cv-03652-ENV-ST   Document 203   Filed 02/16/25   Page 19 of 27 PageID #:
20636

Site, the Town offers no explanation for:  (1) how the Freon-113 traveled to the Town's wells without the predominant contaminant of concern in the Hooker-Ruco sub-plume; and (2) how Freon-113 could have migrated from the Hooker-Ruco Site to the Town's Wells given the rate at which groundwater travels and the distance and time involved.  Thus, Occidental's and the Covestro defendants' motions for summary judgment must be, and are, granted.

Equally fatal as the failure to establish causation, and an alternative basis for the Court's entry of summary judgment for defendants, Hempstead's CERCLA claims fail to pass muster under the National Contingency Plan (the "NCP").  As explained in *Town of Oyster Bay v. Northrup Grumman Systems Corporation*, a private party plaintiff must establish that its response costs were both "necessary" and incurred consistent with the NCP to sustain a CERCLA § 107 claim.  No. 05-cv-1945, 2009 WL 10691086, at *19, 23–24 (E.D.N.Y. May 14, 2009) (citing 42 U.S.C. § 9607(a)(4)(B)) (granting summary judgment on CERCLA claims because the plaintiff town, just like Hempstead here, did not follow the NCP); *see also B.F. Goodrich Co.*, 952 F.2d at 1198.  A "private party response action will be considered consistent with the NCP if the action, when evaluated as a whole, is in substantial compliance with the applicable requirements" of the NCP.  40 C.F.R. § 300.700(c)(3)(i).  This is so while recognizing that "[i]mmaterial or insubstantial deviations" from the NCP do not render a response action inconsistent with the NCP.  40 C.F.R. § 300.700(c)(4).

Where the presence of contamination is acknowledged and response action is taken, a first step adjudication is required to determine whether the response action was a removal action or a remedial action.  "Removal actions are clean-up or removal measures taken to respond to immediate threats to public health and safety," whereas "[r]emedial actions are generally actions designed to permanently remediate hazardous waste."  *New York v. Next Millenium Realty, LLC*,

19

Case 2:16-cv-03652-ENV-ST    Document 205    Filed 04/21/25    Page 21 of 29 PageID #:
20666
Case 2:16-cv-03652-ENV-ST    Document 203    Filed 02/16/25    Page 20 of 27 PageID #:
20637

732 F.3d 117, 124–25 (2d Cir. 2013) (citing 42 U.S.C. §§ 9601(24)–(25)). The distinction can be

dispositive since the NCP requirements for remedial actions are more stringent than those for

removal actions. *See Carson Harbor Village, Ltd. v. Unocal Corp.*, 287 F. Supp. 2d 1118, 1155

(C.D. Cal. 2003) ("Because of the exigency inherent in removal actions, the statutory requirements

for NCP compliance relative to such actions are somewhat more relaxed."); *Public Service Co. of

Colo. v. Gates Rubber Co.*, 175 F.3d 1177, 1183 (10th Cir. 1999). But a ruling on whether

Hempstead's response is a removal or remedial action is unnecessary, as it cannot even create a

material dispute of fact to disprove defendants' showing that the response actions the Town took

do not substantially comply with the more relaxed standards for NCP compliance for removal

actions.

     *First*, the Town did not provide sufficient opportunity for public comment, which "must

be provided regardless of whether a removal or remedial action is performed." *VME Americas,

Inc. v. Hein-Werner Corp.*, 946 F. Supp. 683, 690 (E.D. Wi. 1996) (granting summary judgment

where plaintiff seeking reimbursement for costs incurred did not comply with public notice and

comment requirements of the NCP).[9] As a general matter, the NCP states that "[p]rivate parties

undertaking response actions should provide an opportunity for public comment concerning the

selection of the response action." 40 C.F.R. § 300.700(c)(6). With regard specifically to

"community relations in removal actions," the NCP provides that the Town "shall inform the

---

[9] In opposition, plaintiff cites *Versatile Metals, Inc. v. Union Corp.*, 693 F. Supp. 1563, 1577 (E.D. Pa. 1988) and *Carlyle Piermont Corp. v. Federal Paper Bd. Co.*, 742 F. Supp. 814, 818 (S.D.N.Y. 1990) for the propositions that "[r]emoval actions are not subject to the lengthy procedural requirements of the NCP" and the "requirements for a removal action do not include provisions for appropriate comment." *See* Pl. Occ. Opp. at 45. However, both *Versatile Metals* and *Carlyle* evaluated recovery actions that pre-dated the substantial revision to the NCP that took effect on April 9, 1990. Not only are the two versions of the NCP accompanied by different compliance standards, *see VME America*, 946 F. Supp. at 689, but the new version, unlike the older version, requires Town's seeking to recover for removal actions to comply with the NCP, including its public participation requirements. *Compare* 40 C.F.R. § 300.415(n)(1), *with* 40 C.F.R. § 300.65.

community of actions taken, respond to inquiries, and provide information concerning the release."
40 C.F.R. § 300.415(n)(1); 40 C.F.R. § 300.700(c)(5)(vi). Here, the Town admitted that it did not
provide the public with any notice or opportunity to comment on the proposed treatment system
prior to the selection of its remedy and the commencement of construction on one of the treatment
systems, *see* Northrop 56.1 Stmt. ¶¶ 44, 139–142, which is fatal to its claim. *See VME Americas*,
946 F. Supp. at 690. Nor does the Town's July 2015 "letter to the LWD community about the
proposed well site improvements," Pl. Occ. Opp. at 57–58, bring it into substantial compliance
with the NCP, as the letter was sent *after* the Town had begun construction on its treatment plan
for LWD Well 13 and *after* it approved design reports for the other wells.[10]

Furthermore, the Town's motion papers are barren of any evidence to create even the
slightest doubt that it ignored its obligations under the NCP by not studying the cost-effectiveness
of its plan and incurring unnecessary expenses in its implementation. To begin with, there is no
evidence that the Town engaged in a remedial investigation/feasibility study ("RI/FS") required
for remedial actions, or even the less formal Engineering Evaluation/Cost Analysis ("EE/CA")
required for long-term removal actions. *See* 40 C.F.R. § 300.415(b)(4) ("Whenever a planning
period of at least six months exists before on-site activities must be initiated, and the lead agency
determines, based on a site evaluation, that a removal action is appropriate: (i) The lead agency
shall conduct an engineering evaluation/cost analysis (EE/CA) or its equivalent."). An EE/CA
considers the nature and extent of site contamination and any threats to human health or the
environment, as well as analyzes the effectiveness, implementability, and cost alternatives that
may satisfy the objectives of the removal action prior to recommending a course of action. *See*

---

[10] Tellingly, the July 2015 letter did not even reference the work commenced on LWD Well 13, *see* Fisher Decl. Ex. 22 (July 2015 Letter), Dkt. No. 171-22, so plaintiff's argument that the letter satisfied the public participation requirement of the NCP fails on its face.

Case 2:16-cv-03652-ENV-ST   Document 205   Filed 04/21/25   Page 23 of 29 PageID #:
20668
Case 2:16-cv-03652-ENV-ST   Document 203   Filed 02/16/25   Page 22 of 27 PageID #:
20639

Miller Decl. Ex. 10 (Herman Expert Report), Dkt. No. 179-11, at 23. The Town's hired engineer prepared design reports, but those reports did not include a risk evaluation, alternatives analysis, or any other of the hallmarks of an EE/CA to ensure that a chosen remedy is cost effective.

Compounding its mistake in not performing a pre-implementation cost analysis, the record reveals that Hempstead incurred unnecessary expenses by overdesigning its remedy even though CERCLA only allows a plaintiff to recover the "necessary costs of response . . . consistent with the national contingency plan." 42 U.S.C. § 9607(a)(1–4)(B). For example, D&B designed the treatment systems to treat 420 μg/l of TCE even though no TCE had been found in the LWD Wells. *See* Northrup Rule 56.1 Stmt. ¶¶ 70–71, 103. No Town representative or expert has been able to explain why it chose this aggressive threshold, and Northrup's treatment design expert determined that the 420 μg/l design criteria led to unnecessary costs, *id.* ¶ 136, all of which is uncontroverted. Thus, the costs are unrecoverable as a matter of law because they were incurred merely to respond to a "theoretical threat," *Regional Airport Authority of Louisville v. LFG, LLC*, 460 F.3d 697, 705–06 (6th Cir. 2006), and used for a design that was "unnecessary to address the hazardous substances at issue." *Waste Management of Alameda County, Inc. v. East Bay Regional Park District*, 135 F. Supp. 2d 1071, 1099 (N.D. Cal. 2001); *see also Town of Oyster Bay*, 2009 WL 10691086, at *21–22.[11]

The Town's shortcomings in its purported compliance with the statutory requirements for NCP-qualified removal actions are laid bare by its admitted failure to understand those requirements beforehand. Straightforwardly, Hempstead's witnesses, including the Commissioner

---

[11] Hempstead also admitted that it installed the PTAS on LWD Well 7A/8A in two treatment towers due to "aesthetic" considerations unrelated to any "health based reason or regulatory reasons," Northrup Rule 56.1 Stmt. ¶¶ 117–118, even though it would have been less expensive and equally effective to use one tower. *Id.* ¶¶ 120–122. But there is "no support for any theory basing CERCLA liability on aesthetics: the concern of CERCLA is to correct a hazardous situation, not an aesthetic blight." *Milbut v. Hi-Score Plant Food Co.*, No. 91-2008, 1992 WL 396774, at *5 n.5 (E.D. Pa. Dec. 24, 1992).

of the Water Department and the engineer who designed the treatment systems, testified that they were not aware of the NCP when planning the treatment. *See* Northrop Rule 56.1 Stmt. ¶¶ 128, 131. Likewise, no one in the Town bore responsibility for ensuring that the Town complied with the NCP in connection with its treatment. *Id.* ¶ 129. The Town thus cannot show that it substantially complied with the NCP where it was unaware of the NCP's requirements, failed to engage the public's participation, and did not perform an analysis to ensure cost effectiveness. With these gaps in the Town's understanding of CERCLA compliance requirements, it is not surprising that there are no material facts in dispute.

In a tacit acknowledgement that it did not substantially comply with the letter of the NCP, the Town suggests a handful of reasons why it should be exempted from compliance. Each fails to persuade. *First*, plaintiff boldly requests a categorical exemption from NCP compliance for cleanups of drinking wells, arguing that "the requirements of the NCP do not squarely fit" cases that "involve[] the protection of the drinking water provided to the public and not the remediation of a hazardous waste site." Pl. Occ. Opp. at 41. The Town does not point to any such exemption in the NCP, nor could it: courts routinely review NCP compliance in CERCLA cases involving public water suppliers. *See, e.g.*, *Town of Halfmoon v. General Elec. Co.*, 105 F. Supp. 3d 202 (N.D.N.Y. 2015); *S. Farmingdale Water Dist. v. Coltec Indus. Inc.*, No. 05-cv-1566, 2007 WL 9718900 (E.D.N.Y. Oct. 17, 2007).

Nor do the Town's discussions with the Nassau County Department of Health ("NCDOH") remove it from the strictures of the NCP. While a private party may establish compliance with the NCP by showing that its response was conducted under the monitoring, and with the ultimate approval, of a state's environmental agency, *see Niagara Mohawk Power Corp.*, 596 F.3d at 137, DEC did not monitor or approve the Town's plans. The Town claims that "the NYSDOH and

23

Case 2:16-cv-03652-ENV-ST   Document 205   Filed 04/21/25   Page 25 of 29 PageID #:
20670
Case 2:16-cv-03652-ENV-ST   Document 203   Filed 02/16/25   Page 24 of 27 PageID #:
20641

NCDOH, with input from []DEC, had oversight and approval of the design and implementation of the wellhead treatment systems," Pl. Occ. Opp. at 57, but the record paints a different picture. The only evidence of DEC's involvement that the Town points to is that DEC provided the Town with certain documents upon request in November 2013, and the Town later provided DEC with its treatment design reports in August 2014. *See* Merklin Decl., Dkt. No. 193 ¶¶ 29, 52. Notably absent is any evidence that the Town discussed its proposed wellhead treatment system with DEC, let alone that DEC provided input, evaluated, discussed, or approved the proposal. These circumstances are a far cry from the "monitoring" and "ultimate approval" by DEC that would obviate the need for NCP compliance. *See Innis Arden Golf Club*, 629 F. Supp. 2d at 181 n.3 (granting summary judgment because, *inter alia*, a "remediation project" that "proceeded with minimal state involvement other than periodic updates" did not satisfy the NCP compliance obligation).

Finally, assuming without deciding that there is merit in the Town's argument that its compliance with the PWSCP would satisfy its requirements under the NCP, *see* Pl. Occ. Opp. at 47–55, it fails to shield Hempstead from the grant of summary judgment to defendants on their motions. Simply put, even if the argument is valid, the supporting facts are missing since Hempstead is unable to show that its actions conformed with the PWSCP. At the outset, the Town's Water Commissioner testified that he could not identify any steps in the PWSCP that the Town complied with. *See* Northrup Rule 56.1 Stmt. ¶ 23. Further, the PWSCP provides that "once the trigger value(s) has been reached and confirmed," "pre-design discussions/negotiations will commence between NAVY/Northrop Grumman and the potentially affected water district(s) so that funding for wellhead treatment or comparable alternative measure can be negotiated and provided to the water district(s)." PWSCP at 11. But the record shows that no pre-design

discussions and negotiations took place, nor was a financial agreement in place prior to the Town beginning its work. After Northrup's consultant informed the Town of the trigger value exceedances on July 12, 2012, the Town did not commence negotiations with Northrup or the federal defendants. Northrup Rule 56.1 Stmt. ¶¶ 30–32, 39. Rather, the Town opted to design and begin construction on its treatment systems, making no contact with the federal defendants or Northrup until three years later, when it requested post-design, post-construction funding. *Id.* ¶ 39. Contrary to the Town's suggestions, *see* Pl. Fed. Opp. at 56, there is nothing in the PWSCP to suggest that it was the federal defendants' or Northrup's burden to initiate negotiations or that the Town's compliance was optional. These last-ditch defenses, in sum, do not save the Town from judgment.[12]

Defendants, as one might imagine, seek to leverage the facts found undisputed in defeating Hempstead's CERCLA claims to similarly defeat its claims interposed under New York common law. Northrup argues that each of the Town's common law claims is fatally hobbled by the finding already made that plaintiff has not raised a genuine issue of material fact regarding the source of the Freon-113 in LWD Wells 7A, 8A, or 13, nullifying Hempstead's ability to prove an element essential to all of those claims, namely that chemical constituents leaving either the NWIRP Site or Hooker-Ruco Site contaminated the LWD Wells. *See* Northrup Mot. at 36–38.[13] In opposition, the Town argued the only issues properly before the Court are issues related to the Town's Phase I CERCLA claims, at least as scheduled for briefing.

---

[12] The Town also asserts a claim for declaratory judgment under Section 113(g)(2), 42 U.S.C. § 9613(g)(2) against all defendants. Because the Town has not demonstrated a valid claim under Section 107 against any defendant, defendants are also entitled to a judgment as a matter of law on the declaratory relief claim. *See Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85, 92 (2d Cir. 2000); *Town of Oyster Bay*, 2009 WL 10691086, at *24.

[13] Occidental, by contrast, argues that in the absence of viable CERCLA claims, the Court lacks jurisdiction under CERCLA § 113(h) over the common law claims. *See* Occidental Mot. 33–34. Because the Court dismisses the common law claims for the reasons outlined in Northrup's motion, the Court need not address Occidental's jurisdictional argument.

Although, as the Town correctly notes, the Phase II claims are not formally presented for consideration on these motions, the rules of procedure do not demand that form be the enemy of substance. It is true, as defendants say, that after discovery and full litigation of the common essential issue on these motions, the Town was unable to even raise a genuine disputed material fact about, much less prove causation, by connecting the Freon-113 in the LWD Wells to either the NWIRP Site or Hooker-Ruco Site. A showing of causation is, plainly, required to make out each of the common law claims advanced by the Town. *See, e.g., Suffolk Cnty. Water Auth. v. Dow Chem. Co.*, 958 N.Y.S.2d 649 (N.Y. Sup. Ct. 2010) (to make out the common law claims, like, for example, public nuisance, a plaintiff must demonstrate that there was an unreasonable interference with the rights of the public, intentionally caused by the defendant's conduct); *Fetter v. DeCamp*, 195 A.D.2d 771, 773–74 (N.Y. App. Div. 3d Dep't 1993) (granting summary judgment for the defendant in a case involving negligence for pollution of underground waters where the plaintiff did not provide evidence establishing contamination of the well or its source). Upon a search of the record in this case, the Town's failures on its CERCLA claims forecloses it from making the required showing of causation. In this posture, judicial economy will best be served by dismissing these claims now. *See ABB Indus. Sys., Inc. v. Prime Tech., Inc.*, 120 F.3d 351, 360 (2d Cir. 1997) (holding that, because plaintiff could not establish that the defendants contaminated the site in its CERCLA action, its negligence claims were also properly dismissed). Accordingly, defendants are entitled to and are awarded judgment on Hempstead's claims brought under New York common law.

## Conclusion

For the foregoing reasons, defendants' motions for summary judgment are granted in full. The Clerk of Court is directed to enter judgment accordingly and to close this case.

Case 2:16-cv-03652-ENV-ST    Document 205    Filed 04/21/25    Page 28 of 29 PageID #:
20673
Case 2:16-cv-03652-ENV-ST    Document 203    Filed 02/16/25    Page 27 of 27 PageID #:
20644

So Ordered.

Dated: Brooklyn, New York
February 16, 2025

                                                    /s/ Eric N. Vitaliano
                                                    _____
                                                    ERIC N. VITALIANO
                                                    United States District Judge

Case 2:16-cv-03652-ENV-ST   Document 205   Filed 04/21/25   Page 29 of 29 PageID #:
20674
Case 2:16-cv-03652-ENV-ST   Document 204   Filed 02/26/25   Page 1 of 1 PageID #:
20645

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
TOWN OF HEMPSTEAD,

               Plaintiff,

      v.

UNITED STATES OF AMERICA, et al.,

               Defendant.
------------------------------------------------------------X

        JUDGMENT

    16-CV-3652 (ENV) (ST)

        A Memorandum and Order of the Honorable Eric N. Vitaliano, United States District

Judge, having been filed on February 16, 2025, granting defendants' motions for summary

judgment in full; it is

        ORDERED and ADJUDGED that defendants' motions for summary judgment are granted

in full.

Dated: Brooklyn, New York
       February 26, 2025

               Brenna B. Mahoney
               Clerk of Court

            By:    /s/Jalitza Poveda
                    Deputy Clerk

# EXHIBIT B

APPEAL,ACO

# U.S. District Court
## Eastern District of New York (Central Islip)
## CIVIL DOCKET FOR CASE #: 2:16-cv-03652-ENV-ST

| | |
|---|---|
| Town of Hempstead et al v. United States of America et al | Date Filed: 06/30/2016 |
| Assigned to: Judge Eric N. Vitaliano | Date Terminated: 02/26/2025 |
| Referred to: Magistrate Judge Steven Tiscione | Jury Demand: Plaintiff |
| Demand: $50,000,000 | Nature of Suit: 893 Environmental Matters |
| Cause: 42:6901 Environmental Cleanup Expenses | Jurisdiction: U.S. Government Defendant |

## Plaintiff

**Town of Hempstead**                          represented by    **Laurel R. Kretzing**
Jaspan Schlesinger LLP
300 Garden City Plaza
Ste 5th Floor
Garden City, NY 11530
516-746-8000
Fax: 516-393-8282
Email: lkretzing@jaspanllp.com
*TERMINATED: 05/23/2018*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott B. Fisher**
Jaspan Schlesinger Narendran LLP
300 Garden City Plaza
Ste 5th Floor
Garden City, NY 11530
516-746-8000
Fax: 516-393-8282
Email: sfisher@jaspanllp.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lisa Cairo**
Jaspan Schlesinger LLP
300 Garden City Plaza
5th Floor
Garden City, NY 11530
516-393-8267
Fax: 516-393-8282
Email: lcairo@jshllp.com
*TERMINATED: 12/21/2020*
*ATTORNEY TO BE NOTICED*

**Samantha Marie Guido**
Jaspan Schlesinger LLP
NY
300 Garden City Plaza
Ste 5th Floor

5/2/25, 10:20 AM

Case: 25-1000, 05/02/2025, DktEntry: 16.1, Page 41 of 104
Eastern District of New York - LIVE Database 1.8 (Revision 1.8.1)

Garden City, NY 11530
631-252-0153
Email: sguido@jaspanllp.com
*TERMINATED: 04/29/2022*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**United States of America**                represented by   **Robert W. Schumacher , II**
                                                             U.S. Attorney's Office /EDNY
                                                             Eastern District Of New York
                                                             610 Federal Plaza
                                                             Central Islip, NY 11722
                                                             631-715-7871
                                                             Fax: 631-715-7920
                                                             Email: robert.schumacher@usdoj.gov
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Haroon Anwar**
                                                             DOJ-Civ
                                                             1100 L Street NW
                                                             Ste 4046
                                                             Washington, DC 20005
                                                             202-305-3661
                                                             Email: haroon.anwar@usdoj.gov
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Jason T Cohen**
                                                             DOJ-Civ
                                                             Civil Division-ETL
                                                             1100 L Street, NW
                                                             Ste 4044
                                                             Washington, DC 20005
                                                             202-514-0335
                                                             Fax: 202-616-4473
                                                             Email: jason.t.cohen@usdoj.gov
                                                             *ATTORNEY TO BE NOTICED*

**Defendant**

**Department of the Navy**                   represented by   **Robert W. Schumacher , II**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

**Defendant**

**Northrop Grumman Corporation**             represented by   **Frank Leone**
                                                             Hollingsworth LLP
                                                             1350 I Street, N W
                                                             Washington, DC 20005
                                                             202-898-5800
                                                             Fax: 202-682-1639

Email: fleone@hollingsworthllp.com
*TERMINATED: 02/08/2021*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stephen J. Darmody**
Hollingsworth LLP
1350 I Street Nw
Washington, DC 20005
202-898-5800
Fax: 202-682-1639
Email: sdarmody@hollingsworthllp.com
*TERMINATED: 03/22/2017*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Stephen A. Klein**
Hollingsworth LLP
1350 I Street, Nw
Washington, DC 20005
(202)898-5800
Fax: (202)682-1639
Email: sklein@hollingsworthllp.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Elizabeth Read Knauer**
Sive Paget & Riesel, P.C.
560 Lexington Avenue
15th floor
New York, NY 10022
212-421-2150
Fax: 212-421-1891
Email: eknauer@sprlaw.com
*ATTORNEY TO BE NOTICED*

**Mark A. Chertok**
Sive, Paget & Riesel, P.C.
560 Lexington Avenue
15th floor
New York, NY 10022
212-421-2150
Fax: 212-421-1891
Email: mchertok@sprlaw.com
*ATTORNEY TO BE NOTICED*

**Mark A. Miller**
Hollingsworth LLP
1350 I St Nw
Washington
Washiington, DC 20005
UNITED STA

202-898-5800
Fax: 202-682-1639
Email: mmiller@hollingsworthllp.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Northrop Grumman Systems**
**Corporation**                          represented by   **Frank Leone**
                                                         (See above for address)
                                                         *TERMINATED: 02/08/2021*
                                                         *LEAD ATTORNEY*
                                                         *PRO HAC VICE*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Stephen J. Darmody**
                                                         (See above for address)
                                                         *TERMINATED: 03/22/2017*
                                                         *LEAD ATTORNEY*
                                                         *PRO HAC VICE*

                                                         **Stephen A. Klein**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *PRO HAC VICE*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Elizabeth Read Knauer**
                                                         (See above for address)
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Mark A. Chertok**
                                                         (See above for address)
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Mark A. Miller**
                                                         (See above for address)
                                                         *PRO HAC VICE*
                                                         *ATTORNEY TO BE NOTICED*

**Defendant**

**Covestro LLC**                          represented by   **Timothy I. Duffy**
                                                         Schenck, Price, Smith & King
                                                         220 Park Avenue
                                                         PO Box 991
                                                         Florham Park, NJ 07932
                                                         973-539-1000
                                                         Fax: 973-540-7300
                                                         Email: tid@spsk.com
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Edward F. McTiernan**
                                                         Arnold & Porter LLP
                                                         399 Park Avenue

5/2/25, 10:20 AM

Case: 25-1000, 05/02/2025, DktEntry: 16.1, Page 44 of 104
Eastern District of New York - LIVE Database 1.8 (Revision 1.8.1)

New York, NY 10022
212-715-1024
Fax: 212-715-1399
Email: edward.mctiernan@aporter.com
*ATTORNEY TO BE NOTICED*

**Heidi Susan Minuskin**
Coughlin Duffy LLP
350 Mount Kemble Avenue
Morristown, NJ 07962
973-267-0058
Fax: 973-267-6442
Email: hsm@spsk.com
*ATTORNEY TO BE NOTICED*

**Joseph Carmine Amoroso**
Schenck, Price, Smith & King LLP
220 Park Avenue
PO Box 991
Florham Park, NJ 07932
973-539-1000
Fax: 973-540-7300
Email: jca@spsk.com
*ATTORNEY TO BE NOTICED*

| | | |
|---|---|---|
| **Defendant** | | |
| **Bayer Corporation** | represented by | **Timothy I. Duffy**<br>(See above for address)<br>*LEAD ATTORNEY* |
| | | **Edward F. McTiernan**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Heidi Susan Minuskin**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Joseph Carmine Amoroso**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| **Defendant** | | |
| **Occidental Chemical Corporation** | represented by | **Christopher Michael McDonald**<br>Whiteman Osterman & Hanna<br>One Commerce Plaza<br>Suite 1900<br>Albany, NY 12260<br>518-487-7662<br>Fax: 518-487-7777<br>Email: cmcdonald@woh.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Michael G. Sterthous**
Whiteman Osterman & Hanna
One Commerce Plaza
Albany, NY 12260
(518)487-7600
Fax: (518)487-7777
Email: msterthous@woh.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**The Kasper (1977) Irrevocable Trusts for the Benefit of Charles B. Kasper and Richard J. Kasper**
*TERMINATED: 06/27/2017*

represented by **Ioana Kastellorizios**
Whiteford, Taylor & Preston LLP
7 Saint Paul Street
Baltimore, MD 21202
410-347-8700
Fax: 410-752-7092
Email: ikastellorizios@wtplaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**William Ryan , Jr.**
Whiteford, Taylor & Preston, LLP
Seven Saint Paul Street
Baltimore, MD 21202
410-347-8741
Fax: 410-223-4161
Email: wryan@wtplaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Sanderina R. Kasper**
*as Trustee of the Kasper (1977) Irrevocable Trusts for the Benefit of Charles B. Kasper and Richard J. Kasper*
*TERMINATED: 06/27/2017*

represented by **Ioana Kastellorizios**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**William Ryan , Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Martin Staller**
*TERMINATED: 06/27/2017*

represented by **Stephen Lee O'Brien**
O'Brein & O'Brein, LLP
168 Smithtown Boulevard
Nesconset, NY 11767
631-265-6660
Fax: 631-265-3991
Email: Stephen@obrienandobrienlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Parviz Nezami**
*TERMINATED: 06/27/2017*

5/2/25, 10:20 AM

Case: 25-1000, 05/02/2025, DktEntry: 16.1, Page 46 of 104
Eastern District of New York - LIVE Database 1.8 (Revision 1.8.1)

**Defendant**

**Jerome Cogan**
*TERMINATED: 06/27/2017*

represented by **Eric H. Holtzman**
330 Vanderbilt Motor Parkway
Suite 201
Hauppauge, NY 11788
631-435-8800
Fax: 631-435-8253
Email: eholtzman@trial1.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Lawrence Cohen**
*TERMINATED: 06/27/2017*

**Defendant**

**American Drive-In Cleaners of Bethpage, Inc.**
*TERMINATED: 06/27/2017*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/30/2016 | 1 | COMPLAINT against All Defendants Was the Disclosure Statement on Civil Cover Sheet completed -Yes,, filed by Town of Hempstead. (Attachments: # 1 Civil Cover Sheet, # 2 Proposed Summons, # 3 Proposed Summons Letter) (Rodin, Deanna) (Entered: 07/01/2016) |
| 06/30/2016 | | FILING FEE: $ 400, receipt number 0207-8728356 (Rodin, Deanna) (Entered: 07/01/2016) |
| 07/01/2016 | | Incorrect Document Entry Information. Complaint was entered as against plaintiff; entry was deleted and re-entered as against defendants. (Rodin, Deanna) (Entered: 07/01/2016) |
| 07/01/2016 | | Proposed summons is rejected; the date on the summons is incorrect as it is added by the Clerk's Office as of the date of issuance; the Clerk's Office cannot issue the summons with an incorrect date. Counsel is advised to submit a completed proposed summons without the date using the event Proposed Summons/Civil Cover Sheet. (Rodin, Deanna) (Entered: 07/01/2016) |
| 07/01/2016 | 2 | This attorney case opening filing has been checked for quality control. See the attachment for corrections that were made. (Rodin, Deanna) (Entered: 07/01/2016) |
| 07/01/2016 | | Case Assigned to Judge Arthur D. Spatt and Magistrate Judge Steven I. Locke. Please download and review the Individual Practices of the assigned Judges, located on our website. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. (Rodin, Deanna) (Entered: 07/01/2016) |
| 07/01/2016 | 3 | In accordance with Rule 73 of the Federal Rules of Civil Procedure and Local Rule 73.1, the parties are notified that *if* all parties consent a United States magistrate judge of this court is available to conduct all proceedings in this civil action including a (jury or nonjury) trial and to order the entry of a final judgment. Attached to the Notice is a blank copy of the consent form that should be filled out, signed and filed electronically **only if all** parties wish to consent. The form may also be accessed at the following link: http://www.uscourts.gov/uscourts/FormsAndFees/Forms/AO085.pdf. **You may withhold your consent without adverse substantive consequences. Do NOT return or file the** |

| | | |
|---|---|---|
| | | consent **unless** all parties have signed the consent. (Rodin, Deanna) (Entered: 07/01/2016) |
| 07/01/2016 | 4 | Proposed Summons. Re 1 Complaint, by Town of Hempstead (Kretzing, Laurel) (Entered: 07/01/2016) |
| 07/02/2016 | 6 | ORDER OF RECUSAL. Judge Arthur D. Spatt recused. Case reassigned to Judge Joseph F. Bianco for all further proceedings. Ordered by Judge Arthur D. Spatt on 7/2/2016. (Florio, Lisa) (Entered: 07/05/2016) |
| 07/05/2016 | 5 | SUMMONS ISSUED as to American Drive-In Cleaners of Bethpage, Inc., Bayer Corporation, Jerome Cogan, Lawrence Cohen, Covestro LLC, Department of the Navy, Sanderina R. Kasper, Parviz Nezami, Northrop Grumman Corporation, Northrop Grumman Systems Corporation, Occidental Chemical Corporation, Martin Staller, The Kasper (1977) Irrevocable Trusts for the Benefit of Charles B. Kasper and Richard J. Kasper, United States of America. (Coleman, Laurie) (Entered: 07/05/2016) |
| 07/07/2016 | 7 | SUMMONS Returned Executed by Town of Hempstead. Department of the Navy served on 7/5/2016, answer due 9/5/2016; United States of America served on 7/5/2016, answer due 9/5/2016. (Kretzing, Laurel) (Entered: 07/07/2016) |
| 07/18/2016 | 8 | WAIVER OF SERVICE Returned Executed by Town of Hempstead. Jerome Cogan waiver sent on 7/5/2016, answer due 9/5/2016. (Kretzing, Laurel) (Entered: 07/18/2016) |
| 07/28/2016 | 9 | WAIVER OF SERVICE Returned Executed by Town of Hempstead. Northrop Grumman Corporation waiver sent on 7/5/2016, answer due 9/5/2016. (Kretzing, Laurel) (Entered: 07/28/2016) |
| 07/28/2016 | 10 | WAIVER OF SERVICE Returned Executed by Town of Hempstead. Northrop Grumman Systems Corporation waiver sent on 7/5/2016, answer due 9/5/2016. (Kretzing, Laurel) (Entered: 07/28/2016) |
| 08/04/2016 | 11 | WAIVER OF SERVICE Returned Executed by Town of Hempstead. Covestro LLC waiver sent on 7/5/2016, answer due 9/5/2016. (Kretzing, Laurel) (Entered: 08/04/2016) |
| 08/04/2016 | 12 | WAIVER OF SERVICE Returned Executed by Town of Hempstead. Bayer Corporation waiver sent on 7/5/2016, answer due 9/5/2016. (Kretzing, Laurel) (Entered: 08/04/2016) |
| 08/04/2016 | 13 | WAIVER OF SERVICE Returned Executed by Town of Hempstead. Martin Staller waiver sent on 7/5/2016, answer due 9/5/2016. (Kretzing, Laurel) (Entered: 08/04/2016) |
| 08/04/2016 | 14 | Waiver of Service Returned Unexecuted as to American Drive-In Cleaners of Bethpage, Inc., filed by Town of Hempstead. (Kretzing, Laurel) (Entered: 08/04/2016) |
| 08/08/2016 | 15 | WAIVER OF SERVICE Returned Executed by Town of Hempstead. Occidental Chemical Corporation waiver sent on 7/5/2016, answer due 9/5/2016. (Kretzing, Laurel) (Entered: 08/08/2016) |
| 08/09/2016 | 16 | First MOTION for Extension of Time to File Answer by Jerome Cogan. (Attachments: # 1 Exhibit Stipulation) (Holtzman, Eric) (Entered: 08/09/2016) |
| 08/09/2016 | 17 | MOTION for Leave to Appear Pro Hac Vice *by Frank Leone* Filing fee $ 150, receipt number 0207-8825129. by Northrop Grumman Corporation, Northrop Grumman Systems Corporation. (Attachments: # 1 Affidavit of Frank Leone) (Leone, Frank) (Entered: 08/09/2016) |
| 08/09/2016 | 18 | MOTION for Leave to Appear Pro Hac Vice *by Stephen J. Darmody* Filing fee $ 150, receipt number 0207-8825166. by Northrop Grumman Corporation, Northrop Grumman Systems Corporation. (Attachments: # 1 Affidavit of Stephen J. Darmody) (Darmody, Stephen) (Entered: 08/09/2016) |

| 08/09/2016 | | Electronic ORDER granting 16 Motion for Extension of Time to Answer or otherwise respond. The stipulation, DE 16 , is So Ordered. Defendant Jerome Cogan's answer due 11/5/16. Ordered by Magistrate Judge Steven I. Locke on 8/9/2016. (Walsh, Kenneth) (Entered: 08/09/2016) |
|---|---|---|
| 08/09/2016 | | Electronic ORDER granting 17 , 18 Motions for Leave to Appear Pro Hac Vice, Stephen J. Darmody and Frank Leonoe for Defendants Northrop Gruman Corporation and Northrop Gruman Systems Corporation. Incoming counsel is directed to electronically file a notice of appearance in this action. Ordered by Magistrate Judge Steven I. Locke on 8/9/2016. (Walsh, Kenneth) (Entered: 08/09/2016) |
| 08/09/2016 | 19 | NOTICE of Appearance by Frank Leone on behalf of Northrop Grumman Corporation, Northrop Grumman Systems Corporation (notification declined or already on case) (Leone, Frank) (Entered: 08/09/2016) |
| 08/09/2016 | 20 | NOTICE of Appearance by Stephen J. Darmody on behalf of Northrop Grumman Corporation, Northrop Grumman Systems Corporation (notification declined or already on case) (Darmody, Stephen) (Entered: 08/09/2016) |
| 08/09/2016 | 21 | NOTICE of Appearance by Mark A. Chertok on behalf of Northrop Grumman Corporation, Northrop Grumman Systems Corporation (aty to be noticed) (Chertok, Mark) (Entered: 08/09/2016) |
| 08/09/2016 | 22 | NOTICE of Appearance by Elizabeth Read Knauer on behalf of Northrop Grumman Corporation, Northrop Grumman Systems Corporation (aty to be noticed) (Knauer, Elizabeth) (Entered: 08/09/2016) |
| 08/10/2016 | 23 | Consent MOTION for Extension of Time to File Answer re 1 Complaint, by Northrop Grumman Corporation, Northrop Grumman Systems Corporation. (Leone, Frank) (Entered: 08/10/2016) |
| 08/11/2016 | 24 | NOTICE of Appearance by Eric H. Holtzman on behalf of Jerome Cogan (notification declined or already on case) (Holtzman, Eric) (Entered: 08/11/2016) |
| 08/11/2016 | | Electronic ORDER granting 23 Motion for Extension of Time to Answer or otherwise respond. The stipulation is So Ordered. Northrop Grumman Corporation's answer due 9/30/16; Northrop Grumman Systems Corporation's answer due 9/30/16. Ordered by Magistrate Judge Steven I. Locke on 8/11/2016. (Walsh, Kenneth) (Entered: 08/11/2016) |
| 08/15/2016 | 25 | Proposed MOTION for Extension of Time to File Answer re 5 Summons Issued, 1 Complaint, by Occidental Chemical Corporation. (Sterthous, Michael) (Entered: 08/15/2016) |
| 08/16/2016 | 26 | SUMMONS Returned Executed by Town of Hempstead. Sanderina R. Kasper served on 8/11/2016, answer due 9/1/2016; The Kasper (1977) Irrevocable Trusts for the Benefit of Charles B. Kasper and Richard J. Kasper served on 8/11/2016, answer due 9/1/2016. (Kretzing, Laurel) (Entered: 08/16/2016) |
| 08/16/2016 | | Electronic ORDER granting 25 Motion for Extension of Time to Answer or otherwise respond. The stipulation is So Ordered. Defendant Occidental Chemical Corporation's answer due 9/30/16. Ordered by Magistrate Judge Steven I. Locke on 8/16/2016. (Walsh, Kenneth) (Entered: 08/16/2016) |
| 08/17/2016 | 27 | Letter MOTION for Extension of Time to File Answer re 1 Complaint, by Department of the Navy, United States of America. (Schumacher, Robert) (Entered: 08/17/2016) |
| 08/17/2016 | | Electronic ORDER granting 27 Motion for Extension of Time to Answer or otherwise respond. Department of the Navy's answer due 10/5/16; United States of America's |

| | | answer due 10/5/16. Ordered by Magistrate Judge Steven I. Locke on 8/17/2016. (Walsh, Kenneth) (Entered: 08/17/2016) |
|---|---|---|
| 08/22/2016 | 28 | SUMMONS Returned Executed by Town of Hempstead. Parviz Nezami served on 8/10/2016, answer due 8/31/2016. (Kretzing, Laurel) (Entered: 08/22/2016) |
| 08/30/2016 | 29 | Consent MOTION for Extension of Time to File Answer re 1 Complaint, by Bayer Corporation, Covestro LLC. (Duffy, Timothy) (Entered: 08/30/2016) |
| 08/31/2016 | | Electronic ORDER granting 29 Motion for Extension of Time to Answer or otherwise respond. The stipulation is So Ordered. Bayer Corporation's answer due 9/30/16; Covestro LLC's answer due 9/30/16.Ordered by Magistrate Judge Steven I. Locke on 8/31/2016. (Walsh, Kenneth) (Entered: 08/31/2016) |
| 08/31/2016 | 30 | Letter *motion with stipulation* by Martin Staller (O'Brien, Stephen) (Entered: 08/31/2016) |
| 09/01/2016 | | Electronic ORDER TO ANSWER: The stipulation, DE 30 , is So Ordered. Martin Staller's answer due 10/5/16. Ordered by Magistrate Judge Steven I. Locke on 9/1/2016. (Walsh, Kenneth) (Entered: 09/01/2016) |
| 09/12/2016 | 31 | Prisoner Account Statement (Bollbach, Jean) (Entered: 09/14/2016) |
| 09/27/2016 | 32 | Consent MOTION for Extension of Time to File Answer re 1 Complaint, *Stipulation Extending Time to Answer or Otherwise Respond* by The Kasper (1977) Irrevocable Trusts for the Benefit of Charles B. Kasper and Richard J. Kasper. (Ryan, William) (Entered: 09/27/2016) |
| 09/27/2016 | 33 | NOTICE of Appearance by Stephen Lee O'Brien on behalf of Martin Staller (notification declined or already on case) (O'Brien, Stephen) (Entered: 09/27/2016) |
| 09/27/2016 | | Email Notification Test - DO NOT REPLY. (Valle, Christine) (Entered: 09/27/2016) |
| 09/28/2016 | | Electronic ORDER granting 32 Motion for Extension of Time to Answer or otherwise respond. The stipulation is So Ordered. Sanderina R. Kasper's answer due 10/31/16; The Kasper (1977) Irrevocable Trusts for the Benefit of Charles B. Kasper and Richard J. Kasper's answer due 10/31/16. Ordered by Magistrate Judge Steven I. Locke on 9/28/2016. (Walsh, Kenneth) (Entered: 09/28/2016) |
| 09/30/2016 | 34 | Letter MOTION for pre motion conference *Regarding Northrop Grumman's Motion to Dismiss Plaintiff's Complaint* by Northrop Grumman Corporation, Northrop Grumman Systems Corporation. (Leone, Frank) (Entered: 09/30/2016) |
| 09/30/2016 | 35 | Consent MOTION for Extension of Time to File Answer re 1 Complaint, by Bayer Corporation, Covestro LLC. (Duffy, Timothy) (Entered: 09/30/2016) |
| 09/30/2016 | 36 | Consent MOTION for Extension of Time to File Answer re 1 Complaint, by Occidental Chemical Corporation. (Sterthous, Michael) (Entered: 09/30/2016) |
| 09/30/2016 | 37 | Second MOTION for Extension of Time to File Answer *to the Complaint* by Martin Staller. (O'Brien, Stephen) (Entered: 09/30/2016) |
| 09/30/2016 | 38 | Amended MOTION for Extension of Time to File Answer *to the Complaint* by Martin Staller. (O'Brien, Stephen) (Entered: 09/30/2016) |
| 10/03/2016 | | Electronic ORDER granting [35, 36, 38] Motion for Extension of Time to Answer or otherwise respond. The Stipulations, DE [35, 36, 38], are So Ordered. Covestro LLC answer due 10/31/2016; Martin Staller answer due 10/31/2016; Bayer Corporation answer due 10/31/2016; Occidental Chemical Corporation answer due 10/31/2016. The second motion for extension of time to answer, DE 37 , is terminated as moot. Ordered by Magistrate Judge Steven I. Locke on 10/3/2016.(Cea, Christine) (Entered: 10/03/2016) |

| | | |
|---|---|---|
| 10/05/2016 | 39 | Letter MOTION for pre motion conference *to seek leave to file a motion to dismiss under Fed. R. Civ. P. 12(b)(1)* by Department of the Navy, United States of America. (Schumacher, Robert) (Entered: 10/05/2016) |
| 10/05/2016 | | ORDER granting 34 Motion for Pre Motion Conference; granting 39 Motion for Pre Motion Conference. Defendants, Northrop Grumman, the United States of America, and the United States Navy, have filed letters requesting a pre-motion conference. IT IS HEREBY ORDERED that the parties shall participate in a telephone pre-motion conference on Monday, October 17, 2016, at 2:00 p.m. At that time, counsel for plaintiff shall initiate the call and, once all parties are on the line, shall contact Chambers at (631) 712 5670. Prior to the date of the conference, plaintiff may submit a letter pursuant to Individual Rule III.A explaining why the proposed motions are likely to be unsuccessful. SO ORDERED. Ordered by Judge Joseph F. Bianco on 10/5/2016. (Akers, Medora) (Entered: 10/05/2016) |
| 10/10/2016 | 40 | MOTION for Leave to Appear Pro Hac Vice *for Ioana Kastellorizios* Filing fee $ 150, receipt number 0207-8978218. by Sanderina R. Kasper, The Kasper (1977) Irrevocable Trusts for the Benefit of Charles B. Kasper and Richard J. Kasper. (Attachments: # 1 Exhibit A - Affidavit of Ioana Kastellorizios, # 2 Exhibit B - Certificate of Good Stating, # 3 Exhibit C - Affidavit of William F. Ryan, Jr.) (Ryan, William) (Entered: 10/10/2016) |
| 10/11/2016 | | Electronic ORDER granting 40 Motion for Leave to Appear Pro Hac Vice. To the extent not already completed, the attorney shall register for ECF, registration is available online at the NYEDs homepage. Once registered, the attorney shall file a notice of appearance and ensure that s/he receives electronic notification of activity in this case. Also, the attorney shall ensure that the $150 admission fee be submitted to the Clerks Office. Ordered by Magistrate Judge Steven I. Locke on 10/11/2016. (Perri, Anthony) (Entered: 10/11/2016) |
| 10/12/2016 | 41 | Letter *to Judge Bianco re Pre-Motion Conference* by Sanderina R. Kasper, The Kasper (1977) Irrevocable Trusts for the Benefit of Charles B. Kasper and Richard J. Kasper (Ryan, William) (Entered: 10/12/2016) |
| 10/12/2016 | 42 | NOTICE of Appearance by Ioana Kastellorizios on behalf of Sanderina R. Kasper, The Kasper (1977) Irrevocable Trusts for the Benefit of Charles B. Kasper and Richard J. Kasper (aty to be noticed) (Kastellorizios, Ioana) (Entered: 10/12/2016) |
| 10/12/2016 | 43 | Letter *to Hon. Joseph F. Bianco* by Town of Hempstead (Kretzing, Laurel) (Entered: 10/12/2016) |
| 10/13/2016 | 44 | Letter *to Judge Bianco re Pre-Motion Conference* by Jerome Cogan (Holtzman, Eric) (Entered: 10/13/2016) |
| 10/13/2016 | 45 | Letter *to Judge Bianco re Pre-Motion Conference* by Martin Staller (O'Brien, Stephen) (Entered: 10/13/2016) |
| 10/13/2016 | 46 | MOTION for pre motion conference by Bayer Corporation, Covestro LLC. (Duffy, Timothy) (Entered: 10/13/2016) |
| 10/14/2016 | 47 | Letter MOTION for pre motion conference by Occidental Chemical Corporation. (Attachments: # 1 Exhibit EPA FYR 2016) (Sterthous, Michael) (Entered: 10/14/2016) |
| 10/17/2016 | 48 | NOTICE of Appearance by Edward F. McTiernan on behalf of Bayer Corporation, Covestro LLC (aty to be noticed) (McTiernan, Edward) (Entered: 10/17/2016) |
| 10/17/2016 | 49 | Minute Entry for proceedings held before Judge Joseph F. Bianco:Telephone Conference held on 10/17/2016, MOTION TO BE FILED BY 12/2/2016 ;RESPONSE BY 1/27/2017 ; REPLY BY 2/15/2017. ( oral argument set for 3/29/2017 04:30 PM in Courtroom 1020 |

| | | |
|---|---|---|
| | | before Judge Joseph F. Bianco.) (Tape #ftr 2:17 - 2:22.) (Bollbach, Jean) (Entered: 10/18/2016) |
| 11/09/2016 | | ORDER terminating 46 Motion for Pre Motion Conference; terminating 47 Motion for Pre Motion Conference. As an administrative matter, it is HEREBY ORDERED that the two pending motions for pre-motion conference are terminated in light of the pre-motion conference held on October 17, 2017. SO ORDERED. Ordered by Judge Joseph F. Bianco on 11/9/2016. (Consalvo, Mikayla) (Entered: 11/09/2016) |
| 11/30/2016 | 50 | MOTION for Extension of Time to File *re Briefing Schedule Deadlines* by The Kasper (1977) Irrevocable Trusts for the Benefit of Charles B. Kasper and Richard J. Kasper. (Attachments: # 1 Proposed Order Stipulation Extending Briefing Schedule Deadlines) (Ryan, William) (Entered: 11/30/2016) |
| 11/30/2016 | | ORDER granting 50 Motion for Extension of Time to File. By letter dated November 30, 2016, defendants The Kasper Trust, Martin Staller, and Jerome Cogan (the ADC defendants") request an extension of time for the filings related to their motion to dismiss. Plaintiff has consented. IT IS HEREBY ORDERED that the ADC defendants' request is granted. Plaintiff and the ADC defendants shall adhere to the following schedule with respect to the ADC defendants' motion to dismiss: the ADC defendants shall file their motion to dismiss no later than January 18, 2017, plaintiffs shall file their response no later than February 27, 2017, and the ADC defendants shall file their reply no later than March 17, 2017. Oral argument for this motion and all other defendants' motions to dismiss remains scheduled for March 29, 2017. SO ORDERED. Ordered by Judge Joseph F. Bianco on 11/30/2016. (Consalvo, Mikayla) (Entered: 11/30/2016) |
| 12/02/2016 | 51 | Notice of MOTION to Dismiss by Department of the Navy, United States of America. (Schumacher, Robert) (Entered: 12/02/2016) |
| 12/02/2016 | 52 | AFFIDAVIT/DECLARATION in Support re 51 Notice of MOTION to Dismiss *of Robert W. Schumacher* filed by Department of the Navy, United States of America. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C) (Schumacher, Robert) (Entered: 12/02/2016) |
| 12/02/2016 | 53 | MEMORANDUM in Support re 51 Notice of MOTION to Dismiss filed by Department of the Navy, United States of America. (Schumacher, Robert) (Entered: 12/02/2016) |
| 12/02/2016 | 54 | MOTION to Dismiss by Northrop Grumman Corporation, Northrop Grumman Systems Corporation. Responses due by 1/27/2017 (Attachments: # 1 Memorandum in Support, # 2 Declaration of Frank Leone, # 3 Exhibit 1 to Declaration of Frank Leone, # 4 Exhibit 2 to Declaration of Frank Leone, # 5 Exhibit 3 to Declaration of Frank Leone, # 6 Exhibit 4 to Declaration of Frank Leone, # 7 Exhibit 5 to Declaration of Frank Leone, # 8 Exhibit 6 to Declaration of Frank Leone, # 9 Certificate of Service) (Leone, Frank) (Entered: 12/02/2016) |
| 12/02/2016 | 55 | MOTION to Dismiss for Lack of Jurisdiction ( Responses due by 1/27/2017), Motion to Dismiss for Failure to State a Claim by Bayer Corporation, Covestro LLC. (Attachments: # 1 Memorandum in Support, # 2 Certificate of Service, # 3 Declaration of John Unice, # 4 Declaration of Timothy I. Duffy, Esq., # 5 Exhibit A to the Declaration of Timothy I. Duffy, Esq., # 6 Exhibit B through D to the Declaration of Timothy I. Duffy, Esq., # 7 Proposed Order) (Duffy, Timothy) (Entered: 12/02/2016) |
| 12/02/2016 | 56 | Corporate Disclosure Statement by Bayer Corporation (Duffy, Timothy) (Entered: 12/02/2016) |
| 12/02/2016 | 57 | Corporate Disclosure Statement by Covestro LLC (Duffy, Timothy) (Entered: 12/02/2016) |

| | | |
|---|---|---|
| 12/02/2016 | 58 | Corporate Disclosure Statement by Northrop Grumman Corporation, Northrop Grumman Systems Corporation identifying Corporate Parent Northrop Grumman Corporation for Northrop Grumman Systems Corporation. (Leone, Frank) (Entered: 12/02/2016) |
| 12/02/2016 | 59 | MOTION to Dismiss by Occidental Chemical Corporation. Responses due by 1/27/2017 (Attachments: # 1 Declaration of Michael G. Sterhtou in Support of Motion to Dismiss, # 2 Exhibit A to Declaration, # 3 Exhibit B to Declaration, # 4 Exhibit C to Declaration, # 5 Exhibit D to Declaration, # 6 Exhibit E to Declaration, # 7 Memorandum in Support, # 8 Certificate of Service) (Sterthous, Michael) (Entered: 12/02/2016) |
| 12/07/2016 | 60 | Corporate Disclosure Statement by Occidental Chemical Corporation (Sterthous, Michael) (Entered: 12/07/2016) |
| 12/16/2016 | 61 | NOTICE of Change of Address by Elizabeth Read Knauer (Knauer, Elizabeth) (Entered: 12/16/2016) |
| 12/16/2016 | 62 | NOTICE of Change of Address by Mark A. Chertok (Chertok, Mark) (Entered: 12/16/2016) |
| 01/13/2017 | 63 | NOTICE of Voluntary Dismissal by Town of Hempstead *As to Defendants (i) The Kasper (1977) Irrevocable Trusts for the Benefit of Charles B. Kasper and Richard J. Kasper, (ii) Sanderina R. Kasper, as Trustee of The Kasper (1977) Irrevocable Trusts for the Benefit of Charles B. Kasper and Richard J. Kasper, (iii) Martin Staller, (iv) Parviz Nezami, (v) Jerome Cogan, (vi) Lawrence Cohen, and (vii) American Drive-In Cleaners of Bethpage, Inc.* (Kretzing, Laurel) (Entered: 01/13/2017) |
| 01/27/2017 | 64 | AFFIDAVIT/DECLARATION in Opposition re 51 Notice of MOTION to Dismiss filed by Town of Hempstead. (Attachments: # 1 Ex. A, # 2 Ex. B, # 3 Ex. C, # 4 Ex. D, # 5 Ex. E, # 6 Ex. F, # 7 Ex. G, # 8 Ex. H, # 9 Ex. I, # 10 Declaration of John L. Reinhardt III, # 11 Plaintiff Town of Hempstead's Memorandum of Law in Opposition to the Motion of the Federal Defendants to Dismiss Plaintiff's Tort Claims Pursuant to FED. R. CIV. P. 12(b)(1)) (Kretzing, Laurel) (Entered: 01/27/2017) |
| 01/27/2017 | 65 | AFFIDAVIT/DECLARATION in Opposition re 59 MOTION to Dismiss filed by Town of Hempstead. (Attachments: # 1 Ex. A, # 2 Ex. B, # 3 Ex. C, # 4 Ex. D, # 5 Ex. E, # 6 Ex. F, # 7 Ex. G, # 8 Ex. H, # 9 Ex. I, # 10 Plaintiff Town of Hempstead's Memorandum of Law in Opposition to Occidental Chemical Corporation's Motion to Dismiss) (Kretzing, Laurel) (Entered: 01/27/2017) |
| 01/27/2017 | 66 | AFFIDAVIT/DECLARATION in Opposition re 55 MOTION to Dismiss for Lack of Jurisdiction Motion to Dismiss for Failure to State a Claim filed by Town of Hempstead. (Attachments: # 1 Ex. A, # 2 Ex. B, # 3 Ex. C, # 4 Ex. D, # 5 Ex. E, # 6 Ex. F, # 7 Ex. G, # 8 Ex. H, # 9 Ex. I, # 10 Plaintiff Town of Hempstead's Memorandum of Law in Opposition to the Motion to Dismiss of Covestro LLC and Bayer Corporation) (Kretzing, Laurel) (Entered: 01/27/2017) |
| 01/27/2017 | 67 | AFFIDAVIT/DECLARATION in Opposition re 54 MOTION to Dismiss filed by Town of Hempstead. (Attachments: # 1 Ex. A, # 2 Ex. B, # 3 Ex. C, # 4 Ex. D, # 5 Ex. E, # 6 Ex. F, # 7 Ex. G, # 8 Ex. H, # 9 Ex. I, # 10 Plaintiff Town of Hempstead's Memorandum of Law in Opposition to the Northop Gruman Defendants' Motion to Dismiss) (Kretzing, Laurel) (Entered: 01/27/2017) |
| 02/08/2017 | 68 | Letter MOTION for Extension of Time to File Response/Reply as to 51 Notice of MOTION to Dismiss *In Further Support* by Department of the Navy, United States of America. (Schumacher, Robert) (Entered: 02/08/2017) |
| 02/08/2017 | | ORDER granting 68 Motion for Extension of Time to File Reply. By letter dated February 8, 2017, defendants request an extension of time to file their reply. Plaintiffs |

| | | |
|---|---|---|
| | | consent. IT IS HEREBY ORDERED that defendants' request is granted. Defendants' reply shall be due by March 8, 2017. Oral argument on the motion remains scheduled to take place March 29, 2017 at 4:30 p.m. SO ORDERED. Ordered by Judge Joseph F. Bianco on 2/8/2017. (Consalvo, Mikayla) (Entered: 02/08/2017) |
| 02/13/2017 | 69 | Letter MOTION for Extension of Time to File Response/Reply as to 59 MOTION to Dismiss by Occidental Chemical Corporation. (Sterthous, Michael) (Entered: 02/13/2017) |
| 02/14/2017 | | ORDER granting 69 Motion for Extension of Time to File Response/Reply. By letter dated February 13, 2017, defendant Occidental Chemical Corporation requests an extension of time to file its reply. Plaintiffs consent. IT IS HEREBY ORDERED that the request is granted. Defendant Occidental's reply shall be due by February 24, 2017. Oral argument on the motion remains scheduled to take place March 29, 2017 at 4:30 p.m. SO ORDERED. Ordered by Judge Joseph F. Bianco on 2/14/2017. (Consalvo, Mikayla) (Entered: 02/14/2017) |
| 02/15/2017 | 70 | REPLY in Support re 54 MOTION to Dismiss filed by Northrop Grumman Corporation, Northrop Grumman Systems Corporation. (Attachments: # 1 Declaration of Frank Leone, # 2 Exhibit 1) (Leone, Frank) (Entered: 02/15/2017) |
| 02/15/2017 | 71 | REPLY in Support re 55 MOTION to Dismiss for Lack of Jurisdiction Motion to Dismiss for Failure to State a Claim filed by Bayer Corporation, Covestro LLC. (Duffy, Timothy) (Entered: 02/15/2017) |
| 02/24/2017 | 72 | MEMORANDUM in Support re 59 MOTION to Dismiss *Reply Memorandum of Law in Further Support of Its Motion to Dismiss* filed by Occidental Chemical Corporation. (Attachments: # 1 Certificate of Service) (Sterthous, Michael) (Entered: 02/24/2017) |
| 03/08/2017 | 73 | REPLY in Support re 51 Notice of MOTION to Dismiss filed by Department of the Navy, United States of America. (Schumacher, Robert) (Entered: 03/08/2017) |
| 03/22/2017 | 74 | NOTICE by Northrop Grumman Corporation, Northrop Grumman Systems Corporation *of withdrawal of Stephen J. Darmody as Counsel* (Leone, Frank) (Entered: 03/22/2017) |
| 03/29/2017 | 75 | Minute Entry for proceedings held before Judge Joseph F. Bianco:oral argument held on 3/29/2017, argument heard decision reserved (Tape #ftr 4:36 - 5:58.) (Bollbach, Jean) (Entered: 03/30/2017) |
| 06/27/2017 | 76 | STIPULATION AND ORDER of voluntary dismissal as to Lawrence Cohen, Sanderina R. Kasper (as Trustee of the Kasper (1977) Irrevocable Trusts for the Benefit of Charles B. Kasper and Richard J. Kasper), Parviz Nezami, Martin Staller, The Kasper (1977) Irrevocable Trusts for the Benefit of Charles B. Kasper and Richard J. Kasper, American Drive-In Cleaners of Bethpage, Inc. and Jerome Cogan terminated.. Ordered by Judge Joseph F. Bianco on 6/27/2017. (Bollbach, Jean) (Entered: 06/28/2017) |
| 09/18/2017 | 77 | ORDER granting in part and denying in part 51 Motion to Dismiss; denying 54 Motion to Dismiss; denying 55 Motion to Dismiss for Lack of Jurisdiction; granting in part and denying in part 55 Motion to Dismiss for Failure to State a Claim; denying 59 Motion to Dismiss. For the reasons stated herein, the Court denies the motions to dismiss in their entirety, except the Court grants the motion to dismiss the Town's private nuisance claim as to Covestro and the federal defendants. SO ORDERED. Ordered by Judge Joseph F. Bianco on 9/18/2017. (Consalvo, Mikayla) (Entered: 09/18/2017) |
| 09/26/2017 | 78 | Joint MOTION for Extension of Time to File Response/Reply as to 1 Complaint, by Department of the Navy, United States of America. (Schumacher, Robert) (Entered: 09/26/2017) |
| 09/27/2017 | | Electronic ORDER granting DE 78 , Motion for Extension of Time to File Response/Reply to the Complaint. On consent, Defendants' motion to extend the time to |

| | | answer, move, or otherwise respond to the Complaint is hereby granted. The deadline is extended through and including November 3, 2017. So Ordered by Magistrate Judge Steven I. Locke on 9/27/2017. (Perri, Anthony) (Entered: 09/27/2017) |
|---|---|---|
| 09/28/2017 | | Email Notification Test - DO NOT REPLY. (Coleman, Laurie) (Entered: 09/28/2017) |
| 10/06/2017 | 79 | NOTICE of Appearance by Heidi Susan Minuskin on behalf of Bayer Corporation, Covestro LLC (aty to be noticed) (Minuskin, Heidi) (Entered: 10/06/2017) |
| 10/06/2017 | 80 | NOTICE of Appearance by Joseph Carmine Amoroso on behalf of Bayer Corporation, Covestro LLC (aty to be noticed) (Amoroso, Joseph) (Entered: 10/06/2017) |
| 11/01/2017 | 81 | Second MOTION for Extension of Time to Answer 1 Complaint, by Department of the Navy, United States of America. (Schumacher, Robert) Modified on 11/2/2017 (Bollbach, Jean). (Entered: 11/01/2017) |
| 11/01/2017 | 82 | MOTION for Extension of Time to File Answer re 1 Complaint, by Bayer Corporation, Covestro LLC. (Duffy, Timothy) (Entered: 11/01/2017) |
| 11/01/2017 | 83 | MOTION for Extension of Time to File Answer re 1 Complaint, by Northrop Grumman Corporation, Northrop Grumman Systems Corporation. (Leone, Frank) (Entered: 11/01/2017) |
| 11/02/2017 | | Electronic ORDER granting DE 81 Motion for Extension of Time to Answer. On consent, the deadline for Defendants the Department of the Navy and the United States of America to answer, move, or otherwise respond is extended through and including 11/9/2017. So Ordered by Magistrate Judge Steven I. Locke on 11/2/2017. (Vissichelli, Eric) (Entered: 11/02/2017) |
| 11/02/2017 | | Electronic ORDER granting DE 82 Motion for Extension of Time to Answer, DE 83 Motion for Extension of Time to Answer. On consent, the deadline for Defendants Covestro LLC, Bayer Corporation, Northrop Grumman Corporation, and Northrop Grumman Systems Corporation to answer, move, or otherwise respond is extended through and including 11/9/2017. So Ordered by Magistrate Judge Steven I. Locke on 11/2/2017. (Vissichelli, Eric) (Entered: 11/02/2017) |
| 11/02/2017 | 84 | Second MOTION for Extension of Time to File Answer re 1 Complaint, by Occidental Chemical Corporation. (Sterthous, Michael) (Entered: 11/02/2017) |
| 11/03/2017 | | Electronic ORDER granting DE 84 Motion for Extension of Time to Answer. On consent, the deadline for Defendant Occidental Chemical Corporation to answer, move, or otherwise respond is extended through and including 11/9/2017. So Ordered by Magistrate Judge Steven I. Locke on 11/3/2017. (Vissichelli, Eric) (Entered: 11/03/2017) |
| 11/07/2017 | 85 | MOTION for Extension of Time to File Answer re 1 Complaint, by Bayer Corporation, Covestro LLC. (Duffy, Timothy) (Entered: 11/07/2017) |
| 11/09/2017 | | Electronic ORDER granting DE 85 Motion for Extension of Time to Answer. On consent, the deadline for Defendants to answer, move, or otherwise respond is extended through and including 11/30/2017. So Ordered by Magistrate Judge Steven I. Locke on 11/9/2017. (Vissichelli, Eric) (Entered: 11/09/2017) |
| 11/30/2017 | 86 | ANSWER to 1 Complaint, by Northrop Grumman Corporation, Northrop Grumman Systems Corporation. (Leone, Frank) (Entered: 11/30/2017) |
| 11/30/2017 | 87 | ANSWER to 1 Complaint, *and Affirmative Defenses* by Department of the Navy, United States of America. (Schumacher, Robert) (Entered: 11/30/2017) |
| 11/30/2017 | 88 | ANSWER to Complaint *and Affirmative Defenses* by Bayer Corporation, Covestro LLC. (Duffy, Timothy) (Entered: 11/30/2017) |

| 11/30/2017 | 89 | ANSWER to 1 Complaint, by Occidental Chemical Corporation. (Attachments: # 1 Certificate of Service) (Sterthous, Michael) (Entered: 11/30/2017) |
|---|---|---|
| 12/05/2017 | 90 | INITIAL CONFERENCE ORDER: An Initial Conference is set for 1/18/2018 at 10:00 AM in Courtroom 820 before Magistrate Judge Steven I. Locke. See order and attachments. Ordered by Magistrate Judge Steven I. Locke on 12/5/2017. (Attachments: # 1 SIL Individual Rules, # 2 Scheduling Order Worksheet) (Gandiosi, Kristin) (Entered: 12/05/2017) |
| 12/11/2017 | 91 | First MOTION to adjourn conference by Occidental Chemical Corporation. (Sterthous, Michael) Modified on 12/14/2017 (Fagan, Linda). (Entered: 12/11/2017) |
| 12/14/2017 | | Electronic ORDER granting DE 91 Motion to Adjourn Conference. On consent, the initial conference previously scheduled for 1/18/2018 is adjourned to 2/22/2018 at 2:00 p.m. in courtroom 820 of the Central Islip courthouse. Ordered by Magistrate Judge Steven I. Locke on 12/14/2017. (Vissichelli, Eric) (Entered: 12/14/2017) |
| 01/29/2018 | | Incorrect Case/Document/Entry Information: Document #92 Letter filed on 1/24/2018 has been DELETED from the Docket. Document was inadvertently filed in the wrong case. (Ortiz, Grisel) (Entered: 01/29/2018) |
| 02/13/2018 | 92 | Proposed Scheduling Order *Joint Planning Conference Report and Joint Proposed Discovery Plan* by United States of America (Schumacher, Robert) (Entered: 02/13/2018) |
| 02/13/2018 | 93 | Consent MOTION to Adjourn Conference by United States of America. (Schumacher, Robert) (Entered: 02/13/2018) |
| 02/21/2018 | | Electronic ORDER granting in part and denying in part DE 93 Motion to Adjourn Conference. The initial conference scheduled for 2/22/2018 has been adjourned to 2/28/2018 at 2:00 p.m. in courtroom 820 of the Central Islip courthouse before Magistrate Judge Steven I. Locke. The parties' requests for the Court to cancel the initial conference or, alternatively, to hold the conference via telephone are denied. Ordered by Magistrate Judge Steven I. Locke on 2/21/2018. (Vissichelli, Eric) (Entered: 02/21/2018) |
| 02/28/2018 | 94 | Minute Order for proceedings held before Magistrate Judge Steven I. Locke:Initial Conference Hearing held on 2/28/2018. A scheduling order has been entered. (Gandiosi, Kristin) (Entered: 02/28/2018) |
| 02/28/2018 | 95 | SCHEDULING ORDER: Discovery deadlines set; see attached order. Next Status Conference set for 6/20/2018 at 11:00 AM in Courtroom 820 before Magistrate Judge Steven I. Locke. Ordered by Magistrate Judge Steven I. Locke on 2/28/2018. (Gandiosi, Kristin) (Entered: 02/28/2018) |
| 03/16/2018 | 96 | NOTICE of Appearance by Scott B. Fisher on behalf of Town of Hempstead (aty to be noticed) (Fisher, Scott) (Entered: 03/16/2018) |
| 05/18/2018 | 97 | Letter MOTION to Withdraw as Attorney -*Letter to Clerk of the Court Requesting Termination of Appearance of Laurel R. Kretzing from the Docket* by Town of Hempstead. (Cairo, Lisa) (Entered: 05/18/2018) |
| 05/23/2018 | | Electronic ORDER granting DE 97 Motion to Withdraw as Attorney. Attorney Laurel R. Kretzing is hereby terminated. Ordered by Magistrate Judge Steven I. Locke on 5/23/2018. (Vissichelli, Eric) (Entered: 05/23/2018) |
| 06/18/2018 | 98 | MOTION to Adjourn Conference by Bayer Corporation, Covestro LLC. (Duffy, Timothy) (Entered: 06/18/2018) |
| 06/18/2018 | 99 | MOTION for Leave to Appear Pro Hac Vice *by Mark A Miller* Filing fee $ 150, receipt number 0207-10517791. by Northrop Grumman Corporation, Northrop Grumman |

| | | Systems Corporation. (Attachments: # 1 Affidavit) (Leone, Frank) (Entered: 06/18/2018) |
|---|---|---|
| 06/19/2018 | | Electronic ORDER granting in part and denying in part DE 98 Motion to Adjourn Conference. On consent, the status conference scheduled for 6/20/2018 is adjourned to 9/12/2018 at 11:00 a.m. in courtroom 820 of the Central Islip courthouse. However, the joint request for an extension of all discovery deadlines is denied without prejudice due to the parties' failure to provide a proposed amended scheduling order in accordance with this Court's Individual Rule 2.B. Ordered by Magistrate Judge Steven I. Locke on 6/19/2018. (Vissichelli, Eric) (Entered: 06/19/2018) |
| 06/21/2018 | 100 | MOTION for Extension of Time to Complete Discovery by Northrop Grumman Systems Corporation. (Leone, Frank) (Entered: 06/21/2018) |
| 06/25/2018 | 101 | ORDER granting DE 100 Motion for Extension of Time to Complete Discovery. The parties' joint motion to extend the discovery deadlines is granted; see the attached Amended Scheduling Order. The final pretrial conference previously scheduled for 9/18/2019 has been adjourned to 10/28/2019 at 11:00 a.m. in courtroom 820 of the Central Islip courthouse. Ordered by Magistrate Judge Steven I. Locke on 6/25/2018. (Vissichelli, Eric) (Entered: 06/25/2018) |
| 06/28/2018 | | Electronic ORDER denying DE 99 Motion for Leave to Appear Pro Hac Vice. The motion is denied without prejudice for failure to comply with Local Rule 1.3(c)(1). Ordered by Magistrate Judge Steven I. Locke on 6/28/2018. (Vissichelli, Eric) (Entered: 06/28/2018) |
| 06/28/2018 | 102 | AFFIDAVIT in Support re 99 MOTION for Leave to Appear Pro Hac Vice *by Mark A Miller* Filing fee $ 150, receipt number 0207-10517791. *Amended* by Northrop Grumman Corporation, Northrop Grumman Systems Corporation. (Leone, Frank) (Entered: 06/28/2018) |
| 07/09/2018 | | Electronic ORDER granting DE 99 Motion for Leave to Appear Pro Hac Vice. The attorney shall register for ECF; registration is available online at the NYED's homepage. Once registered, the attorney shall file a notice of appearance and ensure that he receives electronic notification of activity in this case. Ordered by Magistrate Judge Steven I. Locke on 7/9/2018. (Vissichelli, Eric) (Entered: 07/09/2018) |
| 07/10/2018 | 103 | NOTICE of Appearance by Mark A. Miller on behalf of Northrop Grumman Corporation, Northrop Grumman Systems Corporation (aty to be noticed) (Miller, Mark) (Entered: 07/10/2018) |
| 09/11/2018 | 104 | Joint MOTION to Adjourn Conference *scheduled for September 12, 2018* by Town of Hempstead. (Cairo, Lisa) (Entered: 09/11/2018) |
| 09/11/2018 | | Electronic ORDER granting DE 104 Motion to Adjourn Conference. On consent, the status conference previously scheduled for 9/12/2018 has been adjourned to 10/10/2018 at 11:00 a.m. in courtroom 820 of the Central Islip courthouse. Ordered by Magistrate Judge Steven I. Locke on 9/11/2018. (Vissichelli, Eric) (Entered: 09/11/2018) |
| 09/19/2018 | 105 | MOTION to Adjourn Conference by Bayer Corporation, Covestro LLC. (Duffy, Timothy) (Entered: 09/19/2018) |
| 09/20/2018 | | Electronic ORDER denying DE 105 Motion to Adjourn Conference. Defendants Covestro LLC and Bayer Corporation's application to adjourn the status conference scheduled for 10/10/2018 is denied without prejudice for failure to comply with Rule 2.B. of this Court's Individual Rules. Further, the request to appear by telephone is denied. Ordered by Magistrate Judge Steven I. Locke on 9/20/2018. (Vissichelli, Eric) (Entered: 09/20/2018) |

| 09/25/2018 | 106 | MOTION to Adjourn Conference by Bayer Corporation, Covestro LLC. (Duffy, Timothy) (Entered: 09/25/2018) |
|---|---|---|
| 10/02/2018 | | Electronic ORDER granting DE 106 Motion to Adjourn Conference. On consent, the status conference previously scheduled for 10/10/2018 has been adjourned to 10/30/2018 at 11:30 a.m. in courtroom 820 of the Central Islip courthouse. Ordered by Magistrate Judge Steven I. Locke on 10/2/2018. (Vissichelli, Eric) (Entered: 10/02/2018) |
| 10/22/2018 | 107 | MOTION to Compel *Discovery* by Northrop Grumman Corporation, Northrop Grumman Systems Corporation. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit) (Leone, Frank) (Entered: 10/22/2018) |
| 10/24/2018 | 108 | RESPONSE in Opposition re 107 MOTION to Compel *Discovery* filed by All Plaintiffs. (Cairo, Lisa) (Entered: 10/24/2018) |
| 10/29/2018 | 109 | Letter MOTION to Withdraw 107 MOTION to Compel *Discovery* by Northrop Grumman Corporation, Northrop Grumman Systems Corporation. (Leone, Frank) (Entered: 10/29/2018) |
| 10/30/2018 | | Electronic ORDER granting DE 109 Motion to Withdraw; withdrawing DE 107 Motion to Compel. In light of Defendants Northrop Grumman Corporation and Northrop Grumman Systems Corporation's (collectively, "Northrop Grumman") representation that the discovery issues raised in DE 107 have been resolved, Northrop Grumman's motion to compel is withdrawn. Ordered by Magistrate Judge Steven I. Locke on 10/30/2018. (Vissichelli, Eric) (Entered: 10/30/2018) |
| 10/30/2018 | 110 | Minute Order for proceedings held before Magistrate Judge Steven I. Locke:Status Conference held on 10/30/2018. Next Status Conference set for 3/5/2019 at 11:30 AM in Courtroom 820 before Magistrate Judge Steven I. Locke. (Gandiosi, Kristin) (Entered: 10/30/2018) |
| 03/04/2019 | 111 | MOTION for Extension of Time to Complete Discovery *Joint Letter Motion* by Northrop Grumman Corporation, Northrop Grumman Systems Corporation. (Miller, Mark) (Entered: 03/04/2019) |
| 03/05/2019 | 112 | Minute Order for proceedings held before Magistrate Judge Steven I. Locke:Status Conference held on 3/5/2019. An amended scheduling order has been entered. (Gandiosi, Kristin) (Entered: 03/05/2019) |
| 03/05/2019 | 113 | AMENDED SCHEDULING ORDER: Deadlines have been amended. See attached order. The Final Pretrial Conference is set for 10/20/2020 at 11:30 AM before Magistrate Judge Steven I. Locke. Ordered by Magistrate Judge Steven I. Locke on 3/5/2019. (Gandiosi, Kristin) (Entered: 03/05/2019) |
| 03/08/2019 | | Case Reassigned to Judge Eric N. Vitaliano and Magistrate Judge Steven Tiscione. Judge Joseph F. Bianco, Magistrate Judge Steven I. Locke no longer assigned to the case. Please download and review the Individual Practices of the assigned Judges, located on our website. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. (Kramer, Michael) (Entered: 03/08/2019) |
| 03/08/2019 | 114 | In accordance with Rule 73 of the Federal Rules of Civil Procedure and Local Rule 73.1, the parties are notified that *if* all parties consent a United States magistrate judge of this court is available to conduct all proceedings in this civil action including a (jury or nonjury) trial and to order the entry of a final judgment. Attached to the Notice is a blank copy of the consent form that should be filled out, signed and filed electronically **only if all** parties wish to consent. The form may also be accessed at the following link: http://www.uscourts.gov/uscourts/FormsAndFees/Forms/AO085.pdf. **You may withhold your consent without adverse substantive consequences. Do NOT return or file the** |

| | | |
|---|---|---|
| | | consent **unless** all parties have signed the consent. (Kramer, Michael) (Entered: 03/08/2019) |
| 03/11/2019 | | ORDER granting 111 Motion for Extension of Time to Complete Discovery, per Order dated 3/5/19, docket entry 113 . So Ordered by Magistrate Judge Steven Tiscione on 3/11/2019. (Vasquez, Lea) (Entered: 03/11/2019) |
| 03/13/2019 | | STATUS REPORT ORDER: This case has recently been re-assigned to the undersigned for pre-trial supervision. Accordingly, counsel shall electronically file a status report by 5/29/2019 informing the Court about the parties' progress with discovery. So Ordered by Magistrate Judge Steven Tiscione on 3/13/2019. (Vasquez, Lea) (Entered: 03/13/2019) |
| 05/17/2019 | 115 | Third MOTION for Discovery *Extension and Amendment of Scheduling Order with Status Report* by Town of Hempstead. (Attachments: # 1 Proposed Order) (Cairo, Lisa) (Entered: 05/17/2019) |
| 05/28/2019 | | ORDER granting 115 Motion for Discovery: The amended discovery schedule is approved and hereby entered as an Order of the Court. An in-person status conference will be held at 10:00 a.m. on October 1, 2020 before the undersigned in Hearing Room N504 in the North Wing. All counsel must attend. So Ordered by Magistrate Judge Steven Tiscione on 5/28/2019. (Vasquez, Lea) (Entered: 05/28/2019) |
| 06/14/2019 | 116 | MOTION to Appear Pro Hac Vice *of Christopher M. McDonald* Filing fee $ 150, receipt number ANYEDC-11577013. by Occidental Chemical Corporation. (Attachments: # 1 Affidavit Affidavit in Support of Motion to Admit Christopher M. McDonald Pro Hac Vice, # 2 Certificate of Service) (Sterthous, Michael) (Entered: 06/14/2019) |
| 06/14/2019 | | ORDER granting 116 Motion for Leave to Appear Pro Hac Vice: Having reviewed the Pro Hac Vice application 116 submitted by Christopher M. McDonald for Defendant Occidental Chemical Corporationand found it to be in compliance with the local rules concerning attorney admissions, the application is approved. If not already done, the attorney shall register for ECF which is available online at the NYED's homepage. Once registered, the attorney shall file a notice of appearance and ensure that he receives electronic notifications of activity in this case. If not already done, the attorney shall ensure that the $150 admission fee is submitted to the Clerk's Office. So Ordered by Magistrate Judge Steven Tiscione on 6/14/2019. (Vasquez, Lea) (Entered: 06/14/2019) |
| 06/17/2019 | 117 | NOTICE of Appearance by Christopher Michael McDonald on behalf of Occidental Chemical Corporation (aty to be noticed) (Attachments: # 1 Certificate of Service) (McDonald, Christopher) (Entered: 06/17/2019) |
| 07/18/2019 | 118 | Fourth MOTION for Extension of Time to Complete Discovery *With Proposed Amended Scheduling Order* by Town of Hempstead. (Attachments: # 1 Proposed Order Amending Scheduling Order) (Cairo, Lisa) (Entered: 07/18/2019) |
| 07/23/2019 | | ORDER granting 118 Motion for Extension of Time to Complete Phase I Discovery as follows: Identification of Plaintiff's Phase I experts and service of Rule 26 disclosures to be completed by August 6, 2019; Identification of Defendants' Phase I experts and service of Rule 26 disclosures to be completed by October 1, 2019; Completion of all Phase I discovery, including depositions of Phase I experts, if any by November 1, 2019; and, Pre-motion letters requesting Phase I summary judgment motions to be submitted by December 3, 2019. So Ordered by Magistrate Judge Steven Tiscione on 7/23/2019. (Vasquez, Lea) (Entered: 07/23/2019) |
| 09/05/2019 | 119 | Fifth MOTION for Extension of Time to Complete Discovery *With Proposed Amended Scheduling Order* by Northrop Grumman Corporation, Northrop Grumman Systems Corporation. (Attachments: # 1 Proposed Order Amending Scheduling Order) (Miller, Mark) (Entered: 09/05/2019) |

5/2/25, 10:20 AM

Case: 25-1000, 05/02/2025, DktEntry: 16.1, Page 59 of 104
Eastern District of New York - LIVE Database 1.8 (Revision 1.8.1)

| 09/10/2019 | | ORDER granting 119 Motion for Extension of Time to Complete Discovery as follows: Identification of Defendants' Phase I experts and service of Rule 26 disclosures by January 3, 2020; completion of all Phase I discovery and Phase I expert depositions by March 13, 2020; Pre-motion letters requesting Phase I summary judgment motions by March 27, 2020; Service of Phase II discovery requests by April 13, 2020; Written responses to Phase II discovery by June 12, 2020; Completion of fact depositions and fact discovery by September 16, 2020; Identification of Plaintiff's Phase II experts and service of Rule 26 disclosures by October 7, 2020; Identification of Defendants' Phase II experts and service of Rule 26 disclosures by November 20, 2020; Completion of discovery and expert witness depositions by January 22, 2021; Pre-motion letters requesting Phase II summary judgment motions by February 22, 2021. The Court declines to set a conference date at this time. Counsel shall electronically file a status report, due on the last day of each month, beginning January 31, 2020 and continuing until ALL discovery has been completed. Due to the age of this case, any further discovery requests are not likely to be granted without a conference first being held with all parties in attendance. So Ordered by Magistrate Judge Steven Tiscione on 9/10/2019. (Vasquez, Lea) (Entered: 09/10/2019) |
|---|---|---|
| 01/31/2020 | 120 | STATUS REPORT *on Behalf of All Parties* by Northrop Grumman Corporation, Northrop Grumman Systems Corporation (Leone, Frank) (Entered: 01/31/2020) |
| 02/03/2020 | | STATUS REPORT ORDER re 120 Status Report filed by Northrop Grumman Systems Corporation, Northrop Grumman Corporation: Counsel shall electronically file the next status report by February 28, 2020. So Ordered by Magistrate Judge Steven Tiscione on 2/3/2020. (Vasquez, Lea) (Entered: 02/03/2020) |
| 02/27/2020 | 121 | STATUS REPORT *Submitted on Behalf of All Parties* by Town of Hempstead (Fisher, Scott) (Entered: 02/27/2020) |
| 02/27/2020 | | STATUS REPORT ORDER re 121 Status Report filed by Town of Hempstead. The next status report is due by 3/31/2020. So Ordered by Magistrate Judge Steven Tiscione on 2/27/2020. (Vasquez, Lea) (Entered: 02/27/2020) |
| 03/19/2020 | 122 | STATUS REPORT *and MOTION for Extension of Time to Complete Discovery* by Town of Hempstead (Attachments: # 1 Exhibit A - Proposed Amended Scheduling Order) (Fisher, Scott) Modified on 3/19/2020 (Vasquez, Lea). (Entered: 03/19/2020) |
| 03/19/2020 | | ORDER granting 122 Motion for Extension of Time to Complete Discovery as follows: completion of all Phase I discovery and Phase I expert depositions by June 5, 2020; Pre-motion letters requesting Phase I summary judgment motions by June 19, 2020; Service of Phase II discovery requests by July 17, 2020; Written responses to Phase II discovery requests and production of documents by September 25, 2020; Completion of fact depositions and fact discovery by December 18, 2020; Identification of Plaintiff's Phase II experts and service of Rule 26 disclosures by January 22, 2021; Identification of Defendants' Phase II experts and service of Rule 26 disclosures by February 26, 2021; Completion of depositions of Plaintiff's Phase II expert witnesses by March 26, 2021; Completion of depositions of Defendants' Phase II expert witnesses by April 30, 2021; and Pre-motion letters requesting Phase II summary judgment motions due by May 14, 2021. In light of the current health emergency, the Court is allowing this extension without a conference. Counsel shall continue to file status reports on the last day of each month, with the next one due by April 30th. Counsel are reminded that due to the age of this case, any further discovery requests are not likely to be granted without a conference first being held with all parties in attendance. So Ordered by Magistrate Judge Steven Tiscione on 3/19/2020. (Vasquez, Lea) (Entered: 03/19/2020) |
| 04/27/2020 | 123 | STATUS REPORT by Town of Hempstead (Fisher, Scott) (Entered: 04/27/2020) |

| 04/29/2020 | | ORDER re 123 Status Report filed by Town of Hempstead: Counsel shall properly file a motion to extend discovery setting forth the proposed extended dates in detail in accordance with this Court's Individual Rules. So Ordered by Magistrate Judge Steven Tiscione on 4/29/2020. (Vasquez, Lea) (Entered: 04/29/2020) |
|---|---|---|
| 04/30/2020 | 124 | Letter MOTION for Extension of Time to Complete Discovery by Town of Hempstead. (Attachments: # 1 Proposed Order) (Fisher, Scott) (Entered: 04/30/2020) |
| 05/01/2020 | | ORDER granting 124 Motion for Extension of Time to Complete Discovery as follows: completion of all Phase I discovery and Phase I expert depositions by August 7, 2020; Pre-motion letters requesting and Phase I summary judgment motions by August 28, 2020; Service of Phase II discovery requests by September 18, 2020; Written responses to Phase II discovery requests and production of documents by October 23, 2020; Completion of fact depositions and fact discovery by February 12, 2021; Identification of Plaintiff's Phase II experts and service of Rule 26 disclosures by March 19, 2021; Identification of Defendants' Phase II experts and service of Rule 26 disclosures by April 23, 2021; Completion of depositions of Plaintiff's Phase II expert witnesses by May 21, 2021; Completion of depositions of Defendants' Phase II expert witnesses by June 25, 2021; and Pre-motion letters requesting Phase II summary judgment motions due by July 16, 2021. In light of the continued public health emergency, the Court is again allowing this extension without a conference. Counsel shall continue to file status reports on the last day of each month, with the next one due by May 31st. An in-person status conference will be held at 2:00 p.m. on August 10, 2020 before the undersigned in Courtroom 710 of the Central Islip Courthouse located at 100 Federal Plaza. Counsel for all parties must attend. So Ordered by Magistrate Judge Steven Tiscione on 5/1/2020. (Vasquez, Lea) (Entered: 05/01/2020) |
| 05/26/2020 | 125 | STATUS REPORT by Town of Hempstead (Fisher, Scott) (Entered: 05/26/2020) |
| 05/27/2020 | | STATUS REPORT ORDER: The next status report remains due by 6/30/2020. So Ordered by Magistrate Judge Steven Tiscione on 5/27/2020. (Vasquez, Lea) (Entered: 05/27/2020) |
| 06/29/2020 | 126 | STATUS REPORT by Town of Hempstead (Fisher, Scott) (Entered: 06/29/2020) |
| 06/29/2020 | | STATUS REPORT ORDER: The next status report is due by 7/31/2020 and should include which depositions have been conducted as well as the schedule for any remaining depositions. So Ordered by Magistrate Judge Steven Tiscione on 6/29/2020. (Vasquez, Lea) (Entered: 06/29/2020) |
| 07/29/2020 | 127 | Letter *to Magistrate Judge Steven L. Tiscione* by Town of Hempstead (Attachments: # 1 Proposed Order Further Amended Scheduling Order) (Fisher, Scott) (Entered: 07/29/2020) |
| 07/29/2020 | | ORDER re 127 Letter filed by Town of Hempstead: The proposed discovery extension will be discussed at the conference scheduled for August 10th which will be held by phone with all counsel. Counsel are to dial into the conference using the number 888-557-8511 and access code 3152145. So Ordered by Magistrate Judge Steven Tiscione on 7/29/2020. (Vasquez, Lea) (Entered: 07/29/2020) |
| 08/06/2020 | 128 | NOTICE of Appearance by Jason T Cohen on behalf of United States of America (aty to be noticed) (Cohen, Jason) (Entered: 08/06/2020) |
| 08/07/2020 | 129 | NOTICE of Appearance by Haroon Anwar on behalf of United States of America (aty to be noticed) (Anwar, Haroon) (Entered: 08/07/2020) |
| 08/11/2020 | 130 | Minute Entry for Telephone Conference held on 8/10/2020 before Magistrate Judge Steven Tiscione: Fisher, Cairo for Plaintiffs; Schumacher, Anwar, Cohen, Miller, Leone, |

5/2/25, 10:20 AM

Case: 25-1000, 05/02/2025, DktEntry: 16.1, Page 61 of 104
Eastern District of New York - LIVE Database 1.8 (Revision 1.8.1)

| | | Duffy, Amoroso, Sterthous, McDonald for Defendants. For the reasons discussed on the record, the Court adopts the proposed discovery order [127-1] as follows: Completion of all Phase I discovery and Phase I expert depositions by September 18, 2020; Pre-motion letters requesting and Phase I summary judgment motions by October 9, 2020; Service of Phase II discovery requests by October 30, 2020; Written responses to Phase II discovery requests and production of documents by December 2, 2020; Completion of fact depositions and fact discovery by April 16, 2021; Identification of Plaintiff's Phase II experts and service of Rule 26 disclosures by May 21, 2021; Identification of Defendants' Phase II experts and service of Rule 26 disclosures by June 18, 2021; Completion of depositions of Plaintiff's Phase II expert witnesses by July 21, 2021; Completion of depositions of Defendants' Phase II expert witnesses by September 1, 2021; and Pre-motion letters requesting Phase II summary judgment motions due by September 24, 2021. Parties will advise the Court when a settlement conference will be appropriate. (FTR Log #AT&T (2:00 - 2:10).) (Vasquez, Lea) (Entered: 08/11/2020) |
|---|---|---|
| 08/31/2020 | [131](#) | STATUS REPORT by Town of Hempstead (Fisher, Scott) (Entered: 08/31/2020) |
| 08/31/2020 | | STATUS REPORT ORDER re [131](#) Status Report filed by Town of Hempstead: The next status report is due by 9/30/2020. So Ordered by Magistrate Judge Steven Tiscione on 8/31/2020. (Vasquez, Lea) (Entered: 08/31/2020) |
| 09/29/2020 | [132](#) | STATUS REPORT *To Provide Joint Update* by Town of Hempstead (Fisher, Scott) (Entered: 09/29/2020) |
| 09/29/2020 | | STATUS REPORT ORDER re [132](#) Status Report filed by Town of Hempstead: Counsel shall electronically file an updated status report by 12/30/2020. So Ordered by Magistrate Judge Steven Tiscione on 9/29/2020. (Vasquez, Lea) (Entered: 09/29/2020) |
| 10/09/2020 | [133](#) | MOTION for pre motion conference by Occidental Chemical Corporation. (McDonald, Christopher) (Entered: 10/09/2020) |
| 10/09/2020 | [134](#) | MOTION for pre motion conference by Bayer Corporation, Covestro LLC. (Duffy, Timothy) (Entered: 10/09/2020) |
| 10/09/2020 | [135](#) | Letter MOTION for pre motion conference *to seek leave to file a motion for partial summary judgment pursuant to Fed. R. Civ. P. 56.* by Department of the Navy, United States of America. (Schumacher, Robert) (Entered: 10/09/2020) |
| 10/09/2020 | [136](#) | Letter *Requesting pre-motion conference* by Northrop Grumman Corporation, Northrop Grumman Systems Corporation (Leone, Frank) (Entered: 10/09/2020) |
| 10/13/2020 | | ORDER. Plaintiff is directed to respond to defendants' motions for pre-motion conference at [133](#) , [134](#) , [135](#) and [136](#) by October 23, 2020. Ordered by Judge Eric N. Vitaliano on 10/13/2020. (Dudding, Sasha) (Entered: 10/13/2020) |
| 10/23/2020 | [137](#) | RESPONSE to Motion re [134](#) MOTION for pre motion conference , [135](#) Letter MOTION for pre motion conference *to seek leave to file a motion for partial summary judgment pursuant to Fed. R. Civ. P. 56.*, [133](#) MOTION for pre motion conference filed by Town of Hempstead. (Fisher, Scott) (Entered: 10/23/2020) |
| 10/27/2020 | | ORDER. Upon review of the parties' submissions at [133](#) , [134](#) , [135](#) , [136](#) and [137](#) , the Court concludes that a pre-motion conference is unnecessary. Defendants may proceed with their motions for partial summary judgment. The parties are directed to file a joint proposed briefing schedule no later than November 10, 2020. Ordered by Judge Eric N. Vitaliano on 10/27/2020. (Dudding, Sasha) (Entered: 10/27/2020) |
| 10/30/2020 | [138](#) | Letter MOTION for Discovery *To Modify Phase II Discovery Schedule* by Town of Hempstead. (Fisher, Scott) (Entered: 10/30/2020) |

| 10/30/2020 | | ORDER granting 138 Motion for Discovery: In light of the 10/27/2020 Order by the Hon. Eric N. Vitaliano, the joint motion to stay the commencement of Phase II discovery until the completion of briefing on defendants' Phase I summary judgement motions is granted. So Ordered by Magistrate Judge Steven Tiscione on 10/30/2020. (DeSaro, Matthew) (Entered: 10/30/2020) |
| --- | --- | --- |
| 11/05/2020 | 139 | Joint MOTION to Continue /Proposed Briefing Schedule on Defendants Phase I Motions by Northrop Grumman Corporation, Northrop Grumman Systems Corporation. (Miller, Mark) (Entered: 11/05/2020) |
| 11/06/2020 | | ORDER. The parties' joint proposed briefing schedule at 139 is adopted. Plaintiff shall serve its opening papers by 1/15/2021. Defendants shall serve their opposition papers by 04/15/2021. Plaintiff shall serve its reply papers by 5/28/2021. The fully-briefed motion shall be filed on ECF in accordance with Individual Rule III.D (the "Bundling Rule") by 6/1/2021. Ordered by Judge Eric N. Vitaliano on 11/6/2020. (Dudding, Sasha) (Entered: 11/06/2020) |
| 12/02/2020 | 140 | NOTICE of Appearance by Samantha Marie Guido on behalf of Town of Hempstead (aty to be noticed) (Guido, Samantha) (Entered: 12/02/2020) |
| 12/14/2020 | 141 | Letter MOTION to Withdraw as Attorney Request to Terminate Appearance of Lisa A. Cairo from Docket by Town of Hempstead. (Cairo, Lisa) (Entered: 12/14/2020) |
| 12/21/2020 | 142 | STATUS REPORT by Town of Hempstead (Fisher, Scott) (Entered: 12/21/2020) |
| 12/21/2020 | | ORDER granting 141 Motion to Withdraw as Attorney. Attorney Lisa Cairo terminated. So Ordered by Magistrate Judge Steven Tiscione on 12/21/2020. (DeSaro, Matthew) (Entered: 12/21/2020) |
| 12/21/2020 | | STATUS REPORT ORDER re 142 Status Report filed by Town of Hempstead. Counsel shall electronically file the next status report by January 31, 2021. So Ordered by Magistrate Judge Steven Tiscione on 12/21/2020. (DeSaro, Matthew) (Entered: 12/21/2020) |
| 01/07/2021 | 143 | Letter MOTION for Extension of Time to File /Defendants to serve their motions for summary judgment and modify briefing schedule by Department of the Navy, United States of America. (Schumacher, Robert) (Entered: 01/07/2021) |
| 01/08/2021 | | ORDER granting 143 Motion for Extension of Time to File. Defendants shall serve their opening papers by 2/16/2021. Plaintiff shall serve their opposition papers by 5/25/2021. Defendants shall serve their reply papers by 7/9/2021. The fully-briefed motion shall be filed on ECF in accordance with Individual Rule III.D (the "Bundling Rule") by 7/13/2021. Ordered by Judge Eric N. Vitaliano on 1/8/2021. (Dudding, Sasha) (Entered: 01/08/2021) |
| 01/27/2021 | 144 | STATUS REPORT by Town of Hempstead (Fisher, Scott) (Entered: 01/27/2021) |
| 02/05/2021 | 145 | MOTION to Appear Pro Hac Vice of Stephen A. Klein Filing fee $ 150, receipt number ANYEDC-14105705. by Northrop Grumman Corporation, Northrop Grumman Systems Corporation. (Attachments: # 1 Affidavit, # 2 Certificate of Good Standing - DC, # 3 Certificate of Good Standing - NY) (Klein, Stephen) (Entered: 02/05/2021) |
| 02/05/2021 | 146 | NOTICE by Northrop Grumman Corporation, Northrop Grumman Systems Corporation of withdrawal of Frank Leone as Counsel (Miller, Mark) (Entered: 02/05/2021) |
| 02/08/2021 | | ORDER granting 145 Motion for Leave to Appear Pro Hac Vice: Having reviewed the Pro Hac Vice application 145 submitted by Stephen A. Klein for Defendants Northrop Grumman Corporation and Northrop Grumman Systems Corporation and found it to be in compliance with the local rules concerning attorney admissions, the application is |

5/2/25, 10:20 AM

Case: 25-1000, 05/02/2025, DktEntry: 16.1, Page 63 of 104
Eastern District of New York - LIVE Database 1.8 (Revision 1.8.1)

| | | |
|---|---|---|
| | | approved. If not already done, the attorney shall register for ECF which is available online at the NYED's homepage. Once registered, the attorney shall file a notice of appearance and ensure that he receives electronic notifications of activity in this case. The attorney shall ensure that the $150 admission fee is submitted or has been submitted to the Clerk's Office. So Ordered by Magistrate Judge Steven Tiscione on 2/8/2021. (Vasquez, Lea) (Entered: 02/08/2021) |
| 02/08/2021 | | Order re: Notice of Consent to Change Attorney re 146 Notice(Other) filed by Northrop Grumman Systems Corporation, Northrop Grumman Corporation Attorney Frank Leone terminated. So Ordered by Magistrate Judge Steven Tiscione on 2/8/2021. (Vasquez, Lea) (Entered: 02/08/2021) |
| 02/08/2021 | 147 | Letter MOTION for Extension of Time to File /serve motion for summary judgment and modify briefing schedule by Department of the Navy, United States of America. (Schumacher, Robert) (Entered: 02/08/2021) |
| 02/09/2021 | | ORDER granting defendants' second consent 147 Motion for Extension of Time to File. Defendants shall serve their opening papers by 3/2/2021. Plaintiff shall serve their opposition papers by 6/15/2021. Defendants shall serve their reply papers by 7/30/2021. The fully-briefed motion shall be filed on ECF in accordance with Individual Rule III.D (the "Bundling Rule") by 8/3/2021. Ordered by Judge Eric N. Vitaliano on 2/9/2021. (Dudding, Sasha) (Entered: 02/09/2021) |
| 02/22/2021 | 148 | STATUS REPORT by Town of Hempstead (Fisher, Scott) (Entered: 02/22/2021) |
| 03/01/2021 | 149 | Letter MOTION for Extension of Time to File /serve motion for summary judgment and modifying briefing schedule by Occidental Chemical Corporation. (Sterthous, Michael) (Entered: 03/01/2021) |
| 03/01/2021 | | ORDER granting defendants' third consent 149 Motion for Extension of Time to File. Defendants shall serve their opening papers by 3/8/2021. All other deadlines remain unchanged. Ordered by Judge Eric N. Vitaliano on 3/1/2021. (Dudding, Sasha) (Entered: 03/01/2021) |
| 03/30/2021 | 150 | STATUS REPORT by Town of Hempstead (Fisher, Scott) (Entered: 03/30/2021) |
| 04/05/2021 | | STATUS REPORT ORDER re 150 Status Report filed by Town of Hempstead: Counsel shall electronically file an updated status report by April 30, 2021. So Ordered by Magistrate Judge Steven Tiscione on 4/5/2021. (Vasquez, Lea) (Entered: 04/05/2021) |
| 04/26/2021 | 151 | STATUS REPORT by Town of Hempstead (Fisher, Scott) (Entered: 04/26/2021) |
| 04/26/2021 | | STATUS REPORT ORDER re 151 Status Report filed by Town of Hempstead: Counsel shall electronically file an updated status report by 5/28/2021. So Ordered by Magistrate Judge Steven Tiscione on 4/26/2021. (Vasquez, Lea) (Entered: 04/26/2021) |
| 05/17/2021 | | Case reassigned to Magistrate Judge James M. Wicks. Magistrate Judge Steven Tiscione no longer assigned to the case. Please download and review the Individual Practices of the assigned Judges, located on our website. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. (Florio, Lisa) (Entered: 05/17/2021) |
| 05/18/2021 | 152 | ORDER OF RECUSAL: Magistrate Judge James M. Wicks recused. Case reassigned to Magistrate Judge Steven Tiscione for all further proceedings. So Ordered by Magistrate Judge James M. Wicks on 5/18/2021. (Ortiz, Grisel) (Entered: 05/20/2021) |
| 05/26/2021 | 153 | STATUS REPORT (Joint) by Town of Hempstead (Fisher, Scott) (Entered: 05/26/2021) |

5/2/25, 10:20 AM

| | | |
|---|---|---|
| 05/28/2021 | | STATUS REPORT ORDER: Counsel shall electronically file an updated status report by 6/30/2021. So Ordered by Magistrate Judge Steven Tiscione on 5/28/2021. (Vasquez, Lea) (Entered: 05/28/2021) |
| 06/04/2021 | <u>154</u> | Letter MOTION for Extension of Time to File Response/Reply as to Order on Motion for Extension of Time to File, Order on Motion for Extension of Time to File, by Town of Hempstead. (Fisher, Scott) (Entered: 06/04/2021) |
| 06/07/2021 | | ORDER granting plaintiff's third consent <u>154</u> Motion for Extension of Time to File. Plaintiff shall serve their opposition papers by 7/30/2021. Defendants shall serve their reply papers by 9/30/2021. The fully-briefed motion shall be filed on ECF in accordance with Individual Rule III.D (the "Bundling Rule") by 10/5/2021.Ordered by Judge Eric N. Vitaliano on 6/7/2021. (Dudding, Sasha) (Entered: 06/07/2021) |
| 06/29/2021 | <u>155</u> | STATUS REPORT by Town of Hempstead (Fisher, Scott) (Entered: 06/29/2021) |
| 06/29/2021 | | STATUS REPORT ORDER: Counsel shall electronically file an updated status report by 7/30/2021. So Ordered by Magistrate Judge Steven Tiscione on 6/29/2021. (Trimes, Alexander) (Entered: 06/29/2021) |
| 07/28/2021 | <u>156</u> | STATUS REPORT by Town of Hempstead (Fisher, Scott) (Entered: 07/28/2021) |
| 08/27/2021 | <u>157</u> | STATUS REPORT by Town of Hempstead (Fisher, Scott) (Entered: 08/27/2021) |
| 09/20/2021 | <u>158</u> | First MOTION for Extension of Time to File Response/Reply *In Further Support of Motion for Summary Judgment* by Occidental Chemical Corporation. (Sterthous, Michael) (Entered: 09/20/2021) |
| 09/21/2021 | | ORDER granting <u>158</u> Motion for Extension of Time to File Response/Reply. Defendants shall serve their reply papers by 10/29/2021. The fully-briefed motion shall be filed on ECF in accordance with Individual Rule III.D (the "Bundling Rule") by 11/5/2021. Ordered by Judge Eric N. Vitaliano on 9/21/2021. (Fumelli, Alexander) (Entered: 09/21/2021) |
| 09/30/2021 | <u>159</u> | STATUS REPORT by Town of Hempstead (Fisher, Scott) (Entered: 09/30/2021) |
| 10/26/2021 | <u>160</u> | Letter MOTION for Extension of Time to File Response/Reply *submissions in further support of their motion for summary judgment* by Department of the Navy, United States of America. (Schumacher, Robert) (Entered: 10/26/2021) |
| 10/27/2021 | | ORDER granting <u>160</u> Motion for Extension of Time to File Response/Reply. Defendants shall serve their reply papers by 11/29/2021. The fully-briefed motion shall be filed on ECF in accordance with Individual Rule III.D (the "Bundling Rule") by 12/6/2021. Ordered by Judge Eric N. Vitaliano on 10/27/2021. (Fumelli, Alexander) (Entered: 10/27/2021) |
| 10/29/2021 | <u>161</u> | STATUS REPORT by Town of Hempstead (Fisher, Scott) (Entered: 10/29/2021) |
| 12/06/2021 | <u>162</u> | MOTION for Summary Judgment by Northrop Grumman Corporation, Northrop Grumman Systems Corporation. (Attachments: # <u>1</u> Memorandum in Support, # <u>2</u> Certificate of Service, # <u>3</u> Proposed Order) (Miller, Mark) (Entered: 12/06/2021) |
| 12/06/2021 | <u>163</u> | Notice of MOTION for Summary Judgment by Department of the Navy, United States of America. (Schumacher, Robert) (Entered: 12/06/2021) |
| 12/06/2021 | <u>164</u> | RULE 56.1 STATEMENT re <u>163</u> Notice of MOTION for Summary Judgment filed by Department of the Navy, United States of America. (Schumacher, Robert) (Entered: 12/06/2021) |

| 12/06/2021 | 165 | MEMORANDUM in Support re 163 Notice of MOTION for Summary Judgment filed by Department of the Navy, United States of America. (Schumacher, Robert) (Entered: 12/06/2021) |
|---|---|---|
| 12/06/2021 | 166 | AFFIDAVIT/DECLARATION in Support re 163 Notice of MOTION for Summary Judgment *of AUSA Robert W. Schumacher* filed by Department of the Navy, United States of America. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O) (Schumacher, Robert) (Entered: 12/06/2021) |
| 12/06/2021 | 167 | MEMORANDUM in Opposition re 163 Notice of MOTION for Summary Judgment filed by Department of the Navy, United States of America. (Schumacher, Robert) (Entered: 12/06/2021) |
| 12/06/2021 | 168 | RULE 56.1 STATEMENT re 163 Notice of MOTION for Summary Judgment - *Plaintiff's Rule 56.1(b) Statement in Response to Rule 56.1 Statement of the Federal Defendants* filed by Department of the Navy, United States of America. (Schumacher, Robert) (Entered: 12/06/2021) |
| 12/06/2021 | 169 | RULE 56.1 STATEMENT re 163 Notice of MOTION for Summary Judgment - *Plaintiff's Rule 56.1 Statement of Additional Material Facts in Opposition to the Motion for Summary Judgment of the Federal Defendants* filed by Department of the Navy, United States of America. (Schumacher, Robert) (Entered: 12/06/2021) |
| 12/06/2021 | 170 | RULE 56.1 STATEMENT re 162 MOTION for Summary Judgment filed by Northrop Grumman Corporation, Northrop Grumman Systems Corporation. (Miller, Mark) (Entered: 12/06/2021) |
| 12/06/2021 | 171 | AFFIDAVIT/DECLARATION in Opposition re 163 Notice of MOTION for Summary Judgment *of Scott B. Fisher* filed by Department of the Navy, United States of America. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Exhibit 26, # 27 Exhibit 27, # 28 Exhibit 28, # 29 Exhibit 29, # 30 Exhibit 30, # 31 Exhibit 31, # 32 Exhibit 32, # 33 Exhibit 33, # 34 Exhibit 34, # 35 Exhibit 35, # 36 Exhibit 36, # 37 Exhibit 37, # 38 Exhibit 38, # 39 Exhibit 39, # 40 Exhibit 40, # 41 Exhibit 41, # 42 Exhibit 42, # 43 Exhibit 43, # 44 Exhibit 44, # 45 Exhibit 45, # 46 Exhibit 46, # 47 Exhibit 47, # 48 Exhibit 48, # 49 Exhibit 49, # 50 Exhibit 50, # 51 Exhibit 51, # 52 Exhibit 52, # 53 Exhibit 53, # 54 Exhibit 54, # 55 Exhibit 55, # 56 Exhibit 56, # 57 Exhibit 57, # 58 Exhibit 58, # 59 Exhibit 59, # 60 Exhibit 60, # 61 Exhibit 61, # 62 Exhibit 62, # 63 Exhibit 63, # 64 Exhibit 64, # 65 Exhibit 65, # 66 Exhibit 66, # 67 Exhibit 67, # 68 Exhibit 68, # 69 Exhibit 69, # 70 Exhibit 70, # 71 Exhibit 71, # 72 Exhibit 72, # 73 Exhibit 73, # 74 Exhibit 74, # 75 Exhibit 75, # 76 Exhibit 76, # 77 Exhibit 77, # 78 Exhibit 78, # 79 Exhibit 79, # 80 Exhibit 80, # 81 Exhibit 81, # 82 Exhibit 82, # 83 Exhibit 83, # 84 Exhibit 84, # 85 Exhibit 85, # 86 Exhibit 86, # 87 Exhibit 87, # 88 Exhibit 88, # 89 Exhibit 89, # 90 Exhibit 90, # 91 Exhibit 91, # 92 Exhibit 92, # 93 Exhibit 93, # 94 Exhibit 94, # 95 Exhibit 95, # 96 Exhibit 96, # 97 Exhibit 97, # 98 Exhibit 98, # 99 Exhibit 99, # 100 Exhibit 100, # 101 Exhibit 101, # 102 Exhibit 102, # 103 Exhibit 103, # 104 Exhibit 104, # 105 Exhibit 105, # 106 Exhibit 106, # 107 Exhibit 107, # 108 Exhibit 108, # 109 Exhibit 109, # 110 Exhibit 110, # 111 Exhibit 111, # 112 Exhibit 112, # 113 Exhibit 113, # 114 Exhibit 114, # 115 Exhibit 115, # 116 Exhibit 116, # 117 Exhibit 117, # 118 Exhibit 118, # 119 Exhibit 119, # 120 Exhibit 120, # 121 Exhibit 121, # 122 Exhibit 122) (Schumacher, Robert) (Entered: 12/06/2021) |

| | | |
|---|---|---|
| 12/06/2021 | 172 | AFFIDAVIT/DECLARATION in Opposition re 163 Notice of MOTION for Summary Judgment *of John L. Reinhardt III* filed by Department of the Navy, United States of America. (Schumacher, Robert) (Entered: 12/06/2021) |
| 12/06/2021 | 173 | AFFIDAVIT/DECLARATION in Opposition re 163 Notice of MOTION for Summary Judgment *of William D. Merklin, P.E.* filed by Department of the Navy, United States of America. (Schumacher, Robert) (Entered: 12/06/2021) |
| 12/06/2021 | 174 | AFFIDAVIT/DECLARATION in Opposition re 163 Notice of MOTION for Summary Judgment *of Richard W. Humann P.E.* filed by Department of the Navy, United States of America. (Schumacher, Robert) (Entered: 12/06/2021) |
| 12/06/2021 | 175 | AFFIDAVIT/DECLARATION in Opposition re 163 Notice of MOTION for Summary Judgment *of Timothy J. Hazlett, Ph.D.* filed by Department of the Navy, United States of America. (Schumacher, Robert) (Entered: 12/06/2021) |
| 12/06/2021 | 176 | REPLY in Support re 163 Notice of MOTION for Summary Judgment filed by Department of the Navy, United States of America. (Schumacher, Robert) (Entered: 12/06/2021) |
| 12/06/2021 | 177 | RULE 56.1 STATEMENT re 163 Notice of MOTION for Summary Judgment - *Reply to Plaintiff's Response to Federal Defendants' Rule 56.1 Statement of Material Facts* filed by Department of the Navy, United States of America. (Schumacher, Robert) (Entered: 12/06/2021) |
| 12/06/2021 | 178 | RULE 56.1 STATEMENT re 163 Notice of MOTION for Summary Judgment - *Federal Defendants' Counter-Statement to Plaintiff's Rule 56.1 Statement of Additional Facts* filed by Department of the Navy, United States of America. (Schumacher, Robert) (Entered: 12/06/2021) |
| 12/06/2021 | 179 | DECLARATION re 162 MOTION for Summary Judgment by Northrop Grumman Corporation, Northrop Grumman Systems Corporation (Attachments: # 1 Exhibit 1, # 2 Exhibit 2 PART 1, # 3 Exhibit 2 PART 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14, # 16 Exhibit 15, # 17 Exhibit 16, # 18 Exhibit 17, # 19 Exhibit 18, # 20 Exhibit 19, # 21 Exhibit 20, # 22 Exhibit 21, # 23 Exhibit 22, # 24 Exhibit 23, # 25 Exhibit 24, # 26 Exhibit 25, # 27 Exhibit 26, # 28 Exhibit 27, # 29 Exhibit 28, # 30 Exhibit 29, # 31 Exhibit 30, # 32 Exhibit 31, # 33 Exhibit 32, # 34 Exhibit 33, # 35 Exhibit 34) (Miller, Mark) (Entered: 12/06/2021) |
| 12/06/2021 | 180 | MOTION for Summary Judgment by Occidental Chemical Corporation. (Attachments: # 1 Declaration Declaration of Christopher M. McDonald, dated March 8, 2021, # 2 Exhibit Exhibit A - OU3 ROD with appendix, # 3 Exhibit Exhibit B - First Five Year Report, # 4 Exhibit Exhibit C - Preliminary Site Closeout Report, # 5 Exhibit Exhibit D - Second Five-Year Review Report, # 6 Exhibit Exhibit E - Reinhardt Deposition Excerpt, # 7 Exhibit Exhibit F - Humann Deposition Excerpt, # 8 Exhibit Exhibit G - Merklin Report Part 1 of 4, # 9 Exhibit Exhibit G - Merklin Report Part 2 of 4, # 10 Exhibit Exhibit G - Merklin Report Part 3 of 4, # 11 Exhibit Exhibit G - Merklin Report Part 4 of 4, # 12 Exhibit Exhibit H - Merklin Deposition Excerpt, # 13 Exhibit Exhibit I - Herman Report Excerpt, # 14 Exhibit Exhibit J - Morrissey Report, # 15 Exhibit Exhibit K - Hazlett Deposition Excerpt, # 16 Exhibit Exhibit L - Johnson Deposition Full with signature, # 17 Exhibit Exhibit M -Smith Deposition Full with signature, # 18 Exhibit Exhibit N - H2M Report 2019, # 19 Declaration Declaration of Jeffrey A. Johnson, dated March 8, 2021, # 20 Exhibit Exhibit A -CV, # 21 Exhibit Exhibit B - References, # 22 Exhibit Exhibit C - Report, # 23 Memorandum in Support Memorandum of Law, dated March 8, 2021, # 24 Rule 56.1 Statement Statement of Material Facts, dated March 8, 2021, # 25 Affidavit of Service Affidavit of Service, notarized March 10, 2021, # 26 Memorandum in Opposition |

5/2/25, 10:20 AM

Case: 25-1000, 05/02/2025, DktEntry: 16.1, Page 67 of 104
Eastern District of New York - LIVE Database 1.8 (Revision 1.8.1)

Memorandum of Law in Opposition, dated July 30, 2021, # 27 Rule 56.1 Statement Rule 56.1 Statement of Additional Material Facts in Opposition, dated July 30, 2021, # 28 Rule 56.1 Statement Rule 56.1(b) Statement in Response to Rule 56.1 Statement of Defendant, dated July 30, 2021, # 29 Declaration Declaration of William Merklin, P.E., dated June 17, 2021, # 30 Declaration Declaration of Timothy Hazlett, Ph. D., dated June 23, 2021, # 31 Declaration Declaration of Richard W. Humann, P.E., dated June 26, 2021, # 32 Declaration Declaration of John Reinhardt III, dated July 9, 2021, # 33 Declaration Declaration of Scott B. Fisher, dated July 30, 2021, # 34 Exhibit Exhibit 1 TOH v. Grumman - Filed Complaint-1135000-v1, # 35 Exhibit Exhibit 2 Grumman_Answer_(#1283725), # 36 Exhibit Exhibit 3 Navy_Answer_(#1283724), # 37 Exhibit Exhibit 4 Occidental__Answer_(#1283722), # 38 Exhibit Exhibit 5 Coverstro_and_Bayer_Answer_(#1283723, # 39 Exhibit Exhibit 6 Merklin Expert_Report with exhibits A-D, # 40 Exhibit Exhibit 7 H2M August 2019 Expert Report, # 41 Exhibit Exhibit 8 NCDOH 2012 Water Quality Montitoring Requirments Table1-3, # 42 Exhibit Exhibit 9 - 2013 Sampling Data, # 43 Exhibit Exhibit 10 SWAP, # 44 Exhibit Exhibit 11 Long Island SWAP Executive Summary, # 45 Exhibit Exhibit 12 EDR Radius Map Report Extract dated August 7 2013, # 46 Exhibit Exhibit 13 Email from to NYSDEC dated August 19, 2013, # 47 Exhibit Exhibit 14 Email dated August 19 2013 from Hannon to Wolfert TOH -ARCADIS 000009938, # 48 Exhibit Exhibit 15 - Email dated July 12 2012 Outpost Wells 4-1 TOH-ARCADIS -000008741-8744, # 49 Exhibit Exhibit 16 -Photographs LWD Well 7A 8A (1), # 50 Exhibit Exhibit 17 Photograph LWD Well 13, # 51 Exhibit Exhibit 18 Town Board Resolution No 774-2013 adopted June 18 2013, # 52 Exhibit Exhibit 19 - D&B letter dated April 24. 2015 to Lora Fly DB000129, # 53 Exhibit Exhibit 20 Navy Letter to TOH dated June 18 2015, # 54 Exhibit Exhibit 21 Location of Wells Sampled during April to August 2013 D&B004267-69 4390, # 55 Exhibit Exhibit 22 Letter to Community from TOH regarding proposed well site dated July 2015, # 56 Exhibit Exhibit 23 Nassau County Department of Health Approval LWD Well 13 PTAS June 2016, # 57 Exhibit Exhibit 24 Nassau County Department of Health Approval Certificate dated September 20, 2018, # 58 Exhibit Exhibit 25 Summary of Construction and Engineering Expenses, # 59 Exhibit Exhibit 26 Water Quality Sampling Results for the LWD Weslls March 2021, # 60 Exhibit Exhibit 27 Quarterly Reports, # 61 Exhibit Exhibit 28 Figure 1 D&B 4390, # 62 Exhibit Exhibit 29 TOHUSAD&BTT101June2013Report, # 63 Exhibit Exhibit 30 Figure 1 October 5 2009 TVOC Plume, # 64 Exhibit Exhibit 31 TOHUSANYSDECtoHannonFlyAug232013NYSDEC000000059, # 65 Exhibit Exhibit 32 TOHUSANYSDECtoMerklinNov42013NYSDEC000000063, # 66 Exhibit Exhibit 33 TOHUSADesignReportstoNYSDECNYSDEC000015294, # 67 Exhibit Exhibit 34 TOHUSAPhotoPort Washington Well 6, # 68 Exhibit Exhibit 35 TOHUSAPhotoAWD4_1, # 69 Exhibit Exhibit 36TOHUSANov2014EmailsVPB148, # 70 Exhibit Exhibit 37 TOHUSAArcadisVPB148Map, # 71 Exhibit Exhibit 38 TOHUSAMerklinEmailFlyMay2015, # 72 Exhibit Exhibit 39 TOHUSANCDOHDARandEngApprovalsWell13, # 73 Exhibit Exhibit 40 TOHUSANCDOHDARandEngApprovalsWells7A8A, # 74 Exhibit Exhibit 41 TOHUSALWDWell8AWaterQual2013, # 75 Exhibit Exhibit 42TOHUSALWDWell13WaterQual2013, # 76 Exhibit Exhibit 43 TOHUSAPhoto1BWD5, # 77 Exhibit Exhibit 44 RemedyOptimTeamReportNYSDEC000009470, # 78 Exhibit Exhibit 45 NGRODOU2March2001, # 79 Exhibit Exhibit 46 Hooker Ruco OU3 ROD OXY-003625-003766, # 80 Exhibit Exhibit 47 Second Quarter2000 Groundwater Monitoring Report, # 81 Exhibit Exhibit 48 TOHUSANWIRPRODApril2003NYSDEC000144162, # 82 Exhibit Exhibit 49 TOHUSAPWSCPNYSDEC000144394, # 83 Exhibit Exhibit 50 TOHUSANGHannonEBTPagesJune2019, # 84 Exhibit Exhibit 51 TOHUSALoraFLyDepoTranscript, # 85 Exhibit Exhibit 52 TOHUSANWIRPPhase2RIOct1993Extract, # 86 Exhibit Exhibit 53

TOHUSANGDeviationReqMarch1964, # 87 Exhibit Exhibit 54
TOHUSANGChemicalProdsList, # 88 Exhibit Exhibit 55
TOHUSANGReportSourcesDischargingSOC, # 89 Exhibit Exhibit 56 RIFS and General
Map March 1990, # 90 Exhibit Exhibit 57 TOHUSANGSPDES1982, # 91 Exhibit
Exhibit 58 TOHUSANGBethHicksGWQualReports, # 92 Exhibit Exhibit 59
TOHUSANG1988NCDHTankRegis, # 93 Exhibit Exhibit 60
TOHUSANGHazWasteRedPlanJuly1991Extract, # 94 Exhibit Exhibit 61
TOHUSANGG&MWaterTableElevApril1993, # 95 Exhibit Exhibit 62
TOHUSANGToxicStorPermit1993, # 96 Exhibit Exhibit 63
TOHUSANGPhase1SAPlant2April1995, # 97 Exhibit Exhibit 64 - Indus. Chem. Survey
1995, # 98 Exhibit Exhibit 65 TOHUSANWIRPInitAssessDec1986Extract, # 99 Exhibit
Exhibit 66 TOHUSAMcLaneReportTable1, # 100 Exhibit Exhibit 67
TOHUSAPARODMay2019, # 101 Exhibit Exhibit 68 TOHUSANYSDECFSApril2019, #
102 Exhibit Exhibit 69 TOHUSAJune2017GWSampDataReport, # 103 Exhibit Exhibit
70 TOHUSANGRespPARODAppendixD, # 104 Exhibit Exhibit 71
TOHUSANGRespPARODAppendixE, # 105 Exhibit Exhibit 72
TOHUSAEplerReportExtract, # 106 Exhibit Exhibit 73 TOHUSA20204QGWData, # 107
Exhibit Exhibit 74
TOHUSATrggieralueAddendumAugust2018Report.HW.130003B.2018-08-
31.NAVFAC_Resolution_FINAL_Trigger_Value_Addendum, # 108 Exhibit Exhibit 75
Groundwater Monitoring Results, # 109 Exhibit Exhibit 76 Nathan Epler Depo Extract, #
110 Exhibit Exhibit 77 EPA Chemical Assessment summary, # 111 Exhibit Exhibit 78
Travelers Idem Co v Northrup Grumman Corp, # 112 Exhibit Exhibit 79 MIL-C-81302-
B-Dec 23 1968, # 113 Exhibit Exhibit 80 MIL-C-81302B- Amendment May16 1973, #
114 Exhibit Exhibit 81 MIL-C-81302B-Amendment 2 November 18 1975, # 115 Exhibit
Exhibit 82 MIL-C-81302B -Amendment 3 August 31 1976, # 116 Exhibit Exhibit 83
MIL-C- 81302C April 7 1981 (superseding MIL-C-81302C), # 117 Exhibit Exhibit 84
MIL-C-81302D- April 16 1985 (superseding MIL-C-81302C), # 118 Exhibit Exhibit 85
MIL-C-81302D- Amendment 1 September 28 1987, # 119 Exhibit Exhibit 86 MIL-C-
81302D- Notice 1 October 28, 1991, # 120 Exhibit Exhibit 87 MIL-C-81302D- Notice 2
July 10, 2019, # 121 Exhibit Exhibit 88 MIL-STD-1359B June 24 1987, # 122 Exhibit
Exhibit 89 Cleaning Methods and Procedures for Military Oxygen Equipment
Investigation Result, # 123 Exhibit Exhibit 90 Grumman Plane News Vol 30 -No 15
August 27, 1971, # 124 Exhibit Exhibit 91 Wolfert Chronological Record of the Bureau
of Water Resources Investigation, # 125 Exhibit Exhibit 92 Preliminary Investigation of
the Hooker Chemical and Plastics Site, Phase I Summary report November 1983, # 126
Exhibit Exhibit 93 New Fields Report, Figure 4, # 127 Exhibit Exhibit 94 Arcadis G&M
Letter dated September 24 2001, # 128 Exhibit Exhibit 95 Arcadis & G&M letter dated
September 25, 2001, # 129 Exhibit Exhibit 96 Quarterly Groundwater Monitoring Report
for Quarters 1 to 3 of 2003, # 130 Exhibit Exhibit 97 Flowchart Definition, # 131 Exhibit
Exhibit 98 Interim Data Report for Outpost Well OW4-1 dated July 13, 2012, # 132
Exhibit Exhibit 99 Table 2 Concentrations of Site related Volatile Organic Compounds in
Outpost Monitoring Wells 2003-2013, # 133 Exhibit Exhibit 100 Engineering and Design
Air Stripping October 31, 2001, # 134 Exhibit Exhibit 101 PAROD Attachment 3 July 5
2019, # 135 Exhibit Exhibit 102 Beneficial Effects Superfund Program EPA March 2011,
# 136 Exhibit Exhibit 103 Herman Figure 9, # 137 Exhibit Exhibit 104 Gradient
Comments on Proposed Plan for OU-1, # 138 Exhibit Exhibit 105 Amended Record of
Decision AROD with figure 2, # 139 Exhibit Exhibit 106 Drilling Priorities, NWIRP,
January 15, 2015 at NYSDEC000016072, # 140 Exhibit Exhibit 107 Email from Lora Fly
dated April 11, 2012 NYSDEC000000043, # 141 Exhibit Exhibit 108 Expert Report of
Charles F. McLane III dated January 17, 2020, # 142 Exhibit Exhibit 109 Final Draft Site
Inspection report Servo Corporation June 28, 1991, # 143 Exhibit Exhibit 110 Hooker
Ruco Ownership History OXY-003511, # 144 Exhibit Exhibit 111 Letter from Hooker
Ruco to NCDOH dated January 5, 1977, # 145 Exhibit Exhibit 112 Roger Smith

| | | |
|---|---|---|
| | | Deposition Extract, # <u>146</u> Exhibit Exhibit 113 Morrison, Robert Chlorinated Solvents A Forensic Evaluation, # <u>147</u> Exhibit Exhibit 114 Hooker Ruco Final Work Plan RI FS Sept1988, # <u>148</u> Exhibit Exhibit 115 Remedial Investigation Report Volume I April 1990, # <u>149</u> Exhibit Exhibit 116 Remedial Investigation Report Volume IV dated April 1990, # <u>150</u> Exhibit Exhibit 117 EPA letter dated December 11, 1991 to Occidental, # <u>151</u> Exhibit Exhibit 118 Occidental letter dated February 25, 1992 to EPA, # <u>152</u> Exhibit Exhibit 119 100% Final Design Report Off- Site Groundwater Biosparge Phase I Treatment System May 2005, # <u>153</u> Exhibit Exhibit 120 Remedial Investigation Report Operable U, # <u>154</u> Exhibit Exhibit 121 Deposition of Michael Wolfert dated July 21, 2020, # <u>155</u> Exhibit Exhibit 122 Kurt D. Herman Expert Figure 5 and 6, # <u>156</u> Memorandum in Support Reply Memorandum of Law in Further Support of MSJ, dated December 2, 2021, # <u>157</u> Declaration Declaration of Christopher M McDonald in Further Support of MSJ, dated December 2, 2021, # <u>158</u> Exhibit Exhibit A - June 28, 1979 Inter-Office Memorandum, disclosed as Bates OCC 2238-240., # <u>159</u> Exhibit Exhibit B -June 17, 2021 letter from EPA to Occidental reducing amount of Financial Assistance., # <u>160</u> Affidavit of Service Affidavit of Service, dated December 2, 2021) (McDonald, Christopher) (Entered: 12/06/2021) |
| 12/06/2021 | <u>181</u> | MOTION in Limine *to Exclude Expert Testimony of Timothy Hazlett* by Northrop Grumman Corporation, Northrop Grumman Systems Corporation. (Attachments: # <u>1</u> Memorandum in Support, # <u>2</u> Certificate of Service, # <u>3</u> Proposed Order) (Miller, Mark) (Entered: 12/06/2021) |
| 12/06/2021 | <u>182</u> | MOTION in Limine *to Exclude Expert Testimony of Richard Humann* by Northrop Grumman Corporation, Northrop Grumman Systems Corporation. (Attachments: # <u>1</u> Memorandum in Support, # <u>2</u> Certificate of Service, # <u>3</u> Proposed Order) (Miller, Mark) (Entered: 12/06/2021) |
| 12/06/2021 | <u>183</u> | MOTION in Limine *to Exclude Expert Testimony of William Merklin* by Northrop Grumman Corporation, Northrop Grumman Systems Corporation. (Attachments: # <u>1</u> Memorandum in Support, # <u>2</u> Certificate of Service, # <u>3</u> Proposed Order) (Miller, Mark) (Entered: 12/06/2021) |
| 12/06/2021 | <u>184</u> | MEMORANDUM in Opposition re <u>162</u> MOTION for Summary Judgment filed by Northrop Grumman Corporation, Northrop Grumman Systems Corporation. (Miller, Mark) (Entered: 12/06/2021) |
| 12/06/2021 | <u>185</u> | RULE 56.1 STATEMENT re <u>162</u> MOTION for Summary Judgment - *Plaintiff's Rule 56.1(b) Statement in Response to Rule 56.1 Statement of the Northrop Grumman Defendants* filed by Northrop Grumman Corporation, Northrop Grumman Systems Corporation. (Miller, Mark) (Entered: 12/06/2021) |
| 12/06/2021 | <u>186</u> | RULE 56.1 STATEMENT re <u>162</u> MOTION for Summary Judgment *Judgment - Plaintiff's Rule 56.1 Statement of Additional Material Facts in Opposition to the Motion for Summary Judgment of Northrop Grumman Corporation, Northrop Grumman Systems Corporation* filed by Northrop Grumman Corporation, Northrop Grumman Systems Corporation. (Miller, Mark) (Entered: 12/06/2021) |
| 12/06/2021 | <u>187</u> | MEMORANDUM in Opposition re <u>181</u> , <u>182</u> , <u>183</u> MOTION in Limine *to Exclude Expert Testimony of Timothy Hazlett, Richard Humann and William Merklin* filed by Northrop Grumman Corporation, Northrop Grumman Systems Corporation. (Miller, Mark) Modified on 12/9/2021 (Herrera, Isaiah). (Entered: 12/06/2021) |
| 12/06/2021 | <u>188</u> | AFFIDAVIT/DECLARATION in Opposition re <u>162</u> , <u>181</u> , <u>182</u> and <u>183</u> MOTION for Summary Judgment *of Scott B. Fisher* filed by Northrop Grumman Corporation, Northrop Grumman Systems Corporation. (Attachments: # <u>1</u> Exhibit 1 - TOH v. Grumman - Filed Complaint, # <u>2</u> Exhibit 2 - Grumman Answer, # <u>3</u> Exhibit 3 - Navy Answer, # <u>4</u> Exhibit 4 |

5/2/25, 10:20 AM

Case: 25-1000, 05/02/2025, DktEntry: 16.1, Page 70 of 104
Eastern District of New York - LIVE Database 1.8 (Revision 1.8.1)

- Occidental Answer, # <u>5</u> Exhibit 5 - Coverstro and Bayer Answer, # <u>6</u> Exhibit 6 - Merklin Expert Report with exhibits A-D, # <u>7</u> Exhibit 7 - H2M August 2019 Expert Report, # <u>8</u> Exhibit 8 - NCDOH 2012 Water Quality Montitoring Requirments Table1-3, # <u>9</u> Exhibit 9 - 2013 Sampling Data, # <u>10</u> Exhibit 10 - SWAP, # <u>11</u> Exhibit 11 - Long Island SWAP Executive Summary, # <u>12</u> Exhibit 12 - EDR Radius Map Report Extract dated August 7 2013, # <u>13</u> Exhibit 13 - Email from to NYSDEC dated August 19, 2013, # <u>14</u> Exhibit 14 - Email dated August 19 2013 from Hannon to Wolfert, # <u>15</u> Exhibit 15 - Email dated July 12 2012 Outpost Wells, # <u>16</u> Exhibit 16 - Photographs LWD Well 7A 8A, # <u>17</u> Exhibit 17 - Photograph LWD Well 13, # <u>18</u> Exhibit 18 - Town Board Resolution No 774-2013 adopted June 18 2013, # <u>19</u> Exhibit 19 - D&B letter dated April 24. 2015 to Lora Fly, # <u>20</u> Exhibit 20 - Navy Letter to TOH dated June 18 2015, # <u>21</u> Exhibit 21 - Location of Wells Sampled during April to August 2013, # <u>22</u> Exhibit 22 - Letter to Community from TOH regarding proossted well site dated July 2015, # <u>23</u> Exhibit 23 - Nassau County Department of Health Approval LWD Well 13 PTAS June 2016, # <u>24</u> Exhibit 24 - Nassau County Department of Health Approval Certificate dated September 20, 2018, # <u>25</u> Exhibit 25 - Summary of Construction and Engineering Expenses, # <u>26</u> Exhibit 26 - Water Quality Sampling Results for the LWD Weslls March 2021, # <u>27</u> Exhibit 27 - Quarterly Reports, # <u>28</u> Exhibit 28 - Figure 1 D&B 4390, # <u>29</u> Exhibit 29 - TOHUSAD&BTT101June2013Report, # <u>30</u> Exhibit 30 - Figure 1 October 5 2009 TVOC Plume, # <u>31</u> Exhibit 31 - TOHUSANYSDECtoHannonFlyAug232013NYSDEC000000059, # <u>32</u> Exhibit 32 - TOHUSANYSDECtoMerklinNov42013NYSDEC000000063, # <u>33</u> Exhibit 33 - TOHUSADesignReportstoNYSDECNYSDEC000015294, # <u>34</u> Exhibit 34 - TOHUSAPhotoPort Washington Well 6, # <u>35</u> Exhibit 35 - TOHUSAPhotoAWD4_1, # <u>36</u> Exhibit 36 - TOHUSANov2014EmailsVPB148, # <u>37</u> Exhibit 37 - TOHUSAArcadisVPB148Map, # <u>38</u> Exhibit 38 - TOHUSAMerklinEmailFlyMay2015, # <u>39</u> Exhibit 39 - TOHUSANCDOHDARandEngApprovalsWell13, # <u>40</u> Exhibit 40 - TOHUSANCDOHDARandEngApprovalsWells7A8A, # <u>41</u> Exhibit 41 - TOHUSALWDWell8AWaterQual2013, # <u>42</u> Exhibit 42 - TOHUSALWDWell13WaterQual2013, # <u>43</u> Exhibit 43 - TOHUSAPhoto1BWD5, # <u>44</u> Exhibit 44 - RemedyOptimTeamReportNYSDEC000009470, # <u>45</u> Exhibit 45 - NGRODOU2March2001, # <u>46</u> Exhibit 46 - Hooker Ruco OU3 ROD OXY-003625-003766, # <u>47</u> Exhibit 47 - Second Quarter 2000 Groundwater Monitoring Report, # <u>48</u> Exhibit 48 - TOHUSANWIRPRODApril2003NYSDEC000144162, # <u>49</u> Exhibit 49 - TOHUSAPWSCPNYSDEC000144394, # <u>50</u> Exhibit 50 - TOHUSANGHannonEBTPagesJune2019, # <u>51</u> Exhibit 51 - TOHUSALoraFLyDepoTranscript, # <u>52</u> Exhibit 52 - TOHUSANWIRPPhase2RIOct1993Extract, # <u>53</u> Exhibit 53 - TOHUSANGDeviationReqMarch1964, # <u>54</u> Exhibit 54 - TOHUSANGChemicalProdsList, # <u>55</u> Exhibit 55 - TOHUSANGReportSourcesDischargingSOC, # <u>56</u> Exhibit 56 - RIFS and General Map March 1990, # <u>57</u> Exhibit 57 - TOHUSANGSPDES1982, # <u>58</u> Exhibit 58 - TOHUSANGBethHicksGWQualReports, # <u>59</u> Exhibit 59 - TOHUSANG1988NCDHTankRegis, # <u>60</u> Exhibit 60 - TOHUSANGHazWasteRedPlanJuly1991Extract, # <u>61</u> Exhibit 61 - TOHUSANGG&MWaterTableElevApril1993, # <u>62</u> Exhibit 62 - TOHUSANGToxicStorPermit1993, # <u>63</u> Exhibit 63 - TOHUSANGPhase1SAPlant2April1995, # <u>64</u> Exhibit 64 - Indus. Chem. Survey 1995, # <u>65</u> Exhibit 65 - TOHUSANWIRPInitAssessDec1986Extract, # <u>66</u> Exhibit 66 - TOHUSAMcLaneReportTable1, # <u>67</u> Exhibit 67 - TOHUSAPARODMay2019, # <u>68</u> Exhibit 68 - TOHUSANYSDECFSApril2019, # <u>69</u> Exhibit 69 - TOHUSAJune2017GWSampDataReport, # <u>70</u> Exhibit 70 - TOHUSANGRespPARODAppendixD, # <u>71</u> Exhibit 71 - TOHUSANGRespPARODAppendixE, # <u>72</u> Exhibit 72 - TOHUSAEplerReportExtract, #

73 Exhibit 73 - TOHUSA20204QGWData, # 74 Exhibit 74 - TOHUSATrggieralueAddendumAugust2018, # 75 Exhibit 75 - Groundwater Monitoring Results, # 76 Exhibit 76 - Nathan Epler Depo Extract, # 77 Exhibit 77 - EPA Chemical Assessment summary, # 78 Exhibit 78 - Travelers Idem Co v Northrup Grumman Corp, # 79 Exhibit 79 - MIL-C-81302-B-Dec 23 1968, # 80 Exhibit 80 - MIL-C-81302B-Amendment May16 1973, # 81 Exhibit 81 - MIL-C-81302B-Amendment 2 November 18 1975, # 82 Exhibit 82 - MIL-C-81302B -Amendment 3 August 31 1976, # 83 Exhibit 83 - MIL-C- 81302C April 7 1981 (surpseding MIL-C-81302C), # 84 Exhibit 84 - MIL-C-81302D- April 16 1985 (surpeseding MIL-C-81302C), # 85 Exhibit 85 - MIL-C-81302D-Amendment 1 September 28 1987, # 86 Exhibit 86 - MIL-C-81302D- Notice 1 October 28, 1991, # 87 Exhibit 87 - MIL-C-81302D- Notice 2 July July 10, 2019, # 88 Exhibit 88 - MIL-STD-1359B June 24 1987, # 89 Exhibit 89 - Cleaning Methods and Procedures for Military Oxygen Equipment Investigation Result, # 90 Exhibit 90 - Grumman Plane News Vol 30 -No 15 Augsut 27, 1971, # 91 Exhibit 91 - Wolfert Chronological Roecrod of the Bureau of Water Resources Investigation, # 92 Exhibit 92 - Preliminary Investigation of the Hooker Chemical and Plastics Site, # 93 Exhibit 93 - NewFields Report, Figure 4, # 94 Exhibit 94 - Arcadis G&M Letter dated September 24 2001, # 95 Exhibit 95 - Arcadis & G&M letter dated September 25, 2001, # 96 Exhibit 96 - Quarterly Groundwater Monitoring Report for Quarters 1 to 3 of 2003, # 97 Exhibit 97 - Flowchart Definition, # 98 Exhibit 98 - Interim Data Report for Outpost Well OW4-1 dated Jly 13, 2012, # 99 Exhibit 99 - Table 2 Concentrations of Site related Volatile Organic Compounds, # 100 Exhibit 100 - Engineering and Design Air Stripping October 31, 2001, # 101 Exhibit 101 - PAROD Attachment 3 July 5 2019, # 102 Exhibit 102 - Beneficial Effects Superfund Program EPA March 2011, # 103 Exhibit 103 - Herman Figure 9, # 104 Exhibit 104 - Gradient Comments on Proposed Plan for OU-1, # 105 Exhibit 105 - Amended Record of Decision AROD with figure 2, # 106 Exhibit 106 - Drilling Priorities, NWIRP, January 15, 2015 at NYSDEC000016072, # 107 Exhibit 107 - Email from Lora Fly dated April 11, 2012 NYSDEC000000043, # 108 Exhibit 108 - Expert Report of Charles F. McLane III dated January 17, 2020, # 109 Exhibit 109 Final Draft Site Inspection report Servo Corporation June 28, 1991, # 110 Exhibit 110 - Hooker Ruco Ownership History OXY-003511, # 111 Exhibit 111 - Letter from Hooker Ruco to NCDOH dated January 5, 1977, # 112 Exhibit 112 - Roger Smith Deposition Extract, # 113 Exhibit 113 - Morrison, Robert Chlorinated Solvents A Forensic Evaluation, # 114 Exhibit 114 - Hooker Ruco Final Work Plan RI FS Sept1988, # 115 Exhibit 115 - Remedial Investigation Report Volume I April 1990, # 116 Exhibit 116 - Remedial Invesitagation Report Volume IV dated April 1990, # 117 Exhibit 117 - EPA letter dated December 11, 1991 to Occidental, # 118 Exhibit 118 - Occidental letter dated February 25, 1992 to EPA, # 119 Exhibit 119 - 100% Final Design Report Off- Site Grounder Biosparge Phase I Treatment System May 2005, # 120 Exhibit 120 - Remedial Investigation Report Operable Unit 3, # 121 Exhibit 121 - Depositon of Michael Wolfert dated July 21, 2020, # 122 Exhibit 122 - Kurt D. Herman Expert Figure 5 and 6) (Miller, Mark) Modified on 12/15/2021 (Herrera, Isaiah). (Entered: 12/06/2021)

| 12/06/2021 | 189 | REPLY in Support re 181 MOTION in Limine *to Exclude Expert Testimony of Timothy Hazlett* filed by Northrop Grumman Corporation, Northrop Grumman Systems Corporation. (Attachments: # 1 Certificate of Service) (Miller, Mark) (Entered: 12/06/2021) |
| 12/06/2021 | 190 | REPLY in Support re 182 MOTION in Limine *to Exclude Expert Testimony of Richard Humann* filed by Northrop Grumman Corporation, Northrop Grumman Systems Corporation. (Attachments: # 1 Certificate of Service) (Miller, Mark) (Entered: 12/06/2021) |
| 12/06/2021 | 191 | REPLY in Support re 183 MOTION in Limine *to Exclude Expert Testimony of William Merklin* filed by Northrop Grumman Corporation, Northrop Grumman Systems |

| | | Corporation. (Attachments: # <u>1</u> Certificate of Service) (Miller, Mark) (Entered: 12/06/2021) |
|---|---|---|
| 12/06/2021 | <u>192</u> | AFFIDAVIT/DECLARATION in Opposition re <u>162</u> , <u>181</u> , <u>182</u> and <u>183</u> MOTION for Summary Judgment *of John L. Reinhardt III* filed by Northrop Grumman Corporation, Northrop Grumman Systems Corporation. (Miller, Mark) Modified on 12/15/2021 (Herrera, Isaiah). (Entered: 12/06/2021) |
| 12/06/2021 | <u>193</u> | AFFIDAVIT/DECLARATION in Opposition re <u>162</u> , <u>181</u> , <u>182</u> and <u>183</u> MOTION for Summary Judgment *of William Merklin* filed by Northrop Grumman Corporation, Northrop Grumman Systems Corporation. (Miller, Mark) Modified on 12/15/2021 (Herrera, Isaiah). (Entered: 12/06/2021) |
| 12/06/2021 | <u>194</u> | AFFIDAVIT/DECLARATION in Opposition re <u>162</u> , <u>181</u> , <u>182</u> and <u>183</u> MOTION for Summary Judgment *of Richard W. Humann* filed by Northrop Grumman Corporation, Northrop Grumman Systems Corporation. (Miller, Mark) Modified on 12/15/2021 (Herrera, Isaiah). (Entered: 12/06/2021) |
| 12/06/2021 | <u>195</u> | AFFIDAVIT/DECLARATION in Opposition re <u>162</u> , <u>181</u> , <u>182</u> and <u>183</u> MOTION for Summary Judgment *of Timothy Hazlett* filed by Northrop Grumman Corporation, Northrop Grumman Systems Corporation. (Miller, Mark) Modified on 12/15/2021 (Herrera, Isaiah). (Entered: 12/06/2021) |
| 12/06/2021 | <u>196</u> | REPLY in Support re <u>162</u> MOTION for Summary Judgment filed by Northrop Grumman Corporation, Northrop Grumman Systems Corporation. (Attachments: # <u>1</u> Certificate of Service, # <u>2</u> Appendix A) (Miller, Mark) (Entered: 12/06/2021) |
| 12/06/2021 | <u>197</u> | RULE 56.1 STATEMENT re <u>162</u> MOTION for Summary Judgment - *Northrop Grummans Response in Opposition to Plaintiff's Rule 56.1 Statement of Additional Facts* filed by Northrop Grumman Corporation, Northrop Grumman Systems Corporation. (Miller, Mark) (Entered: 12/06/2021) |
| 12/06/2021 | <u>198</u> | Oral MOTION for Summary Judgment by Bayer Corporation, Covestro LLC. (Attachments: # <u>1</u> Declaration Declaration of Timothy I. Duffy, Esq., # <u>2</u> Exhibit Exhibit A - Complaint, # <u>3</u> Exhibit Exhibit B - Fisher Report, # <u>4</u> Exhibit Exhibit C - Merklin Report, # <u>5</u> Exhibit Exhibit D - Merklin Depo Transcript, # <u>6</u> Exhibit Exhibit E - Reinhardt Depo Transcript, # <u>7</u> Exhibit Exhibit F - H2M Report, # <u>8</u> Exhibit Exhibit G - Hazlett Depo Transcript, # <u>9</u> Exhibit Exhibit H - Humann Depo Transcript, # <u>10</u> Exhibit Exhibit I - First Five-Year Review Report, # <u>11</u> Exhibit Exhibit J - Fisher Depo Transcript, # <u>12</u> Exhibit Exhibit K - Johnson's Report, # <u>13</u> Exhibit Exhibit L - Johnson Depo Transcript, # <u>14</u> Memorandum in Support Memorandum in Support of Law, # <u>15</u> Rule 56.1 Statement Statement of Material Facts, # <u>16</u> Affidavit of Service Affidavit of Service, # <u>17</u> Memorandum in Opposition Memorandum of Law in Opposition to Covestro & Bayer, # <u>18</u> Rule 56.1 Statement Statement of Additional Facts In Opposition, # <u>19</u> Rule 56.1 Statement Statement in Response to Rule 56.1, # <u>20</u> Memorandum in Opposition Memorandum of Law in Opposition to Defendants Daubert Motions, # <u>21</u> Declaration Declaration of John Reinhardt, # <u>22</u> Declaration Declaration of William Merklin, # <u>23</u> Declaration Declaration of Richard W. Humann, # <u>24</u> Declaration Declaration of Timothy Hazlett, # <u>25</u> Declaration Declaration-of Scott B. Fisher, # <u>26</u> Exhibit Exhibit 1 - TOH v. Grumman - Filed Complaint-1135000-v1, # <u>27</u> Exhibit Exhibit 2 - Grumman_Answer, # <u>28</u> Exhibit Exhibit 3 - Navy Answer, # <u>29</u> Exhibit Exhibit 4 - Occidental Answer, # <u>30</u> Exhibit Exhibit 5 - Covestro and Bayer Answer, # <u>31</u> Exhibit Exhibit 6 - Merklin Expert Report, # <u>32</u> Exhibit Exhibit 7 - H2M August 2019 Expert Report, # <u>33</u> Exhibit Exhibit 8 - NCDOH 2012 Water Quality Monitoring Requirements Table1-3, # <u>34</u> Exhibit Exhibit 9 - 2013 Sampling Data, # <u>35</u> Exhibit Exhibit 10 - SWAP, # <u>36</u> Exhibit Exhibit 11 - Long Island SWAP Executive Summary, # <u>37</u> Exhibit Exhibit 12 - EDR Radius Map Report Extract dated August 7 2013, # <u>38</u> |

Exhibit Exhibit 13 - Email from to NYSDEC dated August 19, 2013, # 39 Exhibit Exhibit 14 - Email dated August 19 2013 from Hannon to Wolfert TOH -ARCADI, # 40 Exhibit Exhibit 15 - Email dated July 12 2012 Outpost Wells 4-1 TOH-ARCADIS, # 41 Exhibit Exhibit 16 - Photographs LWD Well 7A 8A (1), # 42 Exhibit Exhibit 17 - Photograph LWD Well 13, # 43 Exhibit Exhibit 18 - Town Board Resolution No 774-2013 adopted June 18 2013, # 44 Exhibit Exhibit 19 - D&B letter dated April 24. 2015 to Lora Fly DB000129, # 45 Exhibit Exhibit 20 - Navy Letter to TOH dated June 18 2015, # 46 Exhibit Exhibit 21 - Location of Wells Sampled during April to August 2013 D&B0042, # 47 Exhibit Exhibit 22 - Letter to Community from TOH regarding proposed well site data, # 48 Exhibit Exhibit 23 - Nassau County Department of Health Approval LWD Well 13 PTAS, # 49 Exhibit Exhibit 24 - Nassau County Department of Health Approval Certificate, # 50 Exhibit Exhibit 25 - Summary of Construction and Engineering Expenses, # 51 Exhibit Exhibit 26 - Water Quality Sampling Results for the LWD Wells March 2021, # 52 Exhibit Exhibit 27 - Quarterly Reports, # 53 Exhibit Exhibit 28 - Figure 1 D&B 4390, # 54 Exhibit Exhibit 29 - TOH USA D&B TT 101 June 2013 Report, # 55 Exhibit Exhibit 30 - Figure 1 October 5 2009 TVOC Plume, # 56 Exhibit Exhibit 31 - TOH USA NYSDEC to Hannon Fly Aug 23, 2013 NYSDEC 000000059, # 57 Exhibit Exhibit 32 - TOH USA NYSDEC to Merklin Nov 4, 2013 NYSDEC 000000063, # 58 Exhibit Exhibit 33 - TOH USA Design Reports to NYSDEC NYSDEC 000015294, # 59 Exhibit Exhibit 34 - TOH USA Photo Port Washington Well 6, # 60 Exhibit Exhibit 35 - TOH USA Photo AWD 4-1, # 61 Exhibit Exhibit 36 - TOH USA Nov 2014 Emails VPB148, # 62 Exhibit Exhibit 37 - TOH USA Arcadis VPB148 Map, # 63 Exhibit Exhibit 38 - TOH USA Merklin Email Fly May 2015, # 64 Exhibit Exhibit 39 - TOH USA NCDOH DAR and Eng Approvals Well 13, # 65 Exhibit Exhibit 40 - TOH USA NCDOH DAR and Eng Approvals Wells 7A 8A, # 66 Exhibit Exhibit 41 - TOH USA LWD Well 8A Water Qual 2013, # 67 Exhibit Exhibit 42 - TOH USA LWD Well 13 Water Qual 2013, # 68 Exhibit Exhibit 43 - TOH USA photo 1BWD5, # 69 Exhibit Exhibit 44 - Remedy Optim Team Report NYSDEC, # 70 Exhibit Exhibit 45 - NG ROD OU2 March 2001, # 71 Exhibit Exhibit 46 - Hooker Ruco OU3 ROD, # 72 Exhibit Exhibit 47 - Second Quarter 2000 Groundwater Monitoring Report, # 73 Exhibit Exhibit 48 - TOH USA NWIRO ROD April 2003, # 74 Exhibit Exhibit 49 - TOH USA PW SCP NYSDEC 000144394, # 75 Exhibit Exhibit 50 - TOH USA NG Hannon EBT Pages June 2019, # 76 Exhibit Exhibit 51 - TOH USA Lora Fly Depo Transcript, # 77 Exhibit Exhibit 52 - TOH USA NWIRO Phase 2 RI Oct 1993 Extract, # 78 Exhibit Exhibit 53 - TOH USA NG Deviation Req March 1964, # 79 Exhibit Exhibit 54 - TOH USA NG Chemical Prod List, # 80 Exhibit Exhibit 55 - TOH USA NG Report Sources Discharge SOC, # 81 Exhibit Exhibit 56 - RIFS and general map March 1990, # 82 Exhibit Exhibit 57 - TOH USA NG SPDES 1982, # 83 Exhibit Exhibit 58 - TOH USA NG Beth Hicks GW Qual Reports, # 84 Exhibit Exhibit 59 - TOH USA NG 1988 NCDH Tank Regis, # 85 Exhibit Exhibit 60 - TOH USA NG Haz Waste Red Plan July 1991 Extract, # 86 Exhibit Exhibit 61 - TOH USA NG G&M water table elev April 1993, # 87 Exhibit Exhibit 62 - TOH USA NG toxic storm permit 1993, # 88 Exhibit Exhibit 63 - TOH USA NG phase 1 SA plant 2 April 1995, # 89 Exhibit Exhibit 64 - Indus Chem Survery 1995, # 90 Exhibit Exhibit 65 - TOH USAS WIRP Init Assess Dec 1986 Extract, # 91 Exhibit Exhibit 66 - TOH USA McLane Report Table 1, # 92 Exhibit Exhibit 67 - TOH USA PA ROD May 2019, # 93 Exhibit Exhibit 68 - TOH USA NYSDEC FS April 2019, # 94 Exhibit Exhibit 69 - TOH USA June 2017 GW Samp data report, # 95 Exhibit Exhibit 70 - TOH USA NG Resp PA ROD Appendix D, # 96 Exhibit Exhibit 71 - TOH USA NG Resp PA ROD Appendix E, # 97 Exhibit Exhibit 72 - TOH USA Epler Report Extract, # 98 Exhibit Exhibit 73 - TOH USA 20204 QGW Data, # 99 Exhibit Exhibit 74 - TOH USA Trggieralue Addendum August 2018 Report HW.130003B.2018-08-, # 100 Exhibit Exhibit 75 - Groundwater Monitoring Results, # 101 Exhibit Exhibit 76 - Nathan Epler Depo Extract, # 102 Exhibit Exhibit 77 - EPA Chemical Assessment summary, # 103 Exhibit Exhibit 78 - Travelers Idem Co v Northrup Grumman Corp, # 104 Exhibit Exhibit

|            |            |            |
|------------|------------|------------|
|            |            | 79 - MIL-C-81302-B-Dec 23 1968, # 105 Exhibit Exhibit 80 - MIL-C-81302B-Amendment May16 1973, # 106 Exhibit Exhibit 81 - MIL-C-81302B-Amendment 2 November 18 1975, # 107 Exhibit Exhibit 82 - MIL-C-81302B -Amendment 3 August 31 1976, # 108 Exhibit Exhibit 83 - MIL-C- 81302C April 7 1981 (superseding MIL-C-81302C), # 109 Exhibit Exhibit 84 - MIL-C-81302D- April 16 1985 (superseding MIL-C-81302C), # 110 Exhibit Exhibit 85 - MIL-C-81302D- Amendment 1 September 28 1987, # 111 Exhibit Exhibit 86 - MIL-C-81302D- Notice 1 October 28, 1991, # 112 Exhibit Exhibit 87 - MIL-C-81302D- Notice 2 July 10, 2019, # 113 Exhibit Exhibit 88 - MIL-STD-1359B June 24 1987, # 114 Exhibit Exhibit 89 - Cleaning Methods and Procedures for Military Oxygen Equipment, # 115 Exhibit Exhibit 90 - Grumman Plane News Vol 30 -No 15 August 27, 1971, # 116 Exhibit Exhibit 91 - Wolfert Chronological Record of the Bureau of Water Resources, # 117 Exhibit Exhibit 92 - Preliminary Investigation of the Hooker Chemical and Plastics, # 118 Exhibit Exhibit 93 - New Fields Report, Figure 4, # 119 Exhibit Exhibit 94 - Arcadis G&M Letter dated September 24 2001, # 120 Exhibit Exhibit 95 - Arcadis & G&M letter dated September 25, 2001, # 121 Exhibit Exhibit 96 - Quarterly Groundwater Monitoring Report for Quarters 1 to 3 of 2003, # 122 Exhibit Exhibit 97 - Flowchart Definition, # 123 Exhibit Exhibit 98 - Interim Data Report for Outpost Well OW4-1 dated July 13, 2012, # 124 Exhibit Exhibit 99 - Table 2 Concentrations of Site related Volatile Organic Compo, # 125 Exhibit Exhibit 100 - Engineering and Design Air Stripping October 31, 2001, # 126 Exhibit Exhibit 101 - PA ROD Attachment 3 July 5 2019, # 127 Exhibit Exhibit 102 - Beneficial Effects Superfund Program EPA March 2011, # 128 Exhibit Exhibit 103 - Herman Figure 9, # 129 Exhibit Exhibit 104 - Gradient Comments on Proposed Plan for OU-1, # 130 Exhibit Exhibit 105 - Amended Record of Decision AROD with figure 2, # 131 Exhibit Exhibit 106 - Drilling Priorities, NWIRP, January 15, 2015 at NYSDEC000016, # 132 Exhibit Exhibit 107 - Email from Lora Fly dated April 11, 2012 NYSDEC000000043, # 133 Exhibit Exhibit 108 - Expert Report of Charles F. McLane III dated January 17, 2020, # 134 Exhibit Exhibit 109 - Final Draft Site Inspection report Servo Corporation June 28, 1991, # 135 Exhibit Exhibit 110 - Hooker Ruco Ownership History OXY-003511, # 136 Exhibit Exhibit 111 - Letter from Hooker Ruco to NCDOH dated January 5, 1977, # 137 Exhibit Exhibit 112 - Roger Smith Deposition Extract, # 138 Exhibit Exhibit 113 - Morrison, Robert Chlorinated Solvents A Forensic Evaluation, # 139 Exhibit Exhibit 114 - Hooker Ruco Final Work Plan RI FS Sept 1988, # 140 Exhibit Exhibit 115 - Remedial Investigation Report Volume I April 1990, # 141 Exhibit Exhibit 116 - Remedial Investigation Report Volume IV dated April 1990, # 142 Exhibit Exhibit 117 - EPA letter dated December 11, 1991 to Occidental, # 143 Exhibit Exhibit 118 - Occidental letter dated February 25, 1992 to EPA, # 144 Exhibit Exhibit 119 - 00% Final Design Report Off- Site Groundwater Biosparge, # 145 Exhibit Exhibit 120 - 120 Remedial Investigation Report Operable Unit 3, # 146 Exhibit Exhibit 121 - Deposition of Michael Wolfert dated July 21, 2020, # 147 Exhibit Exhibit 122 - 122 Kurt D. Herman Expert Figure 5 and 6, # 148 Memorandum in Support Memorandum of Law in Further Support of Covestro LLC's and Bayer Corporation's Motion for Summary Judgement) (Duffy, Timothy) (Entered: 12/06/2021) |
| 12/06/2021 | 199 | DECLARATION re 162 MOTION for Summary Judgment *Reply* by Northrop Grumman Corporation, Northrop Grumman Systems Corporation (Attachments: # 1 Exhibit 35, # 2 Exhibit 36, # 3 Exhibit 37, # 4 Exhibit 38, # 5 Exhibit 39, # 6 Exhibit 40, # 7 Exhibit 41, # 8 Exhibit 42) (Miller, Mark) (Entered: 12/06/2021) |
| 12/16/2021 | 200 | Letter *To The Hon. Eric N. Vitaliano Advising Of Motion Practice Corrections* by Town of Hempstead (Fisher, Scott) (Entered: 12/16/2021) |
| 01/31/2022 | 201 | STATUS REPORT by Town of Hempstead (Fisher, Scott) (Entered: 01/31/2022) |

5/2/25, 10:20 AM

Case: 25-1000, 05/02/2025, DktEntry: 16.1, Page 75 of 104
Eastern District of New York - LIVE Database 1.8 (Revision 1.8.1)

| 04/28/2022 | 202 | MOTION to Withdraw as Attorney *request to terminate appearance of Samantha M. Guido from docket* by Town of Hempstead. (Guido, Samantha) (Entered: 04/28/2022) |
| 04/29/2022 | | ORDER granting 202 Motion to Withdraw as Attorney. Attorney Samantha Marie Guido terminated. So Ordered by Magistrate Judge Steven Tiscione on 4/29/2022. (Vasquez, Lea) (Entered: 04/29/2022) |
| 02/16/2025 | 203 | ORDER For the foregoing reasons, defendants' motions for summary judgment are granted in full. The Clerk of Court is directed to enter judgment accordingly and to close this case. So Ordered by Judge Eric N. Vitaliano on 2/16/2025. (DLMP) (Entered: 02/25/2025) |
| 02/26/2025 | 204 | CLERK'S JUDGMENT: that defendants' motions for summary judgment are granted in full. Signed by Deputy Clerk, Jalitza Poveda, on behalf of Clerk of Court, Brenna B. Mahoney, on 2/26/2025. (JP) (Entered: 02/26/2025) |
| 04/21/2025 | 205 | NOTICE OF APPEAL as to 203 Order on Motion for Summary Judgment,, 204 Clerk's Judgment by Town of Hempstead. Filing fee $ 605, receipt number ANYEDC-18972293. Appeal Record due by 5/5/2025. (Fisher, Scott) (Entered: 04/21/2025) |
| 04/22/2025 | | Electronic Index to Record on Appeal sent to US Court of Appeals. 205 Notice of Appeal Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (VJ) (Entered: 04/22/2025) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 05/02/2025 09:53:24 | | | |
| **PACER Login:** | sbfisher | **Client Code:** | 999999 |
| **Description:** | Docket Report | **Search Criteria:** | 2:16-cv-03652-ENV-ST |
| **Billable Pages:** | 30 | **Cost:** | 3.00 |

# E X H I B I T  C

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
TOWN OF HEMPSTEAD,                                           :
                                                            :
                                  Plaintiff,                :
                                                            :       **MEMORANDUM & ORDER**
                    -against-                               :
                                                            :       2:16-CV-3652 (ENV) (ST)
                                                            :
UNITED STATES OF AMERICA, et al.,                           :
                                                            :
                                  Defendants.               x
------------------------------------------------------------

VITALIANO, D.J.

Plaintiff Town of Hempstead ("Hempstead" or "the Town") brings this lawsuit against

defendants the United States of America and the Department of Navy (together, the "federal

defendants"), Northrup Grumman Corporation ("Northrop"), the Occidental Chemical Company

("Occidental"), and Covestro LLC and the Bayer Corporation (together, the "Covestro

defendants") making claims arising under the Comprehensive Environmental Response

Compensation and Liability Act ("CERLCA"), 42 U.S.C. § 9601 *et seq.*, and asserting New York

common law actions sounding in nuisance, trespass, and negligence.  The Town alleges that its

Levittown Water District ("LWD") Wells 7A, 8A, and 13 were contaminated by groundwater

emanating from the former Naval Weapons Industrial Reserve Plant; the former Northup

Grumman Facility; and/or the former Hooker Chemical/Ruco Polymer Property, and seeks costs

that it expended in responding to the contamination of its wells.

Presently before the Court are summary judgment motions separately filed by the federal

defendants (Dkt. No. 163), Northrup (Dkt. No. 162), Occidental (Dkt. No. 180), and the Covestro

defendants (Dkt No. 198).  For the reasons that follow, these motions are granted in their entirety.

1

### Background[1]

From the early 1940's to 1996, the federal defendants owned, and co-defendant Northrop and its predecessors operated, a Naval Weapons Industrial Reserve Plant located on over 100 acres of property in Bethpage, New York (the "NWIRP Site"). Fed. Defs.' Rule 56.1 Stmt., Dkt. No. 164, ¶ 1. The Site is contiguous to approximately 500 acres of property owned and operated by Northrop (the "Northrop Site"). *Id.* ¶ 2. To say that the public controversy and litigation slate underlying these sites was well-chalked by the time this lawsuit commenced would be an understatement.

During the manufacturing process at the NWIRP Site, Northrop used solvents containing volatile organic compounds ("VOCs"). Northrup Rule 56.1 Stmt., Dkt. No. 170, ¶ 4. Beginning in 1983, when the New York State Department of Environmental Conservation ("DEC") listed the NWIRP Site in the Registry of Inactive Hazardous Waste Disposal Sites, DEC has supervised investigation and remediation of the site, including off-site contamination. *Id.* ¶ 6. In 1997, Northrop installed an on-Site containment system ("ONCT") to treat and remove VOC contaminants from the groundwater. *Id.* ¶ 9. DEC subsequently issued a Record of Decision for the Operable Unit 2 groundwater plume associated with the NWIRP Site (the "OU2 ROD"), selecting the ONCT as part of its chosen remedy. *Id.* ¶¶ 9–10. The OU2 ROD assessed that the "[a]ctual or threatened release of hazardous waste constituents from this site, if not addressed by implementing the response action selected in this ROD, presents a current or potential significant

---

[1] The facts are drawn from the affidavits, exhibits, Rule 56.1 statements, and counterstatements of fact submitted by the parties. Factual disputes are noted. Where facts are disputed, "the sources for the claims made in dueling Rule 56.1 Statements" are considered directly. *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 138 F. Supp. 3d 352, 396 (S.D.N.Y. 2015). Citations to pages of the parties' briefing refer to the Electronic Case Filing System ("ECF") pagination, except that citations to a deposition reference the internal document's pagination.

threat to public health and the environment." Miller Decl., Ex. 2 (OU2 ROD), Dkt. No. 179-2, at 3.

The OU2 ROD also mandated the implementation of a Public Water Supply Contingency Program ("PWSCP") to address hazardous substances in the OU2 plume that might impact public water supplies. Northrop Rule 56.1 Stmt. ¶ 11. The PWSCP, which Northrop, the Navy, and the Town are parties to, provides for (1) groundwater modeling, which estimates the future migration of the OU2 Plume thirty years into the future; (2) outpost monitoring wells, which monitor the groundwater plume anticipated to impact public water supply wells; (3) establishment of trigger values for certain hazardous substances, which, if reached at an outpost well, would require the relevant water district to be notified; and (4) a process whereby potentially impacted water suppliers, like the Town, can negotiate with the Navy and Northrop for the design and construction of appropriate wellhead treatment or comparable alternative measures if trigger values are reached. *Id.* ¶ 16.

Hempstead operates 15 public supply wells in the Levittown Water District to the southwest of the NWIRP Site that provides potable water to customers in residential areas. *Id.* ¶ 25. It alleges that three of its wells—LWD Wells 7A, 8A, and 13 (the "LWD Wells")—were impacted by the chemical Freon-113 originating from commingled groundwater from the NWIRP and Northrup Sites, forcing the Town to incur millions of dollars in response costs. *Id.* ¶ 27; Compl., Dkt. No. 1, ¶ 26. LWD Wells 7A and 8A are situated in the same well field about 100 feet apart, and LWD Well 13 is located approximately one-half mile away from LWD Wells 7A and 8A. Pl. Rule 56.1 Stmt., Dkt. No. 169, ¶¶ 6, 9. Hempstead first became aware of the potential impact to the LWD Wells in July 2012, when Northrop's environmental consultant, consistent with the PWSCP, informed the Town that samples collected from outpost monitoring wells for

3

LWD Well 13 showed Freon-113 meeting the trigger value of 1.5 µg/l.[2]  Northrup Rule 56.1 Stmt. ¶¶ 30–32.

Shortly thereafter, in April 2013, the Town retained engineering consultants Dviroka & Bartilucci Engineers & Architects, P.C. ("D&B") to determine the necessary treatment for removal of Freon-113 from the LWD Wells.  *Id.* ¶¶ 33–34; Pl. Rule 56.1 Stmt. Response, Dkt. No. 168, at 7.  D&B completed design reports for its chosen wellhead remedy, Packed Tower Aeration Systems ("PTAS"), in August 2014.[3]  Northrup Rule 56.1 Stmt. ¶ 37.  Although the PWSCP set forth a process for Hempstead to follow if it intended to seek reimbursement from the federal defendants and Northrup for its treatment of impacted wells, including negotiating the design and payment of such treatment *ex ante*, the Town unilaterally began construction of its PTAS treatment without consulting the parties and without a financial agreement in place.  *Id.* ¶¶ 36–42.

Taking the next step, on April 24, 2015, a consultant for D&B sent the Navy a letter by Hempstead's fiat (the "April 2015 Letter") attaching the already Town-approved design reports for the treatment systems and stating: that construction on the Well 13 system had already commenced; that construction on the Well 7A/8A system would commence soon; and requesting payment of the Town's costs "in accordance with the PWSCSP."  *Id.* ¶¶ 38, 41–42.  With respect to LWD Wells 7A and 8A, the April 2015 Letter stated that the wells had not been "specifically identified in the PWSCP," but "given their proximity to the westerly boundary of the plume, it appears they have been impacted."  *Id.* ¶ 43

The Navy responded to the Town's letter on June 18, 2015, requesting additional information and data supporting the letter's claim that the Freon-113 in the LWD Wells originated

---

[2] The Freon-113 detections were 1.5, 2.1, and 1.9 µg/l.  Northrop Rule 56.1 Stmt. ¶ 30.

[3] A packed tower aeration system is a commonly used treatment system that reduces the presence of contaminants in water.  Northrup Rule 56.1 Stmt. ¶ 98.

from the NWIRP Site and that the Freon-113 concentration necessitated wellhead treatment. Northrop Rule 56.1 Stmt. ¶¶ 46–48. In lieu of responding to the Navy's letter, the Town filed this lawsuit on June 30, 2016, also naming as defendants Occidental and the Covestro defendants, prior owners and operators of the Hooker-Ruco Site, a 14-acre, triangular-shaped parcel of land located approximately three miles north, northeast of the LWD Wells. *Id.* ¶¶ 50, 53; Occidental Rule 56.1 Stmt., Dkt. No. 180-24, ¶ 24; Occidental Mot., Dkt. No. 180-23, at 9. Hempstead alleges that the "disposal and release of hazardous substances" from the Hooker-Ruco Site "caused ground water contamination which has commingled with the downgradient groundwater contamination emanating from the NWIRP/Northrup Grumman Site." Compl. ¶ 3. According to the Town's Water Commissioner, Occidental and the Covestro defendants were included in the lawsuit because they were identified by the Town as registered hazardous waste site owners and/or generators of hazardous wastes. Covestro Rule 56.1 Stmt., Dkt. No. 198-15, ¶ 17.

The Hooker-Ruco Site had not flown under the radar while the NWIRP Site was the subject of environmental enforcement scrutiny. The United States Environmental Protection Agency ("EPA") placed it on the National Priorities List under CERCLA in or about 1986 and has since overseen a remedial plan for the off-site groundwater impacts from its groundwater plume (the "Hooker-Ruco Site Sub-Plume"). Occidental Rule 56.1 Stmt. ¶¶ 2–3. In coordination with EPA and DEC, Occidental studied and selected a treatment that increased the concentration of oxygen in the Hooker-Ruco Site Sub-Plume to degrade the concentrations of volatile compounds, and later that year EPA issued a ROD approving the selected remedy (the "OU3 ROD"). *Id.* ¶¶ 8–10. Under the OU3 ROD, residual levels of any volatile organic compound associated with the Hooker-Ruco Site Sub-Plume that have not naturally degraded from the oxygen treatment are captured and treated by a remedial system operated by Northrup under DEC oversight. *Id.* ¶ 11. In 2016 and

5

again in 2021, EPA concluded that the approved oxygen treatment effectively treats groundwater contamination at the Hooker-Ruco Site and that no modification to treatment is required. *Id.* ¶¶ 17, 20.

Reasserting its aggressive litigation posture, Hempstead did not notify Occidental or the Covestro defendants prior to designing and constructing the PTAS for Wells 7A/8A and 13, nor did the Town request that EPA modify the remedy for the Hooker-Ruco Site Sub-Plume to include any treatment facilities at the LWD Wells. *Id.* ¶¶ 32–33. In any event, Hempstead brought claims against Occidental and the Covestro defendants, alleging that "contaminated groundwater emanating from the Hooker/Ruco site . . . is commingled with the groundwater plume emanating from the NWIRP/Northrup Grumman Site which," the Town claims, was impacting its wells. Compl. ¶ 51.

A little more than five months after Hempstead brought suit, on December 2, 2016, the defendants separately moved to dismiss the complaint. *See* Dkt. Nos. 51, 54, 55, 59. On September 18, 2017, the Honorable Joseph F. Bianco, then a judge of this court and now a judge of the United States Court of Appeals for the Second Circuit, denied the motions in their entirety, except the court dismissed the Town's private nuisance claim against the Covestro defendants and the federal defendants. *See* Dkt. No. 77. The Court also divided the case into two phases. *See* Dkt. No. 92. Phase I addresses the Town's CERCLA claims, and Phase II addresses the Town's common law claims. Discovery on the Phase II claims was stayed pending briefing on the motions for summary judgment. *See* Dkt. No. 113. On December 6, 2021, all defendants moved for summary judgment, seeking dismissal of the Town's Phase I CERCLA claims. *See* Dkt. Nos. 162, 163, 180, 198. Although no defendants sought dismissal directly on the Phase II common law claims, Northrup and Occidental argued that dismissal of the CERCLA claims would compel

6

dismissal of the common law claims as well, thus bringing the case to judgment and closure of the docket.

Legal Standards

A.    Summary Judgment

Summary judgment shall be granted in the absence of a genuine dispute as to any material fact and upon a showing that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). "[A] fact is material if it 'might affect the outcome of the suit under the governing law.'" *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene of N.Y.*, 746 F.3d 538, 544 (2d Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986)). A dispute over material facts is "genuine" where "a reasonable jury could return a verdict for the nonmoving party" based on the evidence cited. *Anderson*, 477 U.S. at 248. In determining whether genuine issues of fact exist, "'the district court may not properly consider the record in piecemeal fashion, trusting innocent explanations for individual strands of evidence.'" *Moll v. Telesector Res. Grp., Inc.*, 94 F.4th 218, 227 (2d Cir. 2024) (quoting *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 45 (2d Cir. 2019)).

Assertions of fact made in connection with a motion for summary judgment must be supported by citations "to particular parts of materials in the record" that could be presented as admissible in evidence, which may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A), (c)(2); *Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 57 (2d Cir. 2012). "Before summary judgment may be entered, the district court must ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden

7

of production even if the statement is unopposed." *Jackson v. Fed. Express*, 766 F.3d 189, 194 (2d Cir. 2014). With that standard in mind, the Court's job at this stage is not to try the facts but instead to merely "determine whether there are issues of fact to be tried." *Sutera v. Schering Corp.*, 73 F.3d 13, 16 (2d Cir. 1995) (citing *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 244 (2d Cir. 1984)).

The movant carries the burden of demonstrating that there is no genuine dispute as to any material fact, *see Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005), and the Court will resolve all ambiguities and draw all permissible factual inferences in the light most favorable to the party opposing the motion. *See Reese v. Triborough Bridge & Tunnel Auth.*, 91 F.4th 582, 589 (2d Cir. 2024). Where the nonmoving party "will bear the burden of proof at trial," it bears the initial procedural burden at summary judgment of demonstrating that undisputed facts "establish the existence of [each] element essential to that party's case[.]" *Celotex Corp.*, 477 U.S. at 322–23. "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." *Hetchkop v. Woodlawn at Grassmere, Inc.*, 116 F.3d 28, 33 (2d Cir. 1997).

Since the controlling rule of civil procedure is the same, the standard for granting summary judgment in CERCLA cases is not different from other cases. *B.F. Goodrich Co. v. Betkoski*, 99 F.3d 505, 521 (2d Cir. 1996), *reh'g. denied*, 112 F.3d 88 (1997). At the same time, given the types of facts and issues presented in such cases, the Second Circuit has recognized that, in CERCLA cases, summary judgment "is a 'powerful legal tool' that 'can avoid lengthy and perhaps needless litigation.'" *B.F. Goodrich Co.*, 99 F.3d at 514 (quoting *U.S. v. Alcan Aluminum Corp.*, 990 F.2d 711, 720 (2d Cir. 1993)).

B.    CERCLA Statutory Scheme

CERCLA was designed to "'assur[e] that those responsible for any damage, environmental harm, or injury from chemical poisons bear the costs of their actions.'" *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 120 (2d Cir. 2010) (quoting S. Rep. No. 96–848, at 13 (1980)). "Because it is a remedial statute, CERCLA must be construed liberally to effectuate its two primary goals:  (1) enabling [] EPA to respond efficiently and expeditiously to toxic spills, and (2) holding those parties responsible for the releases liable for the costs of the cleanup." *B.F. Goodrich Co. v. Murtha*, 958 F.2d 1192, 1198 (2d Cir. 1992).

Under CERCLA, "property owners are strictly liable for the hazardous materials on their property, regardless of whether or not they deposited them there." *Niagara Mohawk*, 596 F.3d at 120. But CERCLA leaves room for the chancellor's boot. The statute allows property owners "to seek reimbursement of their cleanup costs . . . from certain polluters," also known as "potentially responsible parties ('PRPs')." *Id.* (quoting 42 U.S.C. § 9607(a)). CERCLA Section 107 "authorizes the United States, a state, or 'any other person' to seek reimbursement for all removal or remedial costs associated with the hazardous materials on the property, provided that those actions are consistent with the National Contingency Plan—the federal government's roadmap for responding to the release of hazardous substances." *Id.* at 120–21 (citing 42 U.S.C. § 9607(a)(4)).

"A *prima facie* cause of action under CERCLA requires a plaintiff to establish:  (1) defendant fits one of the four classes of responsible parties outlined in § 9607(a); (2) the site is a facility; (3) there is a release or threatened release of hazardous substances at the facility; (4) the plaintiff incurred costs responding to the release or threatened release; and (5) the costs and response actions conform to the National Contingency Plan." *B.F. Goodrich*, 958 F.2d at 1198 (citing *State of New York v. Shore Realty Corp.*, 759 F.2d 1032, 1043 (2d Cir. 1985)).

9

## Discussion

Putting the pre-lawsuit position-taking into a real-world context, Hempstead seeks to recover the approximately $8.4 million in response costs for its construction of the wellhead treatment system for the LWD Wells under CERCLA Section 107. Defendants seek summary judgment, arguing that dismissal is proper because Hempstead has failed to establish two elements of its *prima facie* case: *first*, defendants contend that releases from their respective sites—the NWIRP Site for the federal defendants and Northrup and the Hooker-Ruco Site for Occidental and the Covestro defendants—did not cause the Town to incur response costs; and *second*, even if the causation element were met, the Town's costs were neither necessary nor consistent with the National Contingency Plan. In a foundational retort, Hempstead contends that, material facts being in dispute, summary judgment on these claims is barred.

The general principles guiding CERCLA liability determinations are well-established. There is, of course, the critical requirement that a CERCLA plaintiff make a showing of casualty. Plaintiffs seeking to impose liability under CERCLA must demonstrate a causal connection between a release or threatened release and its incurrence of response costs. *See Freeman v. Glaxo Wellcome, Inc.*, 189 F.3d 160, 163 (2d Cir. 1999); *New York v. Next Millenium Realty, LLC*, 160 F. Supp. 3d 485, 504 (E.D.N.Y. 2016).[4] But, that does not mean that the applicable liability rules are one size fits all.

---

[4] The Town incorrectly contends that CERCLA § 107(a)'s causation requirement applies only to arranger liability. *See* Pl. Opp. to Fed. Defs. Mot. ("Pl. Fed. Opp."), Dkt. No. 167, at 18–19. In fact, the Second Circuit has not limited the causal requirement to arranger liability because that would be contrary to the statute. *See ABB Indus. Sys., Inc. v. Prime Tech., Inc.*, 120 F.3d 351, 356 (2d Cir. 1997) (requiring plaintiff to show that it "incurred costs *in response to* the release or threatened release); *see also Artesian Water Co. v. Gov't of New Castle Cty.*, 269 F. Supp. 1269, 1282 (D. Del. 1987), *aff'd* 851 F.2d 643 (3d Cir. 1988) ("CERCLA's strict liability scheme does not diminish the necessity of demonstrating a causal connection between a release or threatened release and the incurrence of costs by a section 107 plaintiff.") (citing *Shore Realty Corp.*, 759 F.2d at 1044 n. 17).

For example, CERCLA cases concerning two areas of potential contamination, a primary site and a secondary downgradient site, are referred to as "two-site" cases. *See New York v. Adamowicz*, 16 F. Supp. 3d 123, 140 (E.D.N.Y. 2014), *aff'd* 609 F. App'x 19 (2d Cir. 2015). While CERCLA is a strict liability statute—imposing liability on property owners for the hazardous materials on their property, regardless of whether they deposited them there—numerous circuit courts have determined that a different causation standard applies to plaintiffs seeking to recover in two-site cases; these plaintiffs must show a nexus between the release of contaminants on the primary site and the costs incurred on the downgradient site. *See, e.g.*, *Kalamazoo River Study Group v. Rockwell Int'l Corp.*, 171 F.3d 1065, 1068 (6th Cir. 1999) (in order to make out a *prima facie* case in a "two-site" case, a plaintiff "must establish a causal connection between the defendant's release of hazardous substances and the plaintiff's response costs incurred in cleaning them up."); *White v. County of Newberry*, 985 F.2d 168, 174–75 (4th Cir. 1993) (requiring plaintiffs to prove "a release or threatened release of a hazardous substance from the County's maintenance facility that caused the [plaintiff] to incur response costs"); *Amoco Oil Co. v. Borden, Inc.*, 889 F.2d 664, 670 (5th Cir. 1989) ("the relevant factual inquiry should focus on whether the particular hazard justified any response actions.").[5]

Although it is clear from CERCLA litigation nationally that two-site cases present the need for a different approach to causality, the Second Circuit has not embraced a singular approach in such cases as binding precedent. But multiple district courts in this circuit have, however, required

---

[5] Plaintiff is mistaken to the extent it interprets CERCLA's strict liability statutory scheme as removing a causation requirement in two-site cases. *See* Pl. Fed. Opp. at 18. Projecting strict liability onto two-site cases would open the floodgates of liability by allowing any party who discovers groundwater contamination on its land to successfully sue every party who ever released the contaminant of concern on separate land. CERCLA is meant to be construed liberally, but it cannot countenance such an absurd result. Indeed, "finding that § 9607(a) imposes strict liability does not rebut [defendants'] causation argument," as "[t]raditional tort law has often imposed strict liability while recognizing a causation defense." *Shore Realty Corp.*, 759 F.2d at 1044 n. 17.

the showing of a nexus between the contamination at the downgradient site and a release at the primary site. *See, e.g., Adamowicz*, 16 F. Supp. 3d at 141 (citing *Artesian Water Co.*, 659 F. Supp. at 1283) (a plaintiff must "show that the release at the Site was a substantial factor in incurring downgradient response actions."); *DVL, Inc. v. General Elec. Co.*, 811 F. Supp. 2d 579, 597 (N.D.N.Y. 2010) (a plaintiff must "provide [] evidence of a nexus between [] defendant's waste and the contamination at the [site]"); *Innis Arden Golf Club v. Pitney Bowes, Inc.*, 629 F. Supp. 2d 176, 185–187 (D. Conn. 2009) (finding "[s]upport" in "the text of § 107" for the principle that "plaintiff must establish a causal connection"). Given the persuasiveness of the argument for this approach, buttressed by the favor it has found among other district courts in this Circuit, the Court elects to follow these cases and recognize that plaintiffs in two-site cases must provide evidence that their cleanup costs were caused by the release of contaminants at the primary site.[6]

Notwithstanding the causation standard used to assess them, defendants' summary judgment motions require the parties to make a showing of facts relating to the hydrology of the affected land, the creation of contaminants, actual contamination, a need to respond, and the nature of any required remedial response. The record evinces the intent of the parties to make such showings. With respect to Hempstead's chief complaint that Freon-113 contaminated its wells, the federal defendants and Northrup point out that Freon-113 is a common groundwater contaminant, and evidence indicates there are sources of Freon-113 upgradient of the LWD Wells

---

[6] With *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112 (2d Cir. 2010) as its buckler, Hempstead presses its argument against this causation standard, contending that, in *Niagara Mohawk*, the Second Circuit "applied the same standard to a two-site case as it did to one-site cases." Pl. Fed. Opp. at 22–23. But *Niagara Mohawk* is not to the contrary. While the Second Circuit in *Niagara Mohawk* stated that the plaintiff need not "prove with certainty that a [] defendant discharged the hazardous material" in order to recover, 596 F.3d at 132, the defendant was only found liable "because there [was] evidence in the record that [defendant] may have deposited hazardous materials that settled" at plaintiff's site. 596 F.3d at 135. Specifically, defendant's expert testified that hazardous materials left behind on plaintiff's property "originated at [defendant's] Plant." *Id.* Thus, just like the two-site cases from other circuits, the Second Circuit only determined liability after looking favorably on direct evidence linking the release of hazardous materials from the primary site to the ultimate cleanup costs.

and west of the NWIRP Site that the Town's consultant did not consider in designing the treatment systems. *See* Northrup Rule 56.1 Stmt. ¶¶ 64, 87–89. In fact, the Town's water commissioner admitted at his deposition that, as of June 2015, the Town had no evidence that the alleged contamination in the LWD Wells emanated from the NWIRP Site, nor could the commissioner point to a specific report or document identifying the NWIRP Site as the source of contamination at the LWD Wells. *See* Schumacher Decl. Ex. H (Reinhardt Dep. Tr.), Dkt No. 166-8, at 76:7–13; 144:18–145:4. Indeed, the Town has not offered any such admissible report or document covering the period from 2015 to the submission of the summary judgment motions. More to the point, defendants highlight evidence from the Town's own expert that the NWIRP Site is not upgradient of the LWD Wells, as the current groundwater flows *southeast* and the LWD Wells are located *southwest* of the NWIRP Site. *See* Northrup Rule 56.1 Stmt. ¶ 73. Thus, defendants assert, "[i]t does not make hydrogeological sense that the LWD Wells would even be affected by the OU2 plume." Northrup Mot., Dkt. No. 162-1, at 27.

The marshalling of these facts by defendants requires a factual response in kind to establish the existence of a material fact dispute. Instead, the Town invites the Court to speculate. In essence, Hempstead asks the court to consider why an outpost monitoring well was placed by LWD Well 13, which suggests to Hempstead that the groundwater flows from the NWIRP Site to the LWD Wells in a southwesterly direction. Pl. Fed. Opp. at 30–31. But, as the federal defendants and Northrup make clear, the outpost monitoring well for LWD 13 was installed only as a "conservative measure," as modeling showed that LWD Well 13 would not be impacted by the OU2 plume within the 30-year evaluation period. *See* Northrup Rule 56.1 Stmt. ¶ 28. Moreover, the PWSCP itself, which the Town is a party to, states that the "regional groundwater flow direction" "is migrating generally to the south/southeast." Miller Decl. Ex. 6 (PWSCP), Dkt. No.

13

179-7, at 8. The Town's expert further speculates that the groundwater flow direction *may* have been different "decades ago," but notably does not even suggest that groundwater previously flowed in a southwesterly direction. *See* Miller Decl. Ex. 27 (H2M Expert Report), Dkt. No. 179-28, at 4. Since the current southeasterly flow of the groundwater is unchallenged, and in fact accepted by all parties, the Court agrees with Northrup and the federal defendants that the NWIRP Site could not have been the source of the Freon-113 in the LWD Wells.

The federal defendants' and Northrup's assault on causation does not end there, as their submission of plausibly uncontroverted facts and argument continue to jackhammer away at causality. For example, their submissions zero in on the virtual absence of the compound TCE— the predominant substance associated with the NWIRP Site, *see* Fed. Defs. Rule 56.1 Stmt. ¶ 105—in the LWD Wells, reasoning that "[i]f the Freon-113 in the LWD Wells came from the TCE-characterized OU2 plume, then TCE should also be present." Northrup Mot. at 26. The Town's groundwater modeling expert attempts to provide the missing link by presenting evidence that Freon-113 travels faster in groundwater than TCE, *see* Northrup Rule 56.1 Smt. ¶ 92, but defendants point out certain flaws in the expert's analysis that fatally undermine its reliability. For example, the expert admits that his opinion only applies to "pure" (*i.e.*, undissolved) forms of TCE and Freon-113, which do not exist in the OU2 plume. *See id.* ¶ 93. Further, the expert admitted at deposition that the two substances would travel at roughly the same rate of speed at the concentrations detected in the plume. *Id.* ¶ 94.[7] Also missing in his analysis is an explanation for

---

[7] The Town supports its opposition to the motions for summary judgment by filing a new expert declaration, which includes the opinion that Freon-113 travels at a faster pace in groundwater than TCE. *See Hazlett* Decl., Dkt. No. 175 ¶¶ 20–22. While an expert affidavit providing evidentiary details for an opinion expressed in an expert report may be considered in opposition to summary judgment, this declaration must be disregarded under the "Sham Affidavit" rule because it contradicts prior sworn testimony previously offered on behalf of the same party that the two substances would travel at the same rate of speed at the concentrations detected in the plume. *See Mack v. United States*, 814 F.2d 120, 124 (2d Cir. 1987) ("It is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment; *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) ("factual allegations that might otherwise defeat a motion for summary

14

why LWD is the only water district allegedly affected by the OU2 plume that had only Freon-113 present in its wells. *Id.* ¶ 77. The Town therefore cannot explain how, if the NWIRP Site was indeed the source of the contamination, no TCE was found in the LWD Wells.

The Town's affirmative theories of causation, as supported by its various experts, also break down under further scrutiny. *First*, the Town's "source" expert opines that there may be a distinct Freon-113 plume at the western boundary of the OU2 plume due to "voids" in the ONCT at the Site, *id.* ¶ 74, which purportedly explains the standalone Freon-113 samples in the LWD Wells. Yet the opinion does not attempt to explain, much less factually demonstrate, what caused the contamination; instead, the opinion is only a theory about how the contamination "might" have occurred. Tellingly, the "void" theory was not accepted by DEC when presented to them. *Id.* In fact, DEC determined that the ONCT has been effective and has never concluded that the ONCT has voids that would allow contaminants to migrate from on-site to off-site. *Id.* ¶ 12. *Second*, the Town's expert on groundwater modeling performed a "capture zone" analysis, showing that the area from which the LWD Wells draw water overlaps with the OU2 plume. *Id.* ¶ 95. But the expert admitted that his "capture zone" analysis does not model contaminant fate and transport, *see id.* ¶ 96, meaning his analysis does not assist in answering the central inquiry of where the Freon-113 found in the LWD Wells originated. Nor does the "capture zone" analysis, according to the expert, rule out non-NWIRP Site sources of the Freon-113 in the LWD Wells. *Id.* ¶ 97

Given the discussed flaws in the "void" and "capture" theories of causation, Hempstead is left to rely on proximity alone: In the Town's telling, that the NWIRP Site is located near the LWD Wells and Freon-113 has been detected in both the LWD Wells and the OU2 plume is

---

judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts her own prior deposition testimony"). The same rule holds true when a party offers an expert declaration in opposition to a motion for summary judgment  that contradicts the expert's original sworn opinion. *See Clark v. Quiros*, 693 F. Supp. 3d 254, 283 (D. Conn. 2023).

enough to create an issue of fact regarding source. But the holding in *DVL, Inc. v. General Electric Company* instructs that summary judgment is proper where, as here, plaintiff's only explanation for causation is proximity. 811 F. Supp. 2d at 597. In *DVL*, the court found the plaintiff's evidence insufficient to establish a causal link where "DVL's CERCLA claim against GE appears to rest largely on the fact that GE owns the property adjacent to the DVL Site; the soil in that property is PCB-contaminated; . . . [and] the PCBs contaminating the subject property match those used at GE's Fort Edwards Site." *DVL*, 811 F. Supp. 2d at 597–98. The *DVL* court also noted that "DVL offers no evidence that the deposits on GE's land made their way down to the DVL Site," *id.* at 599, which is similar to the Town's inability to produce evidence that deposits from defendants' land made its way to the LWD Wells. Just like the plaintiff in *DVL*, the Town needs to present more than evidence of spatial proximity to show causation and survive the motions for summary judgment. Because plaintiff fails to do so, the federal defendants and Northrup's motions for summary judgment must be granted.

Hempstead's failure to make a showing of causality essential to carrying the proof burden CERCLA § 107 demands is, if anything, starker with respect to the claims it interposes against Occidental and the Covestro defendants. To begin with, Freon-113 was not identified as part of the manufacturing process at the Hooker-Ruco Site, was not identified as a contaminant of concern for the Hooker-Ruco Site, and was not detected in the groundwater underlying or emanating from the Hooker-Ruco Site. *See* Johnson Decl. Ex. C (Johnson Report), Dkt. No. 180-22, at 5, 15, 29–31. Moreover, the primary contaminant of concern defining the Hooker-Ruco Sub-Plume, VCM, was not found in the LWD Wells, *see id.* at 6, 29, and the Town does not explain how Freon-113 could have migrated to the LWD Wells in the absence of VCM. Finally, and most damaging to the Town's theory of causation, Occidental's expert report, to which no competent retort is offered,

16

explains that the rate at which groundwater in the area generally moves is too slow for substances emanating at the Hooker-Ruco Site to have migrated the 15,000 feet to the LWD Wells in the relevant time period. *See id.* at 20, 30; *Kalamazoo River*, 171 F.3d at 1069–1073 (affirming grant of summary judgment to defendant who demonstrated lack of necessary causal link by submitting expert evidence that contaminants from the upgradient site did not reach the downgradient one).[8]

Teetering from the start, bumped by the admission by the Town's Water Commissioner that he was unaware of any factual basis which could support a finding that the Hooker-Ruco Site may have been the source of the Freon-113 found in the LWD Wells, *see* Covestro defendants Rule 56.1 Stmt. ¶¶ 15–16, Hempstead argues that Freon-113 was "used and likely discharged at the Hooker-Ruco Site and likely migrated off-site and commingled with the OU2 plume," and the commingled plume impacted its wells. *See* Pl. Opp. to Occidental Mot. ("Pl. Occ. Opp."), Dkt. No. 180-26, at 18, 22–28. Struggling to find something beyond sheer speculation to support its argument, the Town rests on three disparate and obscure references to Freon-113 dating back almost 50 years, but these references—which at most show that Freon-113 existed at the Hooker-Ruco Site—fail to create a dispute about any material fact, even when considered collectively with the Town's other evidence.

The first reference is hidden in a 1977 "Raw Materials Requirement" list, which included Freon-113 as one of the chemicals purchased for use at the Hooker-Ruco Site for the calendar year 1974. But Hempstead offers no proof as to what, if any, use Occidental or the Covestro defendants made of the substance at the Site, nor does it offer any evidence to distance itself from a document that answers the question: a 1979 Occidental interoffice memorandum showing that Freon-113

---

[8] Hempstead disputes the distance, as calculated by the defense expert, between the Hooker-Ruco Site and the Wells, *see* Pl. Rule 56.1 Response, Dkt. No. 180-28, ¶ 24, but the expert report, which, on this point, is not plausibly disputed, makes clear that the rate at which groundwater moves was too slow to even travel the lesser distance claimed by the Town. *See* Johnson Report at 20.

was neither used, manufactured, nor discharged at the Hooker-Ruco Site. *See* McDonald Decl. Ex. A (1979 Memo), Dkt. No. 180-158 at 3. The Town next offers groundwater and soil sampling from the Hooker-Ruco Site in 1989 and 1990 which purports to show the inclusion of Freon-113, but the record reveals that these samples were rejected because the "blanks"—*i.e.*, separate samples used as control groups—also revealed the presence of Freon-113, indicating test invalidity and neutering its evidentiary relevance. *See* Johnson Decl., Ex. C at 16. In its final effort to connect the Hooker-Ruco Site to its response costs, the Town points to an appendix to the 2005 Final Design Report that Occidental submitted to EPA for approval of its oxygen treatment system; the appendix contains a list of chemical compounds previously detected in soils and groundwater "at and in the vicinity of the Hooker-Ruco Site," including Freon-113. *See* Fisher Decl. Ex. 119 (Final Design Report), Dkt. No. 198-144, at 20. However, this reference does not help the Town in the way it supposes, as "in the vicinity" suggests that not every compound identified in the appendix was actually found on the Hooker-Ruco Site itself. Aside from evidence showing that on one occasion Occidental ordered Freon-113 in connection with the Site and that Freon-113 was found to exist somewhere on land in the vicinity of the Site, Hempstead's claim that Freon-113 was used at the Hooker-Ruco Site essentially rests on speculation contravened by compelling evidence offered by Occidental that Freon-113 was never used in any of the processes conducted at the Site.

Although the Court does not believe that the evidence proffered by the Town creates a disputed fact on whether Freon-113 existed at the Hooker-Ruco Site, assuming for purposes of argument that it does, it does not advance the Town's cause on Occidental's and the Covestro defendants' motions for summary judgment. Indeed, any dispute on this point is immaterial. As discussed above, even assuming the presence of Freon-113 contamination at the Hooker-Ruco

Site, the Town offers no explanation for: (1) how the Freon-113 traveled to the Town's wells without the predominant contaminant of concern in the Hooker-Ruco sub-plume; and (2) how Freon-113 could have migrated from the Hooker-Ruco Site to the Town's Wells given the rate at which groundwater travels and the distance and time involved. Thus, Occidental's and the Covestro defendants' motions for summary judgment must be, and are, granted.

Equally fatal as the failure to establish causation, and an alternative basis for the Court's entry of summary judgment for defendants, Hempstead's CERCLA claims fail to pass muster under the National Contingency Plan (the "NCP"). As explained in *Town of Oyster Bay v. Northrup Grumman Systems Corporation*, a private party plaintiff must establish that its response costs were both "necessary" and incurred consistent with the NCP to sustain a CERCLA § 107 claim. No. 05-cv-1945, 2009 WL 10691086, at *19, 23–24 (E.D.N.Y. May 14, 2009) (citing 42 U.S.C. § 9607(a)(4)(B)) (granting summary judgment on CERCLA claims because the plaintiff town, just like Hempstead here, did not follow the NCP); *see also B.F. Goodrich Co.*, 952 F.2d at 1198. A "private party response action will be considered consistent with the NCP if the action, when evaluated as a whole, is in substantial compliance with the applicable requirements" of the NCP. 40 C.F.R. § 300.700(c)(3)(i). This is so while recognizing that "[i]mmaterial or insubstantial deviations" from the NCP do not render a response action inconsistent with the NCP. 40 C.F.R. § 300.700(c)(4).

Where the presence of contamination is acknowledged and response action is taken, a first step adjudication is required to determine whether the response action was a removal action or a remedial action. "Removal actions are clean-up or removal measures taken to respond to immediate threats to public health and safety," whereas "[r]emedial actions are generally actions designed to permanently remediate hazardous waste." *New York v. Next Millenium Realty, LLC*,

732 F.3d 117, 124–25 (2d Cir. 2013) (citing 42 U.S.C. §§ 9601(24)–(25)).  The distinction can be

dispositive since the NCP requirements for remedial actions are more stringent than those for

removal actions.  *See Carson Harbor Village, Ltd. v. Unocal Corp.*, 287 F. Supp. 2d 1118, 1155

(C.D. Cal. 2003) ("Because of the exigency inherent in removal actions, the statutory requirements

for NCP compliance relative to such actions are somewhat more relaxed."); *Public Service Co. of

Colo. v. Gates Rubber Co.*, 175 F.3d 1177, 1183 (10th Cir. 1999).  But a ruling on whether

Hempstead's response is a removal or remedial action is unnecessary, as it cannot even create a

material dispute of fact to disprove defendants' showing that the response actions the Town took

do not substantially comply with the more relaxed standards for NCP compliance for removal

actions.

   *First*, the Town did not provide sufficient opportunity for public comment, which "must

be provided regardless of whether a removal or remedial action is performed."  *VME Americas,

Inc. v. Hein-Werner Corp.*, 946 F. Supp. 683, 690 (E.D. Wi. 1996) (granting summary judgment

where plaintiff seeking reimbursement for costs incurred did not comply with public notice and

comment requirements of the NCP).[9]  As a general matter, the NCP states that "[p]rivate parties

undertaking response actions should provide an opportunity for public comment concerning the

selection of the response action."  40 C.F.R. § 300.700(c)(6).  With regard specifically to

"community relations in removal actions," the NCP provides that the Town "shall inform the

---

[9] In opposition, plaintiff cites *Versatile Metals, Inc. v. Union Corp.*, 693 F. Supp. 1563, 1577 (E.D. Pa. 1988) and *Carlyle Piermont Corp. v. Federal Paper Bd. Co.*, 742 F. Supp. 814, 818 (S.D.N.Y. 1990) for the propositions that "[r]emoval actions are not subject to the lengthy procedural requirements of the NCP" and the "requirements for a removal action do not include provisions for appropriate comment." *See* Pl. Occ. Opp. at 45.  However, both *Versatile Metals* and *Carlyle* evaluated recovery actions that pre-dated the substantial revision to the NCP that took effect on April 9, 1990.  Not only are the two versions of the NCP accompanied by different compliance standards, *see VME America*, 946 F. Supp. at 689, but the new version, unlike the older version, requires Town's seeking to recover for removal actions to comply with the NCP, including its public participation requirements.  *Compare* 40 C.F.R. § 300.415(n)(1), *with* 40 C.F.R. § 300.65.

community of actions taken, respond to inquiries, and provide information concerning the release."
40 C.F.R. § 300.415(n)(1); 40 C.F.R. § 300.700(c)(5)(vi). Here, the Town admitted that it did not
provide the public with any notice or opportunity to comment on the proposed treatment system
prior to the selection of its remedy and the commencement of construction on one of the treatment
systems, *see* Northrop 56.1 Stmt. ¶¶ 44, 139–142, which is fatal to its claim. *See VME Americas*,
946 F. Supp. at 690. Nor does the Town's July 2015 "letter to the LWD community about the
proposed well site improvements," Pl. Occ. Opp. at 57–58, bring it into substantial compliance
with the NCP, as the letter was sent *after* the Town had begun construction on its treatment plan
for LWD Well 13 and *after* it approved design reports for the other wells.[10]

Furthermore, the Town's motion papers are barren of any evidence to create even the
slightest doubt that it ignored its obligations under the NCP by not studying the cost-effectiveness
of its plan and incurring unnecessary expenses in its implementation. To begin with, there is no
evidence that the Town engaged in a remedial investigation/feasibility study ("RI/FS") required
for remedial actions, or even the less formal Engineering Evaluation/Cost Analysis ("EE/CA")
required for long-term removal actions. *See* 40 C.F.R. § 300.415(b)(4) ("Whenever a planning
period of at least six months exists before on-site activities must be initiated, and the lead agency
determines, based on a site evaluation, that a removal action is appropriate: (i) The lead agency
shall conduct an engineering evaluation/cost analysis (EE/CA) or its equivalent."). An EE/CA
considers the nature and extent of site contamination and any threats to human health or the
environment, as well as analyzes the effectiveness, implementability, and cost alternatives that
may satisfy the objectives of the removal action prior to recommending a course of action. *See*

---

[10] Tellingly, the July 2015 letter did not even reference the work commenced on LWD Well 13, *see* Fisher Decl. Ex.
22 (July 2015 Letter), Dkt. No. 171-22, so plaintiff's argument that the letter satisfied the public participation
requirement of the NCP fails on its face.

Miller Decl. Ex. 10 (Herman Expert Report), Dkt. No. 179-11, at 23. The Town's hired engineer prepared design reports, but those reports did not include a risk evaluation, alternatives analysis, or any other of the hallmarks of an EE/CA to ensure that a chosen remedy is cost effective.

Compounding its mistake in not performing a pre-implementation cost analysis, the record reveals that Hempstead incurred unnecessary expenses by overdesigning its remedy even though CERCLA only allows a plaintiff to recover the "necessary costs of response . . . consistent with the national contingency plan." 42 U.S.C. § 9607(a)(1–4)(B). For example, D&B designed the treatment systems to treat 420 µg/l of TCE even though no TCE had been found in the LWD Wells. *See* Northrup Rule 56.1 Stmt. ¶¶ 70–71, 103. No Town representative or expert has been able to explain why it chose this aggressive threshold, and Northrup's treatment design expert determined that the 420 µg/l design criteria led to unnecessary costs, *id.* ¶ 136, all of which is uncontroverted. Thus, the costs are unrecoverable as a matter of law because they were incurred merely to respond to a "theoretical threat," *Regional Airport Authority of Louisville v. LFG, LLC*, 460 F.3d 697, 705–06 (6th Cir. 2006), and used for a design that was "unnecessary to address the hazardous substances at issue." *Waste Management of Alameda County, Inc. v. East Bay Regional Park District*, 135 F. Supp. 2d 1071, 1099 (N.D. Cal. 2001); *see also Town of Oyster Bay*, 2009 WL 10691086, at *21–22.[11]

The Town's shortcomings in its purported compliance with the statutory requirements for NCP-qualified removal actions are laid bare by its admitted failure to understand those requirements beforehand. Straightforwardly, Hempstead's witnesses, including the Commissioner

---

[11] Hempstead also admitted that it installed the PTAS on LWD Well 7A/8A in two treatment towers due to "aesthetic" considerations unrelated to any "health based reason or regulatory reasons," Northrup Rule 56.1 Stmt. ¶¶ 117–118, even though it would have been less expensive and equally effective to use one tower. *Id.* ¶¶ 120–122. But there is "no support for any theory basing CERCLA liability on aesthetics: the concern of CERCLA is to correct a hazardous situation, not an aesthetic blight." *Milbut v. Hi-Score Plant Food Co.*, No. 91-2008, 1992 WL 396774, at *5 n.5 (E.D. Pa. Dec. 24, 1992).

of the Water Department and the engineer who designed the treatment systems, testified that they were not aware of the NCP when planning the treatment. *See* Northrop Rule 56.1 Stmt. ¶¶ 128, 131. Likewise, no one in the Town bore responsibility for ensuring that the Town complied with the NCP in connection with its treatment. *Id.* ¶ 129. The Town thus cannot show that it substantially complied with the NCP where it was unaware of the NCP's requirements, failed to engage the public's participation, and did not perform an analysis to ensure cost effectiveness. With these gaps in the Town's understanding of CERCLA compliance requirements, it is not surprising that there are no material facts in dispute.

In a tacit acknowledgement that it did not substantially comply with the letter of the NCP, the Town suggests a handful of reasons why it should be exempted from compliance. Each fails to persuade. *First*, plaintiff boldly requests a categorical exemption from NCP compliance for cleanups of drinking wells, arguing that "the requirements of the NCP do not squarely fit" cases that "involve[] the protection of the drinking water provided to the public and not the remediation of a hazardous waste site." Pl. Occ. Opp. at 41. The Town does not point to any such exemption in the NCP, nor could it: courts routinely review NCP compliance in CERCLA cases involving public water suppliers. *See, e.g., Town of Halfmoon v. General Elec. Co.*, 105 F. Supp. 3d 202 (N.D.N.Y. 2015); *S. Farmingdale Water Dist. v. Coltec Indus. Inc.*, No. 05-cv-1566, 2007 WL 9718900 (E.D.N.Y. Oct. 17, 2007).

Nor do the Town's discussions with the Nassau County Department of Health ("NCDOH") remove it from the strictures of the NCP. While a private party may establish compliance with the NCP by showing that its response was conducted under the monitoring, and with the ultimate approval, of a state's environmental agency, *see Niagara Mohawk Power Corp.*, 596 F.3d at 137, DEC did not monitor or approve the Town's plans. The Town claims that "the NYSDOH and

23

NCDOH, with input from []DEC, had oversight and approval of the design and implementation of the wellhead treatment systems," Pl. Occ. Opp. at 57, but the record paints a different picture. The only evidence of DEC's involvement that the Town points to is that DEC provided the Town with certain documents upon request in November 2013, and the Town later provided DEC with its treatment design reports in August 2014. *See* Merklin Decl., Dkt. No. 193 ¶¶ 29, 52. Notably absent is any evidence that the Town discussed its proposed wellhead treatment system with DEC, let alone that DEC provided input, evaluated, discussed, or approved the proposal. These circumstances are a far cry from the "monitoring" and "ultimate approval" by DEC that would obviate the need for NCP compliance. *See Innis Arden Golf Club*, 629 F. Supp. 2d at 181 n.3 (granting summary judgment because, *inter alia*, a "remediation project" that "proceeded with minimal state involvement other than periodic updates" did not satisfy the NCP compliance obligation).

Finally, assuming without deciding that there is merit in the Town's argument that its compliance with the PWSCP would satisfy its requirements under the NCP, *see* Pl. Occ. Opp. at 47–55, it fails to shield Hempstead from the grant of summary judgment to defendants on their motions. Simply put, even if the argument is valid, the supporting facts are missing since Hempstead is unable to show that its actions conformed with the PWSCP. At the outset, the Town's Water Commissioner testified that he could not identify any steps in the PWSCP that the Town complied with. *See* Northrup Rule 56.1 Stmt. ¶ 23. Further, the PWSCP provides that "once the trigger value(s) has been reached and confirmed," "pre-design discussions/negotiations will commence between NAVY/Northrop Grumman and the potentially affected water district(s) so that funding for wellhead treatment or comparable alternative measure can be negotiated and provided to the water district(s)." PWSCP at 11. But the record shows that no pre-design

24

discussions and negotiations took place, nor was a financial agreement in place prior to the Town beginning its work. After Northrup's consultant informed the Town of the trigger value exceedances on July 12, 2012, the Town did not commence negotiations with Northrup or the federal defendants. Northrup Rule 56.1 Stmt. ¶¶ 30–32, 39. Rather, the Town opted to design and begin construction on its treatment systems, making no contact with the federal defendants or Northrup until three years later, when it requested post-design, post-construction funding. *Id.* ¶ 39. Contrary to the Town's suggestions, *see* Pl. Fed. Opp. at 56, there is nothing in the PWSCP to suggest that it was the federal defendants' or Northrup's burden to initiate negotiations or that the Town's compliance was optional. These last-ditch defenses, in sum, do not save the Town from judgment.[12]

Defendants, as one might imagine, seek to leverage the facts found undisputed in defeating Hempstead's CERCLA claims to similarly defeat its claims interposed under New York common law. Northrup argues that each of the Town's common law claims is fatally hobbled by the finding already made that plaintiff has not raised a genuine issue of material fact regarding the source of the Freon-113 in LWD Wells 7A, 8A, or 13, nullifying Hempstead's ability to prove an element essential to all of those claims, namely that chemical constituents leaving either the NWIRP Site or Hooker-Ruco Site contaminated the LWD Wells. *See* Northrup Mot. at 36–38.[13] In opposition, the Town argued the only issues properly before the Court are issues related to the Town's Phase I CERCLA claims, at least as scheduled for briefing.

---

[12] The Town also asserts a claim for declaratory judgment under Section 113(g)(2), 42 U.S.C. § 9613(g)(2) against all defendants. Because the Town has not demonstrated a valid claim under Section 107 against any defendant, defendants are also entitled to a judgment as a matter of law on the declaratory relief claim. *See Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85, 92 (2d Cir. 2000); *Town of Oyster Bay*, 2009 WL 10691086, at *24.

[13] Occidental, by contrast, argues that in the absence of viable CERCLA claims, the Court lacks jurisdiction under CERCLA § 113(h) over the common law claims. *See* Occidental Mot. 33–34. Because the Court dismisses the common law claims for the reasons outlined in Northrup's motion, the Court need not address Occidental's jurisdictional argument.

25

Although, as the Town correctly notes, the Phase II claims are not formally presented for consideration on these motions, the rules of procedure do not demand that form be the enemy of substance. It is true, as defendants say, that after discovery and full litigation of the common essential issue on these motions, the Town was unable to even raise a genuine disputed material fact about, much less prove causation, by connecting the Freon-113 in the LWD Wells to either the NWIRP Site or Hooker-Ruco Site. A showing of causation is, plainly, required to make out each of the common law claims advanced by the Town. *See, e.g., Suffolk Cnty. Water Auth. v. Dow Chem. Co.*, 958 N.Y.S.2d 649 (N.Y. Sup. Ct. 2010) (to make out the common law claims, like, for example, public nuisance, a plaintiff must demonstrate that there was an unreasonable interference with the rights of the public, intentionally caused by the defendant's conduct); *Fetter v. DeCamp*, 195 A.D.2d 771, 773–74 (N.Y. App. Div. 3d Dep't 1993) (granting summary judgment for the defendant in a case involving negligence for pollution of underground waters where the plaintiff did not provide evidence establishing contamination of the well or its source). Upon a search of the record in this case, the Town's failures on its CERCLA claims forecloses it from making the required showing of causation. In this posture, judicial economy will best be served by dismissing these claims now. *See ABB Indus. Sys., Inc. v. Prime Tech., Inc.*, 120 F.3d 351, 360 (2d Cir. 1997) (holding that, because plaintiff could not establish that the defendants contaminated the site in its CERCLA action, its negligence claims were also properly dismissed). Accordingly, defendants are entitled to and are awarded judgment on Hempstead's claims brought under New York common law.

## Conclusion

For the foregoing reasons, defendants' motions for summary judgment are granted in full. The Clerk of Court is directed to enter judgment accordingly and to close this case.

26

So Ordered.

Dated: Brooklyn, New York
      February 16, 2025

                                        */s/ Eric N. Vitaliano*
                                        ERIC N. VITALIANO
                                        United States District Judge

27

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
TOWN OF HEMPSTEAD,

                                                                        JUDGMENT

                              Plaintiff,

          v.
                                                                        16-CV-3652 (ENV) (ST)

UNITED STATES OF AMERICA, et al.,

                              Defendant.
----------------------------------------------------------------X
          A Memorandum and Order of the Honorable Eric N. Vitaliano, United States District

Judge, having been filed on February 16, 2025, granting defendants' motions for summary

judgment in full; it is

          ORDERED and ADJUDGED that defendants' motions for summary judgment are granted

in full.

Dated: Brooklyn, New York                          Brenna B. Mahoney
        February 26, 2025                          Clerk of Court

                                          By:      /s/Jalitza Poveda
                                                   Deputy Clerk